No. 24-565

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK BAIRD
*Plaintiff-Appellant,*

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,
*Defendant-Appellee,*

Appeal from United States District Court for the Eastern District of California
Civil Case No. 2:19-cv-00617-KJM-AC (Honorable Kimberly J. Mueller)

## APPELLANT'S EXCERPTS OF RECORD
## VOLUME 7 of 7

THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761(f)
*abell@bellantoni-law.com*

*Attorneys for Plaintiff-Appellant*

ER-1456

**DECLARATORY JUDGMENT ALLEGATIONS**

74.     There is an actual and present controversy between the parties.

75.     Plaintiffs' Second and Fourteenth Amendment rights are being violated and will continue to be violated by the enforcement of (i) Penal Code section 25850 makes it illegal to carry a loaded firearm when he carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an incorporated city or in a prohibited area of unincorporated territory; and allows the police the unfettered ability to stop an individual to inspect their firearm to determine whether the firearm is or is not loaded; refusal to allow a peace officer to inspect a firearm constitutes probable cause for arrest; (ii) Penal Code section 26350 makes it illegal to openly carry an unloaded handgun for carrying upon his person an exposed and unloaded handgun outside a vehicle while in a public place or public street in an incorporated city or city and county, a public street in a prohibited area of an unincorporated area of a county or city and county, or a public place in a prohibited area of a county or city and county.

76.     Penal Code sections 25850 and 26350 regulate conduct that is protected by the plain language of the Second Amendment.

77.     Penal Code sections 25850 and 26350 have no historical analogue.

78.     Plaintiffs seek a judicial declaration that Penal Codes sections 25850 and 26350 violate the Second and Fourteenth Amendments.

**INJUNCTIVE RELIEF ALLEGATIONS**

79.     Mr. Baird and Mr. Gallardo have a present intention to carry a handgun open and exposed for self-defense, loaded or unloaded, throughout the State of California including those areas that were not designated 'sensitive areas' prior to the enactment of the Mulford Act of 1967, today and every day for the remainder of their natural lives.

80.     Plaintiffs intend to exercise the rights protected by the Second and Fourteenth Amendments without seeking permission from the government, including applying for and obtaining a license under California's licensing scheme under Penal Code sections 26150 and 26155.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

81.     Plaintiffs face imminent arrest, prosecution, fines, and other criminal penalties for carrying a handgun open and exposed, loaded or unloaded, in public without a license, as well as other civil penalties including loss of property (firearms).

82.     Plaintiffs' conduct is protected by the plain language of the Second Amendment.

83.     The burden is exclusively on Defendant to demonstrate that the challenged regulations are consistent with the Nation's historical tradition of firearm regulation. Only then may this Court conclude that Plaintiffs' conduct falls outside the Second Amendment's 'unqualified command.' *Bruen*, supra.

84.     There is no historical analogue for the challenged regulations.

85.     Plaintiffs are being continuously injured, in fact, and will continue to be injured by the violation of their preexisting rights protected by the Second and Fourteenth Amendments by Defendant's enforcement of Penal Code sections 25850 and 26350 for the open carriage of a handgun, whether loaded or unloaded, outside of their home, including those areas of California not designated 'sensitive areas' prior to the Mulford Act of 1967.

86.     California's criminal statutes are inconsistent with the Nation's historical tradition of firearm regulation and should be temporarily and permanently enjoined.

87.     Plaintiffs should not have to risk criminal prosecution in the exercise of their fundamental right to self-protection outside of the home.

**COUNT I**

**Penal Code § 25850 Violates the Second and Fourteenth Amendments**

88.     Repeat and reallege paragraphs "1" through and including "87" as if set forth in their entirety herein.

89.     Defendant's enforcement of Penal Code § 25850 against individuals for carrying a handgun open and exposed on their person violates the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

16

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**COUNT II**

**Penal Code § 26350 Violates the Second and Fourteenth Amendments**

90.     Repeat and reallege paragraphs "1" through and including "89" as if set forth in their entirety herein.

91.     Defendant's enforcement of Penal Code § 26350 against individuals for carrying a handgun open and exposed on their person violates the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

- A judicial declaration that the enforcement of California Penal Code § 25850 against individuals for carrying a handgun open and exposed on their person throughout California violates the Second and Fourteenth Amendments;

- A judicial declaration that the enforcement of California Penal Code § 26350 against individuals for carrying a handgun open and exposed on their person throughout California violates the Second and Fourteenth Amendments;

- An order temporarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing Penal Code sections 25850 and 26350 against individuals who carry a handgun open and exposed on their person throughout the State of California;

- Reasonable statutory attorney's fees, costs, and disbursements, under 42 U.S.C. § 1988 and any other applicable law; and

- Grant such further and alternative relief as the Court deems just and proper.

17

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ER-1459

1    Respectfully submitted,

2    Dated: September 26, 2022           THE BELLANTONI LAW FIRM, PLLC

3

4                               ___/s/ Amy L. Bellantoni, Esq._____

5                               Amy L. Bellantoni
                              *Attorney for Plaintiffs*

6                               *Pro Hac Vice*
                              Email: abell@bellantoni-law.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ER-1460

```
1                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
2                            --oOo--

3    MARK BAIRD, ET AL.,        ) Docket No. 19-CV-617
                                ) Sacramento, California
4                   Plaintiffs, ) July 16, 2021
                                ) 11:08 a.m.
5              v.               )
                                )
6    XAVIER BECERRA, in his     ) Re: Motion for preliminary
     official capacity as the   ) injunction
7    Attorney General of the    )
     State of California,       )
8                                )
                   Defendant.   )
9

10                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE KIMBERLY J. MUELLER
11                 UNITED STATES DISTRICT JUDGE

12   APPEARANCES (via Zoom):

13   For the Plaintiffs:    THE BELLANTONI LAW FIRM, PLLC by
                            MS. AMY L. BELLANTONI (pro hac vice)
14                          2 Overhill Road, Suite 400
                            Scarsdale, NY 10583
15
     For the Defendant:    OFFICE OF THE ATTORNEY GENERAL by
16                          MR. R. MATTHEW WISE
                            Deputy Attorney General
17                          P.O. Box 944255
                            Sacramento, CA 94244
18
     Also present:         MARK BAIRD and RICHARD GALLARDO
19
                        JENNIFER COULTHARD, RMR, CRR
20                          Official Court Reporter
                          501 I Street, Suite 4-200
21                          Sacramento, CA 95814
                            jenrmrcrr2@gmail.com
22                            (530)537-9312

23   Proceedings recorded via mechanical Steno - transcript produced
     via Computer-Aided Transcription
24

25
```

ER-1461

```
 1              SACRAMENTO, CALIFORNIA, FRIDAY, JULY 16, 2021
 2                              --o0o--
 3        (In open court via Zoom.)
 4              THE CLERK:  Calling civil case 19-617, Baird,
 5     et al. v. Becerra.  This on for a motion for preliminary
 6     injunction, Your Honor.
 7              THE COURT:  All right.  For plaintiff?
 8              MS. BELLANTONI:  Good morning, Your Honor; Amy
 9     Bellantoni for Mark Baird and Richard Gallardo.
10              THE COURT:  All right.  And Mr. Baird is also
11     observing.
12              MS. BELLANTONI:  And Mr. Gallardo, I believe, will be
13     coming on again by telephone.
14              THE COURT:  All right.  I see Mr. Baird on the screen.
15              And for the defense?
16              MR. WISE:  Good morning, Your Honor; Matthew Wise,
17     Deputy Attorney General for the Attorney General.
18              THE COURT:  All right.  Good morning to you.
19              I have a question first on the standing question,
20     Ms. Bellantoni.  So if the limit on open carry permits applies
21     only in counties with populations larger than 200,000, if --
22     Mr. Baird and Mr. Gallardo each live in counties with
23     populations below 200,000, right?
24              MS. BELLANTONI:  That's correct.
25              THE COURT:  So how do they have standing based on the
```

ER-1462

1    limitations that apply to handgun permits in counties with

2    populations greater than 200,000?

3              MS. BELLANTONI:  Because there are no open carry

4    licenses being issued.  That's one reason.

5              So if we look at the penal code, it requires that all

6    applications for a public carry license be approved or be on

7    forms approved by the Department of Justice, and the Department

8    of Justice does not issue any applications for open carry

9    licenses, so no one can apply for an open carry license, and

10   they haven't since 2012.

11             In addition to that, the statute itself, even if there

12   were applications (inaudible) -- to issue an open carry

13   license --

14             THE COURT:  Ms. Bellantoni, wait.  Ms. Bellantoni?

15   Ms. Bellantoni?

16             MS. BELLANTONI:  Yes.

17             THE COURT:  Your Internet connection appears to be

18   flawed.

19             MS. BELLANTONI:  Yes.

20             THE COURT:  Madam Court Reporter, have you been able

21   to hear Ms. Bellantoni?

22             COURT REPORTER:  I lost her a little while back.  I'd

23   like to read to you what I had and then have her pick up from

24   there, if you don't mind.

25             THE COURT:  Yes, please.

ER-1463

4

1      (Record read.)

2          THE COURT:  All right, Ms. Bellantoni.  Please pick up

3      there.

4          MS. BELLANTONI:  My apologies, Judge.

5          So even if there were forms for an individual to apply

6      for an open carry license, the statute itself is a "may issue"

7      statute, which places broad discretion in the licensing

8      official to either grant or deny the open carry license, which

9      removes the open carry from the realm of being within the scope

10     of the Second Amendment as a right guaranteed by the statute --

11     by the Amendment and places it in the realm of being a

12     privilege subject to the discretion of the government.

13         THE COURT:  So Mr. Wise, just so I'm clear, on this

14     issue of DOJ forms, does that provide for standing, if I

15     understand the argument correctly, the unavailability of

16     required DOJ forms to issuing authorities in counties with

17     populations below 200,000?  Does that cure any standing issue

18     that you raise?

19         MR. WISE:  The sheriffs in those counties can issue

20     open carry licenses.  I mean, they can use the forms that are

21     available to issue those licenses.  So the form, you know, may

22     be geared toward concealed carry because that's what is allowed

23     throughout the State of California, but this particular issue

24     of forms, you know, shouldn't be viewed as, you know, a means

25     of denying open carry licenses.  The law is very clear that

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

ER-1464

5

1    open carry licenses are allowed in the counties where

2    plaintiffs live.

3           THE COURT:  And the argument about the permissive

4    language in the statute, anything to say there?

5           MR. WISE:  No, Your Honor.  The permissive language

6    allows the sheriffs the discretion to grant an open carry

7    license, and that's entirely in the sheriffs' judgment.

8           THE COURT:  All right.  Ms. Bellantoni --

9           MS. BELLANTONI:  Yes.

10          THE COURT:  -- hold any thoughts.  You'll have a

11   chance for brief wrap-up.  I want to cover my questions.

12          Just so I'm clear, are there facts in the Amended

13   Complaint, the First Amended Complaint, that affect the Court's

14   decision now as compared to its prior decision that it made

15   without prejudice?  Are there specific allegations in the First

16   Amended Complaint that make a material difference here?

17          MS. BELLANTONI:  Your Honor, I believe that the

18   allegations are substantially the same as they were in the

19   initial complaint and provide enough of a factual basis for the

20   Court to render a decision on the instant motion.

21          THE COURT:  And how would you say that the arguments

22   now are materially different than when you were before me

23   before?

24          MS. BELLANTONI:  So when we first filed the motion for

25   a preliminary injunction, part of the Court's decision was

ER-1465

1    recognizing that there may be, in the Court's opinion, the

2    right to open carry, as covered and protected by the Second

3    Amendment.

4            And the Court's main concern, if I understand it

5    correctly, was that we were waiting to see what the Ninth

6    Circuit en banc decision would be in the *Young v. Hawaii* case.

7    Now that we've seen the decision in *Young v. Hawaii* and have

8    gotten over that hurdle, I would argue that the Court is able

9    to make a decision now with respect to this preliminary

10   injunction, and I would point out that the decision in *Young v.*

11   *Hawaii* is completely contrary to the plain language and holding

12   in the decision in *DC v. Heller*.

13           THE COURT:  All right.  I want to revisit that with

14   you in just a moment; but so, to further clarify the nature of

15   the exact challenge here, are you saying that you're advancing

16   both facial and as-applied challenges?

17           MS. BELLANTONI:  Yes.

18           THE COURT:  On the as-applied, is this a fair

19   characterization of your as-applied challenge; it is that the

20   licensing statutes are unconstitutional because the Attorney

21   General and the county sheriffs have not explained how to apply

22   for permits to carry handguns openly in public?  Is that a fair

23   characterization of your as-applied challenge?

24           MS. BELLANTONI:  No, Your Honor.  I would say that as

25   applied there is a bar to applying for an open carry license,

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

ER-1466

1    and that bar is Penal Code 26175, which requires that

2    applications for carry permits be only those that are issued by

3    the Department of Justice.

4          And Exhibit 2, the reply -- the reply motion or the

5    reply to the motion or to the opposition filed by the State

6    contains the concealed carry application, and it specifically

7    says "Concealed Carry Application," and there is no procedure

8    or form or application in which to apply for an open carry

9    license and, as such, no sheriff or chief of police can issue

10   an open carry based on the fact that they do not have a form

11   that allows them to so issue.

12         In addition to that, there was a response to a FOIA

13   request that was made of the State which indicates that, in

14   fact, no open carry licenses had been issued by 2012.

15         THE COURT:  Is there anything before me that allows me

16   to know exactly what the defendant here, the State, the

17   Attorney General, what actions it took with respect to the

18   named plaintiffs?

19         MS. BELLANTONI:  Well, I'm not alleging an equal

20   protection claim where they are, you know, a "class of one," so

21   to speak; but, as applied to my clients, this does violate

22   their constitutional rights in the -- to the extent that they

23   specifically are unable to apply for an open carry license.

24   And if they exercise their right to open carry, they would be

25   subject to criminal penalties and prosecution and potentially

ER-1467

1    the loss and forfeiture of that very right.

2         THE COURT:  So it's the omission of provisions that is

3    the -- underlies the as-applied challenge?

4         MS. BELLANTONI:  I'm sorry.  I didn't hear the

5    beginning of your sentence, Your Honor.

6         THE COURT:  It's the absence of provisions that

7    underlies the as-applied, the absence of affirmative provisions

8    that underlies the as-applied.  That's how it affects your --

9         MS. BELLANTONI:  It's the existence of a criminal --

10    yeah.  It's the existence of a criminal statute that prevents

11    and prohibits the free exercise of the right in the first

12    instance.  It's the "may issue" requirement that requires

13    permission before exercising a constitutional right.  And even

14    if they were to subject themselves to the licensing scheme,

15    there is no procedure in which to even apply for an open carry

16    license, nor is there an ability of the licensing authority to

17    issue one.

18         THE COURT:  All right.  Mr. Wise, to the extent that

19    you're hearing some clarification here, is there anything more

20    you have to say in response to the nature of the as-applied

21    challenge?

22         MR. WISE:  Well, I'm not following how it's an

23    as-applied challenge, frankly.  I think, from what I can tell,

24    plaintiffs are challenging the statute.  They believe there

25    should be open carry throughout the State of California.  They

1    believe that there shouldn't be a "may issue" provision in the

2    statute.

3          The plaintiffs went to their sheriffs and, for

4    whatever reason -- I mean, what's alleged is that they went to

5    their sheriffs.  You know, we haven't fully fleshed out all the

6    facts, but they've alleged that they went to their local county

7    sheriffs -- they live in counties where they can get an open

8    carry license -- and those sheriffs denied them that license

9    for whatever reason.  And we don't know what the reason is.

10   It's not alleged that the sheriffs said, "Oh, well, we talked

11   to the Attorney General's Office and this license can only be

12   used -- this application can only be used for, you know, for a

13   concealed carry permit."  There's no allegation of that.  So

14   again, this looks like a facial challenge to us.

15         THE COURT:  All right.  I understand that argument.

16         So Ms. Bellantoni, on *Young*, you're saying I should

17   follow the Supreme Court only and basically disregard *Young*,

18   right?

19         MS. BELLANTONI:  Yes, Your Honor.  That's exactly what

20   I'm saying because the --

21         THE COURT:  What's your authority?  What's your

22   authority for a trial court in the Ninth Circuit disregarding

23   an en banc decision of the circuit court?

24         MS. BELLANTONI:  I would say that I would direct the

25   Court to *Hutto v. Davis*, which is at 454 U.S. 370, in which the

ER-1469

1    Supreme Court specifically addressed this issue.  And in

2    Justice Rehnquist's decision, he said "Federal courts are bound

3    to adhere to the controlling decisions of the Supreme Court."

4         In that case there was an issue of Eighth Amendment

5    protections.  It was a habeas issue in the district court.  The

6    allegation was that the defendant had been sentenced to, you

7    know, 40 years, which was cruel and unusual, and the district

8    court agreed and granted the habeas; and then the Fourth

9    Circuit reversed, basing it on the legislature's prerogative to

10   set sentencing guidelines.  And they sat en banc and then they

11   reversed the Fourth Circuit and said that, you know, it was

12   cruel and unusual.

13        And when it went up to the Supreme Court, they cited

14   the *Rummel v. Estelle* case at 445 U.S. 263 and sent the case

15   back down to the Fourth Circuit en banc to reconsider based on

16   the holding in that case.

17        THE COURT:  Where does the Court say a trial court can

18   disregard -- this Court often is looking to Ninth Circuit

19   authority, which I understand to be controlling unless or until

20   overruled by the Supreme Court, of course.

21        MS. BELLANTONI:  So the Supreme Court has already

22   spoken.

23        THE COURT:  But where does the Supreme Court say a

24   trial judge can disregard her appellate court's en banc

25   decision?

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

ER-1470

1          MS. BELLANTONI:  Yeah.  In *Hutto v. Davis*, Justice

2     Rehnquist --

3          THE COURT:  You just pointed me to that.  You just

4     pointed me to that.

5          MS. BELLANTONI:  -- specifically says the federal

6     courts could be viewed as having ignored, consciously or

7     unconsciously, the hierarchy of the federal system created by

8     the Constitution and Congress.

9          This Court is bound by the Supreme Court, which has

10     spoken on the issue of the scope of the Second Amendment and

11     the fact that the Ninth Circuit has decided to become an

12     outlier and issue a rogue decision that violates and goes

13     contrary to the plain language of the Second Amendment as well

14     as the Court's decision in *Heller* defining the scope of the

15     Second Amendment as being the guaranteed -- guaranteeing this

16     individual right to possess and carry weapons in case of

17     confrontation.  That's *Heller* at 512.

18          THE COURT:  So the implications are any time this

19     Court thinks the Ninth Circuit got it wrong, I can write the

20     appellate court out of existence --

21          MS. BELLANTONI:  Not at all, Your Honor.

22          THE COURT:  -- and not respect the hierarchy that

23     Congress has established?  That's the implication, right?

24          MS. BELLANTONI:  Congress established the hierarchy,

25     and at the top of that pyramid is the Supreme Court.  So the

ER-1471

1      federal courts --

2              THE COURT:  So appellate courts -- a trial judge, in

3      your view, can be arrogated the authority to simply disregard

4      her appellate court?  That does not turn the system on its

5      head?

6              MS. BELLANTONI:  What turns the system on its head is

7      when the district and appellate courts don't follow the law

8      that's been set out by the Supreme Court.

9              So I think that Your Honor would be following her duty

10     and would be following the hierarchy by disregarding and not

11     following off the cliff an appellate court that is completely

12     contrary to the holding of the Supreme Court, which has already

13     spoken to the issue of the scope of the Second Amendment.

14             THE COURT:  Well, I think that's a stunning and

15     troubling argument and potentially frivolous.  I'll have to

16     think hard about what you're saying here.  And I'll go back and

17     check the exact language, but characterizing the Ninth

18     Circuit's en banc decision as rogue is also very troubling to

19     this Court.

20             I've looked at Judge Bybee's decision, a thorough

21     going, explaining his reasoning.  Reasonable judges can

22     disagree, there are dissenters on that en banc court, but Judge

23     Bybee is no rogue, and he carefully explains, as is a federal

24     judge's duty, his reading of *Heller*, what he draws from that

25     and what it means in terms of the en banc court's resolution of

ER-1472

1    the question before it.

2         The Ninth Circuit is not the final stop if the Supreme

3    Court decides to take a case, and I do have a question about

4    the *New York State Rifle* case, but I understand your position.

5    It is very troubling to this one judge.

6         Let me just ask if there's anything you want to say on

7    this point, Mr. Wise?  I'm not asking you to weigh in, but if

8    you want to say something, you may.

9         MR. WISE:  Well, *Young* is binding, of course.  And I

10   would just add, and we said this initially in our opposition,

11   that we don't believe that this motion was properly brought.

12   We believe that this Court, when it indicated that the motion

13   could be renewed, was envisioning a scenario where the Ninth

14   Circuit or another court came to the opposite of the conclusion

15   in *Young*.

16        THE COURT:  All right.  Final question.  First

17   Mr. Wise and then Ms. Bellantoni.  Should I stay -- even if I

18   resolve the motion pending before me, should I then stay the

19   case pending the Supreme Court's decision in *New York State*

20   *Rifle v. Corlett*, Mr. Wise?

21        MR. WISE:  We believe that this Court should stay the

22   case.  The Supreme Court is obviously taking a closer look at

23   firearms issues and guidance, you know, on the scope of *Heller*

24   and what *Heller* means in the Ninth Circuit -- and, excuse me,

25   the Second Amendment, you know, could guide this Court's

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

ER-1473

1    decision-making.

2           You know, I think that plaintiff's counsel views the

3    Court as saying something in *Heller* that obviously we don't

4    agree with and I think is taking maybe hints from some of

5    Justice Thomas's language and cert petition denials, but, you

6    know, I think this Court would be well served by waiting to see

7    what the Supreme Court does in some of these cases.  It might

8    guide decision-making in this case.

9           THE COURT:  All right.  And I saw you nodding your

10   head, Ms. Bellantoni, so you agree?

11          MS. BELLANTONI:  No, I don't agree.  No, I was not.  I

12   was thinking of a completely different outcome here, Your

13   Honor.  No.

14          The New York State case -- actually, the question

15   presented was -- it was narrowed by the Supreme Court not to

16   cover the entirety of public hearings but specifically to the

17   New York statute and those statutes that require proper cause

18   or good cause, like New York does, like California and I

19   believe New Jersey.  And that's specific to concealed carry.

20   So the outcome -- and by narrowing the question presented, I

21   would argue that the Supreme Court is and will be addressing

22   only concealed carry.  And I also would argue that they will be

23   taking a plea on case - on its petition for cert and granting

24   that and reversing the Ninth Circuit in their decision and

25   maybe will address -- obviously will address open carry, you

ER-1474

15

1    know, in that respect.  But the New York case I don't believe

2    will have any bearing on this case.

3           THE COURT:  All right.  I have what I need, so the

4    matter is submitted.  You may sign off.

5        (Concluded at 11:29 a.m.)

6

7                    C E R T I F I C A T E

8

9      I certify that the foregoing is a true and correct

10   transcript of the record of proceedings in the above-entitled

11   matter.

12   _____        July 19, 2021

13   JENNIFER L. COULTHARD, RMR, CRR               DATE
     Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

(21 of 40), Page 21 of 40    Case: 24-565, 04/17/2024, DktEntry: 10.8, Page 21 of 40
ER-1475
Case 2:19-cv-00617-KJM-AC   Document 47-3   Filed 07/09/21   Page 2 of 2

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Telephone: (916) 210-6183
E-Mail: PublicRecords@doj.ca.gov

February 21, 2019

**Via email to:**
Mark A. Baird
mcbair@icloud.com

RE:   Your Recent Public Records Act Request Dated January 29, 2019; No. 2019-00207

Dear Mr. Baird:

This letter is in response to your recent correspondence, which was received by the Public Records Unit of the California Department of Justice on January 29, 2019. You have requested information pursuant to the California Public Records Act, found in California Government Code section 6250 et seq.

Specifically, you stated:

> *I would like to know how many open carry permits, Ca Penal Code sec 26150[, subd. (b)(2)], have been issued since 2012.*

We checked with knowledgeable persons and searched logical places, and we did not identify any documents responsive to this request. Penal Code section 26150, subdivision (b)(2), authorizes county sheriffs to issue open carry permits when the population of a county is less than 200,000. Because the Department is not the issuing authority for open carry permits, and because the information the Department has is only as reliable as to what is reported to it by local agencies, it does not maintain any statistical data regarding the number of open carry permits issued by local law enforcement agencies under the cited Penal Code provision. The Department advises you to contact local law enforcement agencies in counties with populations under 200,000 for this information.

Sincerely,

Public Records Coordinator

For     XAVIER BECERRA
        Attorney General

1   COSCA LAW CORPORATION
    CHRIS COSCA   SBN 144546
2   1007 7th Street, Suite 210
    Sacramento, CA 95814
3   916-440-1010

4
    AMY L. BELLANTONI
5   THE BELLANTONI LAW FIRM, PLLC
    2 Overhill Road, Suite 400
6   Scarsdale, NY 10583
    Telephone: 914-367-0090
7   Facsimile:  888-763-9761
    *Pro Hac Vice*
8

9   Attorneys for Plaintiffs

10                  **IN THE UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF CALIFORNIA**
11  --------------------------------------------------------x

12  MARK BAIRD and
    RICHARD GALLARDO,
13
                        Plaintiffs,          **Case No.: 2:19-cv-00617-KJM-AC**
14
                 v.                          **FIRST AMENDED COMPLAINT**
15                                           **FOR DECLARATORY AND**
                                             **INJUNCTIVE RELIEF**
16  XAVIER BECERRA, in his official capacity
    as Attorney General of the State of California,
17
                        Defendant.
18
19  --------------------------------------------------------x

20        NOW COME Plaintiffs, MARK BAIRD and RICHARD GALLARDO, by and through

21  their counsel, and allege against Defendant California Attorney General Xavier Becerra as

22  follows:

23                        **NATURE OF THE ACTION**

24        1.  This is an action for declaratory and injunctive relief proximately caused by the actions

25  of the defendant for violations of Plaintiffs' fundamental human rights under the Second

26  Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

27

28

                                    1

        COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(23 of 40), Page 23 of 40        Case: 24-565, 04/17/2024, DktEntry: 10.8, Page 23 of 40
ER-1477
Case 2:19-cv-00617-KJM-AC   Document 34   Filed 09/21/20   Page 2 of 38

**JURISDICTION AND VENUE**

2. The Court's jurisdiction over Plaintiffs' federal claims is authorized pursuant to 28 U.S.C. § 1331 and § 1343.

3. The Court's jurisdiction over Plaintiffs' claims for injunctive and declaratory relief is authorized by 28 U.S.C. § 2201 and § 2202.

4. The Court's jurisdiction over Plaintiffs' federal claims and for statutory attorney's fees is authorized pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

5. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**THE PARTIES**

6. Plaintiff, MARK BAIRD ("Plaintiff" or "Mr. Baird") is a United States citizen and a resident of Siskiyou County, California.

7. Plaintiff, RICHARD GALLARDO ("Plaintiff" of "Mr. Gallardo") is a United States citizen and a resident of Shasta County, California.

8. Defendant XAVIER BECERRA ("Defendant" or "Defendant Becerra") is the Attorney General of the State of California. Defendant Becerra is sued herein in his official capacity only. Pursuant to California State Constitution Article V, Section 13, as the Attorney General for the State of California, Defendant is the chief law enforcement officer of the State whose duty it is to ensure that the laws of the State are uniformly and adequately enforced.

9. Defendant Becerra has direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to Defendant may seem advisable.

10. Whenever in the opinion of the Defendant any law of the State is not being adequately enforced in any county, it shall be Defendant's duty to prosecute any violations of law of which the superior court shall have jurisdiction. In such cases Defendant shall have all the powers of a district attorney. When required by the public interest or directed by the Governor,

2

ER-1478

1     Defendant shall assist any district attorney in the discharge of the duties of that office.

2     **STATEMENT OF FACTS**

3     ***Plaintiff Mark Baird: Siskiyou County***

4          11.  Plaintiff Mark Baird is an individual of unquestionably good moral character, a law-

5     abiding citizen, and has never been charged with, summoned, or arrested for any violation of the

6     California State Penal Code or any other criminal offense.

7          12.  Mr. Baird is not a person prohibited by state or federal law from possessing,

8     receiving, owning, or purchasing a firearm.

9          13.  Mr. Baird does not hold a California firearm license and does not fall within any of

10     the exemptions to the California Penal Code sections criminalizing the possession of firearms,

11     whether loaded or unloaded.

12          14.  Mr. Baird possesses firearms (handguns and long guns) in his home for self-defense.

13          15.  Under California law, no license is required to possess a handgun in one's home for

14     self-protection.

15          16.  Mr. Baird seeks to carry a handgun for self-protection outside of his home.

16          17.  Mr. Baird seeks to carry a firearm for self-protection outside of his home and in

17     public without the need to demonstrate any "cause" or "reason" for the issuance thereof.

18          18.  Mr. Baird seeks to carry a firearm for self-protection outside of his home and in

19     public without the government dictating the manner in which he carries his firearm - loaded and

20     exposed, concealed, and/or unloaded and exposed.

21          19. The County of Siskiyou, California, according to the most recent federal census, has a

22     population of less than 200,000 people.

23          20.  Based on the population of Siskiyou County, its residents are eligible to apply for an

24     open carry firearm license under California's statutory firearms licensing scheme.

25          21.  As a resident of the County of Siskiyou, Mr. Baird is prohibited from applying for a

26     handgun carry license in any other county in California.

27          22.  Mr. Baird intends to carry a handgun outside of his home, open and exposed or

28     otherwise, with or without a carry license.

3

FIRST AMENDED COMPLAINT

ER-1479

23.  Mr. Baird intends to carry a handgun open and exposed outside of Siskiyou County.

***Siskiyou County Application Process Devoid of "Open Carry" Option***

24.  The Siskiyou County written criteria for the issuance of a carry license does not contain an option for applying for an open carry license.

25.  The Siskiyou County written instructions for a "carry" license only identify an option for concealed carry, not open carry.

26.  The Siskiyou County handgun licensing procedure has no option for individuals not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm to apply for an open carry license.

27.  The Siskiyou County Sheriff's Office Information Form is entitled, "CONCEALED WEAPON LICENSE RENEWAL/CHANGE".

28.  The Siskiyou County Sheriff's Office has no form for an "Open Carry Renewal/Change".

29.  The second page of the Siskiyou County Sheriff's Office Information Form indicates, "Signature of CCW holder".

30.  There are no forms used by the Siskiyou County Sheriff's Office, or available to the law-abiding residents of Siskiyou County, for the purpose of applying for an "Open Carry" handgun license.

31.  The Siskiyou County Sheriff's website only provides "Concealed Carry Weapon Information", and not "Open Carry Weapon Information". The Siskiyou County Sheriff's website has no information related to obtaining and/or applying for an open carry license.

32.  The Siskiyou County Sheriff's Office provides to carry license applicants an approved firearm application form issued by the State of California Department of Justice (the "DOJ Application"). The DOJ Application contains a section for the applicant to indicate the type of license being applied for, which is to be filled out by the applicant.

33.  The "type of license" section on the DOJ Application handed out by the Siskiyou County Sheriff's Office is pre-populated by the Siskiyou County Sheriff's Office and indicates, "STANDARD CCW".

4

FIRST AMENDED COMPLAINT

ER-1480

34. By filling in the "type of license" section on the DOJ Application, the Siskiyou County Sheriff's Office eliminates the ability for Siskiyou County residents to apply for an open carry license.

35. By filling in the "type of license" section on the DOJ Application, the Siskiyou County Sheriff's Office purposely conceals from its residents their right to choose the type of handgun license to apply for, to wit, open carry.

36. On more than one occasion, Mr. Baird applied to Siskiyou County Sheriff Jon Lopey ("Sheriff Lopey") for an open carry license for self-defense in public pursuant to California Penal Code § 26150.

37. Sheriff Lopey has denied each of Mr. Baird's requests for an open carry firearms license.

38. In Siskiyou County, even where an applicant has met the criteria for the issuance of an open carry license, the "may issue" language of California's licensing scheme gives Sheriff Lopey the authority to deny the application. (Penal Code § 26150(b)).

39. Mr. Baird has met the criteria for the issuance of an open carry license, yet Sheriff Lopey has denied his applications.

40. Sheriff Lopey was authorized to deny Mr. Baird's applications because California's licensing scheme contains the language "may issue".  (Penal Code § 26150(b)).

41. Upon information and belief, Sheriff Lopey's described conduct is performed at the direction of and/or with the knowledge and approval of Defendant Becerra.

42. There is no administrative appeal process available for challenging Sheriff Lopey's denial of Mr. Baird's applications for an open carry license.

43. Even if there were an available administrative appeal process to challenge Sheriff Lopey's denial of Mr. Baird's application for an open carry license, such 'process' would be futile because Sheriff Lopey informed Mr. Baird that he will not issue "open carry" licenses.

44. Upon information and belief, Sheriff Lopey has not issued any open carry firearm licenses during his tenure as Sheriff of Siskiyou County.

5

FIRST AMENDED COMPLAINT

45.  If the language of California's licensing scheme provided that the Sheriffs "shall issue" an open carry license to applicants who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, Sheriff Lopey would be required by law to issue an open carry license to Mr. Baird.

46. Mr. Baird would apply for an open carry license in a county other than Siskiyou County, but is prohibited by California Penal Code § 26150 (b) (2).

47.  California law requires open carry license applications be made in the county of residence.

48.  Mr. Baird seeks to carry a firearm loaded and exposed for self-protection outside of Siskiyou County, but is precluded by California State Penal Code § 26150 (b) (2), which provides that an open carry license is only valid in the county of issuance.

49.  If issued an open carry license. Mr. Baird's right to self-protection outside of his home will exist only within Siskiyou County.

50.  The moment Mr. Baird steps over the line from Siskiyou County into any other county in California, his open carry license becomes invalid, leaving him subject to criminal prosecution and incarceration. (See, Penal Codes § 25850, § 26350, § 26150, and § 26155).

51.  Mr. Baird, in fact, travels outside of Siskiyou County and intends to carry a handgun loaded and exposed for self-protection during such travels throughout the State of California.

52.  Irrespective of the frequency of Mr. Baird's travels outside of Siskiyou County, his right to open carry while traveling outside of his county of residence is being infringed and violated by California State Law and Defendant who, *inter alia,* enforce and direct the enforcement of such laws.

53.  Mr. Baird intends to exercise his Second Amendment right to carry a handgun outside of his home for self-protection, including carrying loaded and exposed, in Siskiyou County and throughout the State of California, with or without a license to carry, as he is not a person prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm who seeks to exercise a core right protected by the Second Amendment.

6

FIRST AMENDED COMPLAINT

*Plaintiff Richard Gallardo: Shasta County*

54. Plaintiff Richard Gallardo is an individual of unquestionably good moral character, a law-abiding citizen, and has never been charged with, summoned, or arrested for any violation of the California State Penal Code or any other criminal offense.

55. Mr. Gallardo is not a person prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

56. Mr. Gallardo does not hold a California firearm license and does not fall within any of the exemptions to the California Penal Code sections criminalizing the possession of firearms, whether loaded or unloaded.

57. Mr. Gallardo possesses firearms in his home for self-defense.

58. Under California law, no license is required to possess a firearm in one's home for self-defense.

59. Mr. Gallardo seeks to carry a handgun for self-protection outside of his home.

60. Mr. Gallardo also seeks to carry a handgun loaded and exposed for self-protection outside of his home and in public.

61. Mr. Gallardo seeks to carry a firearm for self-protection outside of his home and in public without the need to demonstrate any "cause" or "reason" for the issuance thereof.

62. Mr. Gallardo seeks to carry a firearm for self-protection outside of his home and in public without the government dictating the manner in which he carries his firearm - loaded and exposed, concealed, and/or unloaded and exposed.

63. Mr. Gallardo is a resident of Shasta County, California. Shasta County has a population of less than 200,000 people. The residents of Shasta County are eligible to apply for an open carry firearm license under California's statutory firearms licensing scheme.

64. Based on the population of Shasta County, its residents are eligible to apply for an open carry firearm license under California's statutory firearms licensing scheme.

65. As a resident of the County of Shasta, Mr. Gallardo is prohibited from applying for a concealed carry or open carry license in any other county in California.

7

FIRST AMENDED COMPLAINT

(29 of 40), Page 29 of 40    Case: 24-565, 04/17/2024, DktEntry: 10.8, Page 29 of 40
ER-1483
Case 2:19-cv-00617-KJM-AC    Document 34    Filed 09/21/20    Page 8 of 38

66.  Mr. Gallardo intends to carry a handgun outside of his home, open and exposed or otherwise, with or without a carry license.

67.  Mr. Gallardo intends to carry a handgun open and exposed outside of Shasta County.

***Shasta County Application Process Devoid of "Open Carry" Option***

68.  The Shasta County written criteria for the issuance of a carry license does not contain an option for applying for an open carry license.

69.  The Shasta County written instructions for a "carry" license identify only "concealed carry".

70.  The Shasta County handgun licensing procedure has no option for individuals not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm to apply for an open carry license.

71.  The Shasta County Sheriff's Office Criteria and Requirements Form only mentions the process for applying for a Concealed Carry License.

72.  The Shasta County Sheriff's Office has no application form for an "Open Carry Renewal/Change".

73.  There are no forms available or used by the Shasta County Sheriff's Office for the purpose of applying for an "Open Carry" handgun license.

74.  The Shasta County Sheriff's website only provides information pertaining to applying for a "Concealed Carry Weapon" license, and no information pertaining to applying for an "Open Carry" license.

75.  The Shasta County application instructions entitled, "Concealed Weapon Permit Application Process" only pertains to applying for a concealed carry license. Shasta County has no instructions pertaining to applying for an open carry license.

76.  The Shasta County Sheriff's Office provides the approved firearm application form issued by the State of California Department of Justice (the "DOJ Application"), which is entitled, "Standard Application for License to Carry a Concealed Weapon (CCW)."

77.  Shasta County Sheriff Tom Bosenko ("Sheriff Bosenko") has not issued any open carry firearm licenses during his tenure in Shasta County.

8

FIRST AMENDED COMPLAINT

78.  Sheriff Bosenko has publicly declared that he will never issue an open carry firearm license because open carry would cause a lot of angst, fear, and concern for his deputies.

79.  Sheriff Bosenko stated publicly that, to his knowledge based on his regular meetings with the Sheriffs around the State, none of the Sheriffs serving in § 26150 (b) (2) counties in California have ever issued "open carry" pistol licenses.  Upon information and belief, Sheriff Bosenko and all other Sheriffs in the State of California are refusing to issue open carry firearm licenses at the direction of and/or with the knowledge and approval of Defendant Becerra.

80.  Mr. Gallardo applied to Sheriff Bosenko's office for an open carry license on more than one occasion.  Each of Mr. Gallardo's applications for an open carry license were denied by the Shasta County Sheriff's Office.

81.  The Shasta County Sheriff's Office explained, "We don't offer a license to carry loaded and exposed in Shasta County.  This type of license is only good in the county issued and we would have to extend this option to all permit holders."

82.  Mr. Gallardo has met the criteria for the issuance of an open carry license, yet the "may issue" language of California's licensing scheme gives Sheriff Bosenko the authority to deny the application. (Penal Code §26150 (b)).

83.  If the language of California's licensing scheme provided that the Sheriffs "shall issue" an open carry license to applicants who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, Sheriff Lopey would be required by law to issue an open carry license to Mr. Baird.

84.  Mr. Gallardo would apply for an open carry license in a county other than Shasta County, but is prohibited by California Penal Code 26150 (b) (2). California law requires open carry license applications be made in the county of residence. Open carry licenses are invalid outside of the county of issuance.

85.  Mr. Gallardo does not have a residence outside of Shasta County and is, therefore, ineligible to apply for an open carry license in any other county.

86.  There is no administrative appeal process available for challenging Sheriff Bosenko's denial of Mr. Gallardo's applications for an open carry license.

9

FIRST AMENDED COMPLAINT

ER-1485

87. Even if there were an available administrative appeal process to challenge Sheriff Bosenko's denial of Mr. Gallardo's application for an open carry license, such 'process' would be futile because Sheriff Bosenko admitted that he does not, and will not, issue open carry licenses in Shasta County.

88. Mr. Gallardo seeks to carry a firearm loaded and exposed for self-protection outside of Shasta County, but is precluded by California State Penal Code § 26150 (b) (2), which provides that an open carry license is only valid in the county of issuance.

89. If Mr. Gallardo is ultimately issued an open carry license, his right to self-protection outside of his home will exist only within Shasta County. The moment Mr. Gallardo steps over the line from Shasta County into any other county in California, his open carry license would become invalid, leaving him subject to criminal prosecution and incarceration. See, Penal Codes § 25850, § 26350, § 26150, and § 26155.

90. Mr. Gallardo, in fact, travels outside of Shasta County and intends to carry a handgun loaded and exposed for self-protection during such travels throughout the State of California.

91. Irrespective of the frequency of Mr. Gallardo's travels outside of Shasta County, his right to open carry while traveling outside of his county of residence is infringed and violated by California State Law.

92. Mr. Gallardo intends to exercise his Second Amendment right to open carry in Shasta County and throughout the State of California, with or without an open carry license, as he is a law-abiding citizen, with no state or federal prohibitors to the possession of firearms, and seeks to exercise a core right protected by the Second Amendment, to wit, the right to open carry a firearm in public for self-protection.

### *California Penal Codes § 26150 and § 26155*

93. Under California law, no license is required to possess a firearm, including handguns, in one's home for self-defense.

94. With limited exceptions, carrying a weapon capable of being concealed (i.e., a handgun) upon the person or in a vehicle outside of one's residence is a crime in the absence of a license to carry issued by the government. Penal Code § 25850.

10

95.  To obtain a carry license, whether open carry or concealed carry, residents of California are required to apply to the statutory licensing authority, as enumerated in Penal Codes § 26150 and § 26155.

96.  Penal Codes § 26150 and § 26155 were enacted prior to the Supreme Court's holding in *McDonald v. Chicago*, 561 U. S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

97.  Penal Codes § 26150 and § 26155 were enacted under the false belief that the Second Amendment did not apply to the states.

98.  The issuance of a license to possess a handgun outside of one's home is wholly within the subjective discretion of the county sheriff under Penal Code § 26150 and the chief or other head of a municipal police department of any city or city and county under § 26155.

99.  Under each statute, the licensing authority is imbued with unfettered discretion to issue or deny an application possess a handgun outside of one's home by the language, "may issue a license".

100.  The investigation process for a license to carry a handgun involves an investigation by the California Department of Justice, which determines whether the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. See, Penal Code § 26195.

101.  A license to carry a handgun in public "shall not be issued if the Department of Justice determines that the [applicant] is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." Penal Code § 26195.

102.  Despite the mandatory investigation under § 26195, the licensing authorities are imbued with unfettered discretion under § 26150 and § 26155 to issue or deny an application to possess a handgun outside of the home.

103.  Under § 26150 and § 26155, the licensing authority is imbued with unfettered discretion to subjectively judge whether applicant has proven s/he "is of good moral character" even though the applicant is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

FIRST AMENDED COMPLAINT

104. Under § 26150 and § 26155, the licensing authority is imbued with unfettered discretion to judge whether an applicant has proven that "good cause exists for issuance of the license".

105. Under § 26150 and § 26155, even where the above criteria have been satisfied, the licensing authority is imbued with unfettered discretion to issue or deny a (i) license to carry concealed or (ii) where the population of the county is less than 200,000 persons, a license to carry a handgun loaded and exposed.

106. Under § 26150 and § 26155, even where the above criteria have been satisfied, the licensing authority is imbued with unfettered discretion to deny an application for an open carry license.

107. Under § 26150 and § 26155, a license to carry open and exposed ("open carry") is only valid within the issuing county.

108. Under § 26150 and § 26155, a license to carry open and exposed ("open carry") can only be issued in a county with a population of less than 200,000.

109. Under § 26150 and § 26155, the licensing authority is imbued with unfettered discretion to impose whatever restrictions and conditions that s/he deems warranted including, but not limited to, restrictions as to the time, place, manner, and circumstances under which the licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person, over and above those enumerated by the California State Legislature.

110. Under Penal Code 26175 (a) (1), applications for carry licenses "shall be uniform throughout the state, upon forms to be prescribed by the Attorney General."

111. The California Department of Justice ("DOJ") creates and provides to the state Sheriff's Offices standard Concealed Carry ("CCW") Application Forms. See, Penal Code § 26175.

112. Penal Code § 26175 prohibits the licensing authority from creating or offering an application for an open carry license that was not created by the California DOJ.

113. Under § 26175 (2), a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs Association, and

12

FIRST AMENDED COMPLAINT

ER-1488

1  one representative of the Department of Justice is convened to review, and, as deemed

2  appropriate, revise the standard application form for carry licenses.

3       114.  The California DOJ has not created, nor does it distribute to the various licensing

4  authorities in the state, a form application for an open carry license.

5       115.  The licensing authorities in this state, along with Defendant Becerra, collectively

6  consented to, and effectuated, a ban on the right to carry a handgun outside of the home for self-

7  defense.

8       116. The licensing authorities in this state, along with Defendant Becerra, collectively

9  consented to, and effectuated, a ban on the open carriage of handguns in this state

10      117.  For the time period encompassing 2012 to the commencement of this action, none of

11  the counties in California that have populations of less than 200,000 people (aka "26150(b)(2)

12  counties") have issued open carry licenses.

13      118.  California Penal Code § 26225 requires that a copy of all firearms licenses issued in

14  each county (open carry and concealed carry) be "filed immediately" with the California

15  Department of Justice ("DOJ").

16      119.  For the time period encompassing 2012 to the commencement of this action, the

17  DOJ's records reflect no open carry licenses have been issued in the State of California.

18                        **STATEMENT OF LAW**[1]

19                   **Public Carry is a Right, Not a Privilege**

20      120. "In short, it would take serious linguistic gymnastics—and a repudiation of this

21  Court's decision in *Heller*—to claim that the phrase 'bear Arms' does not extend the Second

22  Amendment beyond the home." *Rogers v. Grewal*, 140 S. Ct. 1865, 1869, 207 L. Ed. 2d 1059,

23  1063, 2020 U.S. LEXIS 3248, *9, 28 Fla. L. Weekly Fed. S 340 (U.S. June 15, 2020) (Thomas, J.

24  dissenting from denial of certiorari).

25      121.  As Justice Thomas clarified in *Rogers v. Grewal*, "at the time of the founding, as

26  now, to 'bear' meant to 'carry.' When used with 'arms,' . . . the term has a meaning that refers to

27  carrying for a particular purpose—confrontation." *Rogers*, 140 S. Ct. at 1868 citing, *Heller*, 554

28

---

[1] The Statement of Law is integral to Plaintiffs' claims and prayers for declaratory and injunctive relief.

13

1    U. S., at 584 (internal quotes omitted).

2        122.  "[T]he right to "bear arms" refers to the right to ""wear, bear, or carry upon the

3    person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or

4    defensive action in a case of conflict with another person.'" *Rogers*, 140 S. Ct. at 1868 (quoting

5    *Muscarello v. United States*, 524 U. S. 125, 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998)

6    (Ginsburg, J., dissenting) (alterations and some internal quotation marks omitted).

7        123.  "The most natural reading of this definition encompasses public carry." *Rogers*, 140

8    S. Ct. at 1868 citing, *Peruta v. California*, 582 U. S. ___, ___, 137 S. Ct. 1995, 198 L. Ed. 2d

9    746, 748 (2017) (Thomas, J., dissenting from denial of certiorari).

10        124.  The majority of violent confrontations occur outside the home. See, *Rogers*, 140 S.

11    Ct. at 1868 citing, *Moore v Madigan*, 702 F.3d 933, 937 (7th Cir 2012) (noting that "most

12    murders occur outside the home" in Chicago). "Thus, the right to carry arms for self-defense

13    inherently includes the right to carry in public. This conclusion not only flows from the definition

14    of 'bear Arms' but also from the natural use of the language in the text. As I have stated before, it

15    is 'extremely improbable that the Framers understood the Second Amendment to protect little

16    more than carrying a gun from the bedroom to the kitchen.'" *Rogers*, 140 S. Ct. at 1868 citing,

17    *Peruta*, supra, at ___, 137 S. Ct. 1995, 198 L. Ed. 2d 746, 748 (Thomas, J. dissenting from denial

18    of certiorari).

19        125.  "The meaning of the term 'bear Arms' is even more evident when read in the context

20    of the phrase 'right . . . to keep and bear Arms. [U. S. Const., Amdt. 2.] To speak of 'bearing'

21    arms solely within one's home would conflate 'bearing' with 'keeping,' in derogation of *Heller*'s

22    holding that the verbs codified distinct rights." Rogers, 140 S. Ct. at 1869 citing, *Drake v Filko*,

23    724 F3d 426, 444 (3d Cir 2013) (Hardiman, J., dissenting); *Moore*, supra, at 936.

24        126.  Founding era legal commentators in America understood the Second Amendment

25    right to "bear Arms" to encompass the right to carry in public. *Rogers*, 140 S. Ct. at 1870.

26        127.  An individual does not forfeit his right to self-protection by stepping outside of his

27    home. The right to self-protection is as great outside of one's home as it is inside the home.

28    *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012).

FIRST AMENDED COMPLAINT

ER-1490

**Multi-Tiered Scrutiny of Second Amendment Violations is "Made Up"**

128. "Many courts have resisted our decisions in *Heller* and *McDonald*. [citing *Silvester v. Becerra*, 583 U. S. ___, ___, 138 S. Ct. 945, 200 L. Ed. 2d 293, 299 (2018) (opinion dissenting from denial of certiorari)]. Instead of following the guidance provided in *Heller*, these courts minimized that decision's framework. [citing, *Gould v. Morgan*, 907 F. 3d 659, 667 (CA1 2018) (concluding that our decisions "did not provide much clarity as to how Second Amendment claims should be analyzed in future cases")]. They then 'filled' the self-created 'analytical vacuum' with a 'two-step inquiry' that incorporates tiers of scrutiny on a sliding scale. [citing *National Rifle Assn. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F. 3d 185, 194 (CA5 2012); *Powell v. Tompkins*, 783 F. 3d 332, 347, n. 9 (CA1 2015) (compiling Circuit opinions adopting some form of the sliding-scale framework)]." *Rogers*, 140 S Ct 1865at 1866.

129. Of the states that require "good cause" or "proper cause" for the issuance of a carry license, like California and New York, the circuit courts have applied a test for scrutiny that is "**entirely made up**. The Second Amendment provides no hierarchy of 'core' and peripheral rights. And the Constitution does not prescribe tiers of scrutiny." *Rogers*, 140 S. Ct. at 1867 (emphasis added) citing, *Whole Woman's Health v. Hellerstedt*, 579 U. S. ___, ___, 136 S. Ct. 2292, 195 L. Ed. 2d 665, 706 (2016) (Thomas, J., dissenting); *Heller v District of Columbia*, 399 U.S. App DC 314, 670 F.3d 1283, 1247 (2011) (*Heller II*), supra, at 1283 (Kavanaugh, J., dissenting) (listing constitutional rights that are not subject to means-ends scrutiny).

130. "[T]here is nothing in our Second Amendment precedents that supports the application of what has been described as 'a tripartite binary test with a sliding scale and a reasonable fit.'" *Rogers*, 140 S. Ct. at 1867 citing, *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1117 (SD Cal. 2017), aff 'd, 742 Fed. Appx. 218 (CA9 2018).

**Application of the "Made Up" Scrutiny Test Yields Analyses Inconsistent with *Heller***

131. "Even accepting this test on its terms, its application has yielded analyses that are entirely inconsistent with *Heller*. There, we cautioned that "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all," stating that our

15

1    constitutional rights must be protected "whether or not future legislatures or (yes) even future

2    judges think that scope too broad." *Rogers*, 140 S. Ct. at 1867 citing, *Heller*, 554 U. S. at 634-

3    635.

4        132. While erroneously applying a "made up" test inconsistent with the holding in *Heller,*

5    [see, *Rogers v Grewal*, 140 S Ct at 1867] the Ninth Circuit has held that the "concealed carry" of

6    firearms is merely a 'privilege' and not a core right subject to the protections of the Second

7    Amendment. *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (*Peruta II*)

8    (cert. den.).

9                **"Interest Balancing" Public Safety Inquiries Were Explicitly Rejected by *Heller***

10       133. "The Second Amendment provides no hierarchy of 'core' and peripheral rights. And

11   the Constitution does not prescribe tiers of scrutiny. On that basis, we explicitly rejected the

12   invitation to evaluate Second Amendment challenges under an 'interest-balancing inquiry, with

13   the interests protected by the Second Amendment on one side and the governmental public-safety

14   concerns on the other…But the application of the test adopted by the courts of appeals has

15   devolved into just that." *Rogers*, 140 S. Ct. at 1867.

16       134. "In fact, at least one scholar has contended that this interest-balancing approach has

17   ultimately carried the day, as the lower courts systematically ignore the Court's actual holding in

18   *Heller*. See Rostron, Justice Breyer's Triumph in the Third Battle Over the Second Amendment,

19   80 Geo. Wash. L. Rev. 703 (2012). With what other constitutional right would this Court allow

20   such blatant defiance of its precedent?" *Rogers*, 140 S. Ct. at 1867.

21                      **Law Enforcement Has No Duty to Protect Any Individual**

22       135. It is well-settled that law enforcement has no duty to protect the individual. See,

23   *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint

24   where police failed to take steps to respond to the continued threats, harassment and violence by

25   estranged husband because "there is, in general, no constitutional duty of state officials to protect

26   members of the public at large from crime."); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L.

27   Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th

28   Cir 1987); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982).

FIRST AMENDED COMPLAINT

1    136. Not only does the individual have the right to self-protection, s/he has the duty of

2    self-protection at home and in public because of the absence of law enforcement to protect any

3    individual.

4    137. The Supreme Court has recognized that the individual's right to self-defense is as

5    critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia*

6    *v. Heller*, 554 US at 595-599; *McDonald*, 561 U.S. at 776.

7    **California's Handgun Licensing Scheme**

8    138. With limited exceptions, carrying a weapon capable of being concealed (i.e., a

9    handgun) upon the person or in a vehicle outside of one's residence is a crime in the absence of a

10    license to carry a handgun issued by the government. Penal Code § 25850.

11    139. Openly carrying an unloaded handgun upon one's person outside of the home is a

12    crime. See, Penal Code § 26350.

13    140. To obtain a license to carry a handgun, whether for open carry or concealed carry,

14    residents of California are required to apply to the statutory licensing authority, as enumerated in

15    Penal Codes § 26150 and § 26155.

16    141. Penal Codes § 26150 and § 26155 were enacted prior to the Supreme Court's holding

17    in *McDonald v. Chicago*, 561 U. S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

18    142. Penal Codes § 26150 and § 26155 were enacted under the false belief that the Second

19    Amendment did not apply to the states.

20    143. Under California's licensing scheme, the issuance of a license to possess a handgun

21    outside of one's home is wholly within the subjective discretion of the county sheriff under

22    § 26150 and the chief or other head of a municipal police department of any city or city and

23    county under § 26155.

24    144.  For every carry license issued, each licensing authority is imbued with unfettered

25    discretion to impose whatever restrictions and conditions that s/he deems warranted including, but

26    not limited to, restrictions as to the time, place, manner, and circumstances under which the

27    licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the

28    person, over and above those enumerated by the California State Legislature.

FIRST AMENDED COMPLAINT

145. Under Penal Code § 26175 (a) (1), applications for carry licenses "shall be uniform throughout the state, upon forms to be prescribed by the Attorney General."

146. The California Department of Justice ("DOJ") creates and provides to the state Sheriff's Offices standard Concealed Carry ("CCW") Application Forms. See, Penal Code § 26175.

147. Penal Code § 26175 prohibits the licensing authority from creating or offering an application for an open carry license that was not created by the California DOJ.

148. Under § 26175 (2), a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs Association, and one representative of the Department of Justice is convened to review, and, as deemed appropriate, revise the standard application form for carry licenses.

149. The California DOJ has not created, nor does it distribute to the various licensing authorities in the state, a form application for an open carry license.

150. The licensing authorities in this state, along with Defendant Becerra, collectively consented to and effectuated a ban on the open carriage of handguns in this state.

151. For the time period encompassing 2012 to the commencement of this action, none of the counties in California that have populations of less than 200,000 people (aka "26150(b)(2) counties") have issued open carry licenses.

152. California Penal Code § 26225 requires that a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the California Department of Justice ("DOJ").

153. For the time period encompassing 2012 to the commencement of this action, the DOJ's records reflect no open carry licenses have been issued in the State of California.

### "May Issue" Discretion of § 26150 and § 26155
### Violates the Second Amendment

154. Every application for a handgun carry license requires an investigation by the California DOJ to determine whether the applicant is prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. See, Penal Code § 26195.

18

FIRST AMENDED COMPLAINT

ER-1494

1   155. Under § 26150 (a) and § 26155 (a), even where an applicant is not prohibited under

2   state or federal law from possessing, receiving, owning, or purchasing a firearm, the licensing

3   authority has the discretion to deny the carry application.

4   156. The language in § 26150 (a) and § 26155 (a) that a licensing authority "may issue a

5   license", authorizes but does not require, the licensing authority to issue, a handgun carry license.

6   157. This discretionary power subjects the Second Amendment right to carry arms for

7   self-protection outside of the home to the discretionary whims of the government.

8   **Subjective "Moral Character" Discretion of § 26150 and § 26155**

9   **Violates the Second Amendment**

10  158. The licensing authorities are imbued with unfettered discretion to issue or deny an

11  application to possess a handgun outside of one's home even where an applicant has no

12  prohibitors to firearm possession under state or federal law.

13  159. Under Penal Codes § 26150 and § 26155, the licensing authority has unfettered

14  discretion to deny the issuance of handgun carry license to an applicant who is not otherwise

15  prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm

16  simply because the licensing authority feels that the applicant does not have "good moral

17  character".

18  160. The subjective and discretionary "moral character" language of § 26150 and

19  § 26155 violates the Second Amendment.

20  **"Good Cause" Requirement of § 26150 and § 26155**

21  **Violates the Second Amendment**

22  161.  Under § 26150 (a) (2) and § 26155 (a) (2), an applicant must demonstrate "good

23  cause" for the issuance of a carry license, whether for open carry or concealed carry.

24  162. Requiring an individual to prove "good cause" before a license to carry a handgun

25  outside of the home – whether for a concealed carry license or an open carry license - violates the

26  Second Amendment. See, *Rogers*, 140 S. Ct. at 1868 (quoting *Muscarello v. United States*, 524

27  U. S. 125, 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998) (Ginsburg, J., dissenting) (alterations

28  and some internal quotation marks omitted) ("[T]he right to "bear arms" refers to the right to

19

FIRST AMENDED COMPLAINT