1    "'wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being

2    armed and ready for offensive or defensive action in a case of conflict with another person.'"

3                    **The "Good Cause" Requirement Bans an Enumerated Right**

4            163. "It appears that a handful of States throughout the country prohibit citizens from

5    carrying arms in public unless they can establish 'good cause' or a 'justifiable need' for doing so.

6    The majority of States, while regulating the carrying of arms to varying degrees, have not

7    imposed such a restriction, which amounts to a ban on the ability of most citizens to exercise an

8    enumerated right." *Rogers*, 140 S. Ct. at 1874 citing, *Wrenn v District of Columbia*, 431 US App

9    DC 62, 78, 864 F3d 650, 666 (2017) (internal alterations omitted).

10           164. The average person cannot establish "good cause", which is commonly defined in the

11   Ninth Circuit and other circuits demonstrating a need for self-protection that is greater than the

12   average person, requiring documented threats of violence that establish the applicant is a target

13   and at risk for specific harm.

14           165. "Good cause" in California is rarely established because members of the general

15   public have not had specific threats made against them nor can the average person demonstrate

16   that they are being targeted for violent acts.

17           166. The definition of "good cause" in California does not include the basic human right

18   to self-protection outside of one's home.

19           167. The subjective nature of what constitutes "good cause" for the issuance of a carry

20   license vary from county to county as determined by the sheriff in office at the time; the

21   definition is subject to change at the whim of the sitting sheriff and/or when a new sheriff is

22   elected.

23           168. The "good cause" requirement amounts to a total ban on public carry for the typical

24   law-abiding citizen.

25           169. When the "good cause" requirement is analyzed regarding its effect on the typical

26   law-abiding citizen, it prevents and precludes the typical member of society from self-protection

27   outside of their home. See, *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017)

28   ("…the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in

                                                   20

the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen.").

170. The very objective of the "good cause" requirement is to eliminate the public carriage of firearms. Because the average person cannot establish "good cause" as defined under California jurisprudence, few "concealed carry" licenses are issued in this state.

171. The "good cause" requirement has, in fact, prevented the issuance of any open carry license in the State of California since 2012.

172. The "good cause" requirement is *per se* unconstitutional because it requires individuals to distinguish themselves from the typical law-abiding citizen, however, fundamental rights like the right to self-protection are the same for all non-prohibited persons.

173. No individual who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm can be required to prove they are entitled to protect themselves from harm, particularly when law enforcement has no duty to protect the individual.

174. Plaintiffs' right to self-protection exists wherever they are – whether in public or at home – its value and inalienability does not change based on their location.

175. A person does not lose his right to protect himself simply by walking outside of his front door. See, *District of Columbia v. Heller*, 554 US at 595-599 (The basic human right to self-defense is inseparable from the individual. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental outside of the home as it is inside of the home.).

176. By requiring "good cause" for the issuance of any carry license – open or concealed – California's licensing scheme violates the Second Amendment.

177. To the extent that the Ninth Circuit upheld "good cause" requirements for the issuance of a concealed carry license based on the view that the Second Amendment does not extend to the concealed carry of firearms in public by members of the general public, [*Peruta v County of San Diego*, 824 F3d at 939] the "good cause" requirement for the issuance of an open carry license violates the Second Amendment.

178. The "good cause" requirement for the issuance of a license to carry a handgun under California Penal Code § 26150 and § 26155 should be declared a violation of the Second Amendment and should be enjoined from enforcement and stricken as unconstitutional.

179. Alternatively, those portions of California Penal Code § 26150 and § 26155 requiring an applicant to show "good cause" for the issuance of an "open carry" firearm license should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**The Government's Authority to Dictate How Handgun is Carried, Possessed, and Worn Violates the Second Amendment**

180.  California's licensing scheme, which creates two separate handgun carry licenses – concealed carry and open carry – violates the Second Amendment by interfering with the manner in which an individual chooses to wear, carry, and possess his/her firearm outside of the house.

181. Under § 26150 (b) and § 26155 (b), the licensing authority, not the individual, decides how his/her handgun will be carried, worn, and possessed for self-protection outside of the home.

182. Via the "may issue" language of § 26150 (b) and § 26155 (b) the licensing authority has unfettered discretion to issue a concealed carry license, an open carry license, or neither, but not both.

183. Conversely, § 26150 (b) and § 26155 (b) grant the government unfettered discretion to deny an application for an open carry license and, instead issue a concealed carry license via the "may issue" language.

184. The government's interference with the manner in which an individual carries, wears, and possesses his/her handgun for self-protection in public violates the Second Amendment.

185.  The term "bears a firearm" refers to an individual "carrying the weapon on or about his person for the purpose of being armed and ready for offensive or defensive action in case of a conflict." *Muscarello v United States*, 524 US 125, 139-140 (1998) (Justice Ginsberg, dissenting opinion), citing, Black's Law Dictionary 214 (6th ed. 1990) (defining the phrase "carry arms or weapons").  "On or about his person" necessarily means one's body or within his area of reach.

22

186.   The government's interference with the manner in which a law-abiding individual can bear arms in public unlawfully infringes upon the Second Amendment and fails to promote any significant, substantial, or important government objective. *Pena v Lindley*, 898 F3d 969, 979 (9th Cir 2018), citing, *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014).

187.   A firearm in the hands of a person not prohibited under state or federal law from possessing, receiving, or purchasing a firearm, such as Plaintiffs, is a tool for the protection of self and family.

188.   A non-prohibited person carrying a firearm, such as Plaintiffs, is no more likely to commit a crime with that firearm than he is likely to commit a crime with the car he drives, the knife in his tackle box, or the axe in his shed.

189.   California strives to eliminate the public carry of firearms altogether, as borne out by California's licensing scheme which requires of "good cause" for the issuance of any type of carry license whether for concealed carry or open carry.

190.   Defendant Becerra, dubbed "The Enemy of the Second Amendment"[2], has consistently taken steps in his professional capacity to restrict Second Amendment rights.

191.   A non-prohibited person should not face criminal prosecution simply because s/he has made the tactical decision to carry a lawfully owned firearm in the small of the back holster, in a pocket, or underneath a sweater or jacket.

192.   Concealed carry is the universally preferred method of law-abiding individuals, including Plaintiffs, to carry a firearm, for reasons including tactical advantage over an attacker, convenience of carry location, accessibility to one's firearm for self-defense, and practical considerations relating to one's wardrobe.

193.   With the commencement of governmental regulation of the possession of firearms, legislative statutes and judicial case law have unconstitutionally redefined the term "concealed". "Concealment" was historically synonymous with an intention to hide or cover up forbidden conduct and/or objects, denoting malintent and a criminal *mens rea*.

---

[2] NRA-ILA January 7, 2017.

23

FIRST AMENDED COMPLAINT

194.   An individual who is lawfully carrying a firearm on their person in public – whether openly such that the firearm can be readily seen, or in a waistband holster covered by a winter jacket – is simply "carrying" their firearm. An individual exercising their right to self-protection has no malintent and no intention to use their firearm to commit a crime.

195.   The definition of "open carry" or "exposed carry" cannot be conclusively established and creates an unlawful legal burden and risk of criminal prosecution on the law-abiding individual.  An individual with a duly-issued open carry license who puts on a coat in the wintertime, is now 'concealing' his firearm. A woman wearing a dress upon which it would be impossible to secure a firearm "exposed", will necessarily be stripped of the right to protect herself in public because she will be prosecuted as a criminal if she carries her firearm holstered underneath her dress or in her purse.

196.   In 1863, California passed legislation banning concealed carry of firearms due to the high rate of crime during the Gold Rush.[3] As the San Francisco newspaper The Daily Alta California explained it:

> *"During the thirteen years that California has been a State, there have been more deaths occasioned by sudden assaults with weapons previously concealed about the person of the assailant or assailed, than by all other acts of violence which figure on the criminal calendar…. Heretofore there has been no law passed which would remedy the evil. Public opinion, as expressed through the action of our legislators, seems to have sanctioned the custom, barbarous though it be. For many sessions prior to the last, ineffectual efforts were made to enact some statute which would effectually prohibit this practice of carrying concealed weapons. A radical change of public sentiment demanded it, but the desired law was not passed until the last Legislature, by a handsome majority, enacted the subjoined act, entitled "An Act to prohibit the carrying of concealed weapons."*

197.   Only 7 years later, California repealed the concealed carry ban. The Sacramento Daily Union published an editorial discussing the 1870 repeal of the concealed-carry ban:

---

[3] NRA Institute for Legislative Action, Tuesday January 1, 2013, *citing,* "Three Years in California", Borthwick, J.D. (1857); Gunfighters, Highwaymen, & Vigilantes", McGrath, Roger (1984).

FIRST AMENDED COMPLAINT

*"There is reason to believe it was generally observed by the vast majority of good citizens. There is as good reason to believe it was not observed by the vast majority of roughs, fighting men, and predatory characters. In many cases of assault between quiet citizens and these last named characters, it was found that the good citizen had to defend himself unarmed against the predacious one with arms, the former suffering for his respect of the law. It was also found that the police were apt to arrest any quiet citizen on whom they discovered concealed weapons, while they paid little attention to the roughs who were known to carry arms habitually."*[4]

198. Criminals, by definition, do not follow the law. No purpose is served by restricting law-abiding people from carrying their firearms in the manner they feel most comfortable and are better able tactically to protect themselves.

199. "Laws preventing law-abiding citizens from carrying firearms for self-protection… become an abomination in practice…plac[ing] the peaceful citizen completely at the mercy of a class whose offenses against order it was intended to check, but did not, owing to the remissness in duty of the guardians of the law." Sacramento's experience was the immediate cause of the "repealing movement … where bands of armed roughs, scorning the law against carrying concealed weapons, were perpetrating highway robberies on quiet, unarmed citizens, who could not prepare for self-defense without danger of being arrested and fined every day."

200. "The editorial acknowledged that one of the good things hoped for had happened in the intervening months:

*"It was reasoned with much plausibility that if the roughs once knew that quiet citizens might prepare to defend themselves without danger of being punished for misdemeanor, the bare suspicion that such a person had about him a weapon would disarm the roughs and prevent robberies. This has in fact been one of the results."*

201. Arguing against the reasons, the State of California repealed the ban on concealed carry. The Daily Alta newspaper editorialized, in part, "To put a thing in its customary and convenient receptacle is not concealment. Concealment is a matter of motive…"[5]

---

[4] NRA Institute for Legislative Action, Tuesday January 1, 2013.
[5] NRA Institute for Legislative Action, Tuesday January 1, 2013, *citing,* The Daily Alta California, 1869.

25

FIRST AMENDED COMPLAINT

202.  California Penal Code §25850 makes it a crime to carry a loaded firearm on one's person or in a vehicle, without regard to whether it is carried concealed or openly, while in any public place or on any public street in an unincorporated city, or any public place or public street in a prohibited area of an unincorporated territory.

203.  Plaintiffs seeks to carry their firearms in public in the manner of their choosing, concealed or open, throughout the State of California.

204.  The Second Amendment includes the right to carry a firearm in public. If an individual is not prohibited by state or federal law from possessing firearms, the government violates the Second Amendment by dictating and/or controlling how that person carries, wears, or otherwise possesses his/her firearm in public.

205. By eliminating Plaintiffs' ability to choose how to defend themselves in public and their tactical decision-making ability regarding how to carry their firearms, California's firearm licensing scheme unlawfully burdens and infringes upon Plaintiffs' Second Amendment rights.

206. There is no legitimate, measurable, or quantifiable impact on public safety that justifies California's interference with Plaintiffs' ability to choose how to carry their firearms for self-defense in public – and even of there were, the Supreme Court has conclusively rejected public safety "interest balancing" when it comes to Second Amendment rights. See, *Rogers*, supra.

207. California's firearm licensing scheme interfering with the manner in which non-prohibited people carry his/her firearm in public should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**Open Carry License Restriction by County of Issuance and Population Size**

**Violates the Second Amendment**

208. A license to carry a handgun loaded and exposed can only be applied for in counties with a population under 200,000. See, § 26150 (b) and §26155 (b).

209. An open carry license issued under § 26150 (b) and § 26155 (b) is only valid in the county of issuance.

FIRST AMENDED COMPLAINT

210. The geographical and population restrictions of § 26150 (b) and § 26155 (b) violate the Second Amendment by forcing Plaintiffs to choose between being criminally prosecuted under § 25820 (carrying a loaded handgun) or § 26350 (if carrying open and unloaded) or exercising their preexisting rights as protected by the Second Amendment.

211. If an individual who is duly issued an open carry license carries his firearm loaded and exposed in a county other than his county of residence (the county of issuance) he will be subject to criminal penalties and sanctions, up to and including imprisonment. (Penal Code § 25850).

212. Individuals who are issued an open carry license in their home county are rendered unarmed and defenseless when traveling to any other part of California.

213. If Plaintiffs are issued an open carry license and thereafter choose to leave their firearms home while traveling to other counties in California, they will be left defenseless and unarmed.

214. While governmental regulations on sensitive areas, such as schools and courthouses have been upheld by the courts as presumptively lawful (*Heller*, 554 US at 626), California's broad and overreaching geographical (1) limitation on the validity of open carry licenses; and (2) ban on the issuance of an open carry license based on population size, eviscerates a core right of the individual to "open carry" for self-protection outside of the home.

215. Restricting the open carry of firearms from entire counties in the state based on population size unlawfully implicates a core Second Amendment right, serves no legitimate governmental interest, and has no provable or quantifiable effect on public safety – and even if it did, the Supreme Court has definitively rejected public safety interest balancing in Second Amendment analyses. See, *Rogers*, supra.

216. To the contrary, the danger to the individual and need for the protections of the Second Amendment increase in direct proportion to the increase in population density, due to the corresponding increase in criminals and criminal activity in highly populated areas. Preventing open carry by law-abiding individuals in high crime/highly populated areas does not increase public safety. To the contrary, the open carry of firearms by law-abiding people in highly

27

1  populated, high crime areas will decrease the rate of criminal activity.

2  217. California's firearm licensing scheme restricting the open carriage of firearms from

3  entire counties in the state based on population size should be declared a violation of the Second

4  Amendment, enjoined from enforcement, and stricken as unconstitutional.

**California's Unloaded Carry Restrictions Are Unconstitutional**

**(Second Amendment Violation)**

7  218. A core right of the Second Amendment is the right of the law-abiding individual to

8  carry a firearm ("bear arms") outside of the home. See cases cited, *supra.* An open carry license

9  issued under § 26150(b) or § 26155(b) would permit Plaintiffs to carry a firearm in public

10  "loaded and exposed".

11  219. California Penal Code § 26350 makes it a crime to open carry an unloaded handgun,

12  whether on one's person, inside a vehicle, or on a vehicle. A violation of § 26350 carries penalties

13  of imprisonment up to one year and/or fines.

14  220.  Should Plaintiffs be issued open carry licenses and encounter a circumstance

15  wherein their respective handguns are in an unloaded state while in public, Plaintiffs would face

16  criminal prosecution and penalties, including imprisonment.

17  221.  Should Plaintiffs be issued open carry licenses, they may also face circumstances

18  wherein they possess their handgun inside of their respective vehicles in an unloaded state and

19  would therefore face criminal prosecution and penalties including imprisonment under Penal

20  Code § 26350.

21  222. The enforcement of § 26350 against individuals who are licensed to carry a handgun

22  loaded and exposed violates the Second Amendment as an infringement on the manner in which

23  an individual chooses to protect himself/herself outside of the home.

24  223. Likewise, the enforcement of § 26350 against individuals who are not otherwise

25  prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm

26  violates the Second Amendment.

27  224.  California Penal Code § 26350 should be declared unconstitutional as applied to

28  open carry licensees, enjoined from enforcement, and stricken as unconstitutional.

**Penal Code § 25850**

**Violates the Second Amendment**

225. Penal Code § 25850 criminalizes the possession of a loaded firearm, open or concealed.

226. The prosecution of individuals who are not otherwise prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm violates the Second Amendment.

227. California Penal Code § 25850 should be declared unconstitutional as applied to individuals who are not otherwise prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm, enjoined from enforcement, and stricken as unconstitutional.

## DECLARATORY JUDGMENT ALLEGATIONS

228.  There is an actual and present controversy between the parties. Plaintiffs contend their Second Amendment rights were violated in that: (1) California Penal Codes § 26150 and § 26155 violate the fundamental right to self-protection by carrying handguns outside of the home by (i) imbuing the licensing authorities with discretion to deny handgun carry licenses even where the applicant is not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm under the language "may issue"; (ii) empowering licensing authorities to deny handgun carry licenses based on a subjective opinion that an applicant does not possess "good moral character" even where the applicant is not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm; (iii) requiring "good cause" for the issuance thereof; (iv) arbitrarily and subjectively demarcating the manner in which individuals choose to carry, wear, and possess their firearms for self-protection outside of the home; (v) empowering the licensing authority to decide for the applicant how s/he can carry, wear, and possess their firearms for self-protection outside of the home; (vi) restricting the authority and validity of open carry licenses to the county of issuance; (vii) restricting open carry to counties based on population size; (viii) imbuing the licensing authorities with discretion to deny an application for an open carry license; (2) California Penal Code § 26350 criminalizes the open

29

FIRST AMENDED COMPLAINT

(11 of 72), Page 11 of 72    Case: 24-565, 04/17/2024, DktEntry: 10.9, Page 11 of 72
ER-1505
Case 2:19-cv-00617-KJM-AC    Document 34    Filed 09/21/20    Page 30 of 38

1    carriage of an unloaded handgun by non-prohibited persons for self-protection outside of the

2    home; (3) California Penal Code § 25850 violates the right of non-prohibited persons to carry a

3    loaded handgun in public for self-protection, whether open or concealed carry; (4) that California

4    Penal Code § 25850 violates the right of individuals who possess an open carry license to self-

5    protection outside of the county of issuance.

6        229. Defendant denies these contentions.

7        230. Plaintiffs seek a judicial declaration that California Penal Codes § 26150,

8    § 26155, § 25850, and § 26350 violate Plaintiffs' Second Amendment rights in the manner

9    described in detail herein.

10       231. Plaintiffs also seek a judicial declaration that California's licensing scheme violates

11    Plaintiffs' Second Amendment rights to carry a handgun for self-protection outside of the home,

12    whether open or concealed, loaded, or unloaded.

13       232. Plaintiffs should not have to risk criminal prosecution in order to exercise the core

14    fundamental rights detailed herein.

15                      **INJUNCTIVE RELIEF ALLEGATIONS**

16       233. Plaintiffs are being continuously injured, in fact, by the violation of the preexisting

17    rights protected by the Second Amendment as a result of (1) Defendant's enforcement of the

18    "may issue a license" language of Penal Codes § 26150 (a) and § 26155 (a) leaving issuance of a

19    handgun carry license to the subjective whims of the licensing authority even where an

20    investigation by the California DOJ has determined that the applicant is not prohibited by state or

21    federal law from possessing, receiving, owning, or purchasing a firearm; (2) Defendant's

22    enforcement of the "moral character" language of Penal Codes § 26150 (a) and § 26155 (a)

23    leaving issuance of a handgun carry license to the subjective whims of the licensing authority

24    even where an investigation by the California DOJ has determined that the applicant is not

25    prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm; (3)

26    Defendant's enforcement of the requirement that an applicant demonstrate "good cause" for the

27    issuance of a license to carry a handgun for self-protection outside of the home, whether open

28    carry or concealed carry; (4) Defendant's enforcement of the "may issue a license" language of

FIRST AMENDED COMPLAINT

1    Penal Codes § 26150 (b) and § 26155 (b) imbuing discretion in the licensing authority decide the

2    "format" of a carry license, by which the government dictates how an applicant can and cannot

3    wear, carry, and possess a handgun for self-protection outside of the home; (5) Defendant's

4    enforcement of California Penal Codes § 26150 and § 26155 restricting the authority and validity

5    of open carry licenses to the county of issuance; (6) Defendant's enforcement of California Penal

6    Codes § 26150 and § 26155 banning the open carriage of firearms in counties with a population

7    over 200,000 persons and/or based on population size; (7) Defendant's enforcement of the "may

8    issue" language of California Penal Codes § 26150 (b) (2) and § 26155 (b) (2) leaving the

9    issuance of an open carry license to the discretion of the licensing authority; (8) Defendant's

10   enforcement of California Penal Code § 26350 criminalizing the open carriage of a unloaded

11   handgun by a non-prohibited person for self-protection outside of the home; (9) Defendant's

12   enforcement of California Penal Code § 25850 criminalizing the possession of a loaded firearm,

13   whether concealed or open, by a non-prohibited person; (10) Defendant's enforcement of

14   California Penal Code § 25850 criminalizing the open carriage of a loaded firearm outside of the

15   county of issuance.

16        234. Plaintiffs should not have to risk criminal prosecution in the exercise of their

17   fundamental right to self-protection outside of the home.

18        235. Defendant denies the contentions stated herein.

19                                    **COUNT I**

20                      **"May Issue" Discretionary Authority**

21                          **§ 26150 (a) and § 26155 (a)**

22        236. Repeats and realleges paragraphs "1" through and including "235" as if set forth in

23   their entirety herein.

24        237. The discretionary language "may issue a license" to carry in California Penal Codes

25   § 26150 (a) and § 26155 (a) violates the Second Amendment.

26        238. Under the theory that Defendant is liable to Plaintiffs for violations of their

27   constitutional rights pursuant to 42 U.S.C. §1983.

28

**COUNT II**

**"Moral Character" Determination**

**§ 26150 (a) (1) and § 26155 (a) (1)**

239. Repeats and realleges paragraphs "1" through and including "238" as if set forth in their entirety herein.

240. The "good moral character" determination by a licensing authority in California Penal Code § 26150 (a) (1) and § 26155 (a) (1) violates the Second Amendment.

241. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

**COUNT III**

**"Good Cause" Requirement**

**§ 26150 (a) (1) and § 26155 (a) (1)**

242. Repeats and realleges paragraphs "1" through and including "241" as if set forth in their entirety herein.

243. The "good cause" requirement of California Penal Codes § 26150 (a) and § 26155 (a) for the issuance of license to carry a handgun for self-protection outside of the home violates the Second Amendment.

244. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

**COUNT IV**

**Discretionary Authority to Dictate How Handgun is Carried, Possessed and Worn**

**of § 26150 (b) and § 26155 (b)**

245. Repeats and realleges paragraphs "1" through and including "244" as if set forth in their entirety herein.

246. California Penal Codes § 26150 (b) and § 26155 (b) violate the Second Amendment by imbuing the government with the discretion to decide for an individual how they can and cannot carry, wear, and possess a lawfully owned handgun for self-protection outside of the home.

32

FIRST AMENDED COMPLAINT

1    247. Under the theory that Defendant is liable to Plaintiffs for violations of their

2    constitutional rights pursuant to 42 U.S.C. §1983.

3                                    **COUNT V**

4                **Limitation of the Type of Carry License to be Issued**

5                            **§ 26150 (b) and § 26155 (b)**

6    248. Repeats and realleges paragraphs "1" through and including "247" as if set forth in

7    their entirety herein.

8    249. California Penal Codes § 26150 (b) and § 26155 (b) violate the Second Amendment

9    by issuing a license to carry a handgun "in either of the following formats" - concealed carry or

10   open carry - but not both.

11   250. Under the theory that Defendant is liable to Plaintiffs for violations of their

12   constitutional rights pursuant to 42 U.S.C. §1983.

13                                   **COUNT VI**

14               **Open Carry License Restriction by County**

15                        **§ 26150 (b) (2) and § 26155 (b) (2)**

16   251. Repeats and realleges paragraphs "1" through and including "250" as if set forth in

17   their entirety herein.

18   252. California Penal Codes § 26150 (b) (2) and § 26155 (b) (2) violate the Second

19   Amendment by restricting the validity and authority of an open carry license to the county of

20   issuance.

21   253. Under the theory that Defendant is liable to Plaintiffs for violations of their

22   constitutional rights pursuant to 42 U.S.C. §1983.

23                                  **COUNT VII**

24          **Open Carry License Restriction by Population Size**

25                        **§ 26150 (b) (2) and § 26155 (b) (2)**

26   254. Repeats and realleges paragraphs "1" through and including "253" as if set forth in

27   their entirety herein.

28

FIRST AMENDED COMPLAINT

255. California Penal Codes § 26150 (b) and § 26155 (b) violate the Second Amendment by restricting the open carriage of firearms to counties by population size, to wit, under 200,000 persons.

256. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT III

### "May Issue" Language for Open Carry License

### § 26150 (b) and § 26155 (b)

257. Repeats and realleges paragraphs "1" through and including "258" as if set forth in their entirety herein.

258. The discretionary language of California Penal Codes § 26150 (b) and § 26155 (b) that a license to carry open and exposed "may issue" violates the Second Amendment.

259. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT IX

### Penal Code § 26350 Violates the Second Amendment

260. Repeats and realleges paragraphs "1" through and including "259" as if set forth in their entirety herein.

261. Defendant's enforcement of Penal Code § 26350, criminalizing the open carriage of an unloaded firearm, against individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, violates the Second Amendment.

262. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT X

### Penal Code § 25850 Violates the Second Amendment

263. Repeats and realleges paragraphs "1" through and including "262" as if set forth in their entirety herein.

34

FIRST AMENDED COMPLAINT

264. Defendant's enforcement of Penal Code § 25850, criminalizing the possession of a loaded firearm, open or concealed, against individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, violates the Second Amendment.

265. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

**COUNT XI**

**Penal Code § 25850 Violates the Second Amendment**

266. Repeats and realleges paragraphs "1" through and including "265" as if set forth in their entirety herein.

267. Defendant's enforcement of Penal Code § 25850, criminalizing the licensed open carriage of a loaded firearm outside of the county of issuance, violates the Second Amendment.

268. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising any discretion to deny an application for a license to carry a handgun under Penal Codes § 26150 and § 26155 for self-protection outside of the home by an applicant who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising any discretion to deny an application for an open carry license under Penal Codes § 26150 and § 26155 for self-protection

35

FIRST AMENDED COMPLAINT

1    outside of the home by an applicant who is not prohibited by state or federal law from

2    possessing, receiving, owning, or purchasing a firearm;

3    • An Order preliminarily and permanently enjoining Defendant, his officers, agents,

4    servants, employees, and all persons acting in concert with Defendant who receive

5    actual notice of the injunction, from enforcing the "may issue", "moral character" and

6    "good cause" language for the issuance of license to carry a handgun for self-

7    protection outside of the home as provided for in California Penal Codes § 26150 (a)

8    and § 26155 (a) by an individual who is not prohibited by state or federal law from

9    possessing, receiving, owning, or purchasing a firearm;

10    • An Order preliminarily and permanently enjoining Defendant, his officers, agents,

11    servants, employees, and all persons acting in concert with Defendant who receive

12    actual notice of the injunction, from enforcing the "may issue", "moral character" and

13    "good cause" language for the issuance of an open carry handgun license for self-

14    protection outside of the home as provided for in California Penal Codes § 26150 (a)

15    and § 26155 (a) by an individual who is not prohibited by state or federal law from

16    possessing, receiving, owning, or purchasing a firearm;

17    • An Order preliminarily and permanently enjoining Defendant, his officers, agents,

18    servants, employees, and all persons acting in concert with Defendant who receive

19    actual notice of the injunction, from enforcing the "county of issuance" limitation of

20    the validity and effectiveness of open carry licenses as provided for in California Penal

21    Codes § 26150 (b) and § 26155 (b);

22    • An Order preliminarily and permanently enjoining Defendant, his officers, agents,

23    servants, employees, and all persons acting in concert with Defendant who receive

24    actual notice of the injunction, from enforcing the restriction on the issuance of open

25    carry licenses (i) based on county population size and (ii) to "counties having a

26    population less than 200,000" as provided for in California Penal Codes § 26150 (b)

27    and § 26155 (b);

28

36

FIRST AMENDED COMPLAINT

• An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing California Penal Codes § 25850 and § 26350 against individuals who carry a handgun for self-protection outside of the home who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

• An Order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising discretion, interfering with and/or infringing upon the manner in which law-abiding individuals wear, carry, and possess their firearm in public under California Penal Codes § 26150 (b) and § 26155 (b) by delineating between open carry and concealed carry licenses;

• A declaration that the discretionary "moral character", "good cause", and "may issue" language of California Penal Codes § 26150 and § 26155 violates the Second Amendment;

• A declaration that the discretionary "moral character", "good cause", and "may issue" language of Penal Codes § 26150 and § 26155 violates the Second Amendment as applied to open carry licenses;

• A declaration that California Penal Codes § 26150 and § 26155 are unconstitutional and unenforceable as written generally and as applied to Plaintiffs and all individuals are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

• A declaration that California Penal Codes § 25850 and § 26350 are unconstitutional as applied to individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

• A declaration that California Penal Codes § 25850 and § 26350 are unconstitutional as applied to individuals who have been issued a license to carry a handgun;

37

FIRST AMENDED COMPLAINT

ER-1513

1       • A declaration that California Penal Codes § 25850 and § 26350 are unenforceable

2    against law-abiding individuals who have been issued an open carry license;

3       • Reasonable statutory attorney's fees, costs, and disbursements, under 42 USC

4    § 1988 and any other applicable law; and

5       • Grant such further and alternative relief as the Court deems just and proper.

6    Respectfully submitted,

7    Dated: September 20, 2020         THE BELLANTONI LAW FIRM, PLLC

8

9                                __/s/ Amy L. Bellantoni, Esq._____

10                               Amy L. Bellantoni

                                  *Attorney for Plaintiffs*

11                               *Pro Hac Vice*

12                               Email: abell@bellantoni-law.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

ER-1514

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF CALIFORNIA
 2              BEFORE THE HONORABLE KIMBERLY J. MUELLER

 3   MARK BAIRD and RICHARD
     GALLARDO,
 4
                      Plaintiff,
 5   vs.                           Sacramento, California
                                   No. 2:19-CV-00617
 6   XAVIER BECERRA, in his        Wednesday, October 9, 2019
     official capacity as         11:02 a.m.
 7   Attorney General of the
     State of California, and
 8   DOES 1-10,

 9                    Defendant.
     _____/
10

11                          --oOo--
                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
12        DEFENDANT'S MOTION TO DISMISS, PLAINTIFFS' MOTION FOR
             PRELIMINARY INJUNCTION AND STATUS CONFERENCE
13                          --oOo--

14
     APPEARANCES:
15
     For the Plaintiffs:          THE BELLANTONI LAW FIRM, PLLC
16                                BY:  AMY BELLANTONI
                                       Attorney at Law
17                                2 Overhill Road, Suite 400
                                  Scarsdale, NY 10583
18
     For the Defendant:           OFFICE OF THE ATTORNEY GENERAL
19                                BY:  R. MATTHEW WISE
                                       Attorney at Law
20                                1300 I Street
                                  Sacramento, CA  95814
21
     Official Reporter:           KACY PARKER BARAJAS
22                                CSR No. 10915, RMR, CRR, CRC
                                  501 I Street
23                                Sacramento, CA  95814
                                  kbarajas.csr@gmail.com
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

ER-1515

2

1     SACRAMENTO, CALIFORNIA, WEDNESDAY, OCTOBER 9, 2019, 11:02 AM

2                               --oOo--

3          THE CLERK:  Calling civil case 19-617, Baird, et al.

4     versus Becerra.  This is on for defendant's motion to dismiss,

5     plaintiff's motion for preliminary injunction, and a status

6     conference.

7          THE COURT:  All right.  Good morning.  Appearances,

8     please.

9          MS. BELLANTONI:  Good morning, your Honor.  Amy

10    Bellantoni for the plaintiffs Mark Baird and Richard

11    Gallardo.

12         THE COURT:  Good morning, Ms. Bellantoni.

13         MR. WISE:  Good morning, your Honor.  Matthew Wise for

14    Attorney General Xavier Becerra.

15         THE COURT:  Good morning, Mr. Wise.

16         This is on for preliminary injunction, to dismiss, and

17    for scheduling.  And I have several questions regarding each.

18    What I'd like to do is work through my questions.  Then I would

19    allow you to make wrap-up argument if you think there's not

20    something fully covered by the briefing or my discussion with

21    you.

22         First, to clarify one threshold question the Court

23    has, Ms. Bellantoni, as the defense points out, the sheriffs

24    are not sued here.  Is there anything in the complaint that

25    alleges the attorney general's interference with the sheriffs'

ER-1516

3

1  carrying out of the state statutes?

2      MS. BELLANTONI:  Well, your Honor, the Department of

3  Justice requires the sheriffs to use their specific procedure

4  and their statutory forms which only provide for concealed

5  carry application.  There is no provision online or in the hard

6  cover -- the hard copy forms that allows for open carry to be

7  applied for.  But notwithstanding that requirement, the statute

8  itself is inadequate and should be enjoined because the

9  language, the may issue language, the requirement of the

10  establishment of good cause for open carry, the geographical

11  restrictions, and the restrictions as to population size in

12  areas where open carry permits are allowed to be issued.  So

13  notwithstanding that the forms themselves and the procedures do

14  not allow for the application of open carry, the sheriffs

15  themselves are not mandated to enforce the God given rights

16  that these residents of California have to open carry.

17      THE COURT:  God given, not constitutional.

18      MS. BELLANTONI:  Well, the constitution and precedent

19  following recognize that the constitution and the government

20  actually give no rights.  They restrict the government from

21  infringing on preexisting rights.

22      THE COURT:  All right.  Well, this Court is

23  determining legal rights and constitutional rights.  I just

24  want to make that clear.

25      So on the use of the forms, is there a link there,

ER-1517

4

1    Mr. Wise?  Is it -- I believe it is pled, at least it's argued

2    that the AG requires the use of certain forms by the local

3    sheriffs.  That's undisputed or at least that's what the

4    plaintiffs have pled?

5           MR. WISE:  May I ask your preference if I stand or

6    sit?

7           THE COURT:  It's up to you.  This is not a jury

8    proceeding.  If you need access to your materials, you may

9    remain seated.  The key is that you use a microphone so the

10   court reporter can hear you.

11          MR. WISE:  I think I'll sit then.  Thank you, your

12   Honor.

13          So yeah.  My understanding is that the application

14   is -- at least by appearances, it appears to be geared toward

15   concealed carry.  But as we indicate in our briefing, there are

16   statements that make reference to the open carry statute.  So

17   those would be the applications presumably that would be used

18   for the counties that do allow open carry.

19          THE COURT:  All right.  Another threshold question,

20   the plaintiff suggests that the defense is using the terms

21   "open," "concealed," "public" in a confusing way.  Is there a

22   stipulated definition of public?  Does public just mean outside

23   the home, or how is the defense using public?

24          MR. WISE:  Yeah.  I mean public would be any manner of

25   carry outside of the home.

ER-1518

5

1      THE COURT:  Agree with that, Ms. Bellantoni?  Any

2 reason not to use that definition for public wherever it

3 appears, particularly in the defense briefing?

4      MS. BELLANTONI:  Yes, your Honor.  Because there is a

5 vast distinction between open carry and concealed carry with

6 respect to how the Ninth Circuit views them.

7      THE COURT:  I understand that.  But you suggested

8 there was some misleading use of the word public.

9      MS. BELLANTONI:  Sure.

10      THE COURT:  And I'm trying to -- so open carry and

11 concealed carry could both be public if it's outside the home.

12      MS. BELLANTONI:  Yes.  But it's -- in reading the

13 documentation, it's my position that the state is creating --

14 when using the word public carry is sliding into areas and

15 arguments that are applicable only to concealed carry which is

16 vastly different under the Ninth Circuit holdings from open

17 carry.

18      THE COURT:  So you think when I see "public" in their

19 brief I should assume it's concealed only?

20      MS. BELLANTONI:  I think that it's going to depend on

21 the context in which they're arguing.  But by using public

22 carry, it certainly allows for arguments to be made that are

23 applicable solely to concealed carry, and it blurs the line.

24      THE COURT:  All right.  I don't know if it matters,

25 but are there any allegations that either plaintiff has applied

ER-1519

6

1    for and been denied a concealed carry license, Ms. Bellantoni?

2         MS. BELLANTONI:  I believe that it's not relevant to

3    the arguments here.

4         THE COURT:  Agree with that, Mr. Wise?

5         MR. WISE:  That concealed carry is not relevant to the

6    arguments here, yes, I agree with that.

7         THE COURT:  All right.  On the preliminary injunction,

8    based only on the Second Amendment claims, correct?

9         MS. BELLANTONI:  Yes.

10        THE COURT:  So help me understand how I can find a

11   likelihood of success on the merits given the state of the law.

12   I mean, often parties are laying foundation for going to higher

13   courts here, and it's hard not to see this as one of those

14   cases.  The Ninth Circuit specifically stayed Young pending

15   resolution of the New York case before the Supreme Court.  So I

16   can't rely on Young at this point, right?

17        MS. BELLANTONI:  Correct.  That's why there's no

18   reference to Young in my papers.

19        THE COURT:  So how can I find the likelihood of

20   success given that the question is currently undecided?

21        MS. BELLANTONI:  Because the careful reading or plain

22   reading actually of *Heller* as well as the dissent of Justice

23   Thomas and Justice Gorsuch in the *Peruta II* case decided in

24   2017, so the last of the Peruta cases, specifically recognizes

25   the right to bear arms in public, you know, putting aside the

ER-1520

7

1    plain reading of the Second Amendment.  So in light of the fact

2    that the Ninth Circuit has deemed concealed carry to be a

3    privilege, not a right, that takes concealed carry out of the

4    scope under their opinion of the Second Amendment leaving only

5    one manner of carry which would be open carry.  So if the right

6    to keep has already been decided by the Supreme Court, the

7    right to bear, which is also within the scope of the Second

8    Amendment protections, only leaves open carry, and so it is

9    highly likely that we will succeed on the merits of that claim

10   whether here or in the higher courts.

11        THE COURT:  *Heller* didn't say the right was completely

12   unfettered, agreed?

13        MS. BELLANTONI:  The right to bear arms in public?  I

14   just want to understand.

15        THE COURT:  The right to bear arms.

16        MS. BELLANTONI:  The right to bear arms, that it was

17   not completely unfettered?  Justice Scalia identified narrow

18   instances such as sensitive places like schools or government

19   buildings where that right may be curtailed and/or regulated.

20   But the state has taken the broad-brush approach and has

21   basically relegated -- well, has essentially banned the right

22   to bear arms.  The right to bear arms in California today is

23   banned.

24        THE COURT:  In effect.

25        MS. BELLANTONI:  In fact.  In fact.  Because the only

ER-1521

8

1  right --

2          THE COURT:  Not by statute.

3          MS. BELLANTONI:  By statute because the language of

4  the statute for open carry permits is may issue.  It's left in

5  the hands of sheriffs.

6          THE COURT:  It may be.  I understand that you're

7  saying you can create a factual record.  The allegations in the

8  complaint say factually no open carry licenses have been

9  issued.  But that's an in effect claim.  It's not saying the

10  statute expressly bans, or are you saying the statute expressly

11  bans?  Is that how you read the statute?

12          MS. BELLANTONI:  I'm saying that the statute is a ban

13  on open carry because it's treating open carry the same way it

14  treats concealed carry, as a privilege.  And since 2012, by

15  concession of the attorney general's office, no open carry

16  permits have been issued.  The open carry of a firearm is

17  criminalized.

18          THE COURT:  I understand those arguments.

19          So Mr. Wise, on *Peruta II*, recognizing the questions

20  that *Peruta II* says it left open, is it possible to read that

21  case as saying that there is no right to carry a weapon

22  concealed unless open carry is unavailable?

23          MR. WISE:  That's not our reading of *Peruta*.  *Peruta*

24  was dealing specifically with concealed carry.  That was the

25  question in that case, and it doesn't, I don't think, purport

ER-1522

9

1    to represent that it was dealing with anything else.  And so

2    that's why we've had a series of cases that have come alongside

3    and after *Peruta*.  *Flanagan*, you know, addresses the question

4    of is there some manner of carry that is allowed.  This case

5    appears to be focused specifically on open carry I think

6    regardless of whether there's concealed carry.  So we've, of

7    course, in our briefing addressed the historical and, you know,

8    tradition as reasons why we believe that open carry

9    restrictions are permitted.

10           THE COURT:  So Ms. Bellantoni, if I were to issue a

11   preliminary injunction, are you suggesting that I would limit

12   it to enjoining enforcement of the statutes only against quote,

13   unquote, law-abiding citizens?

14           MS. BELLANTONI:  I'm sorry.  Can you repeat that.  I'm

15   not sure I understand what you're saying.

16           THE COURT:  I believe your briefing really emphasizes

17   that the plaintiffs here are law-abiding citizens.

18           MS. BELLANTONI:  Correct.

19           THE COURT:  I query whether or not any one of us is a

20   one hundred percent law-abiding citizen.  So that seems to be a

21   critical part of your argument.  I guess my point is some of us

22   jaywalk.

23           MS. BELLANTONI:  Yeah.  That's not -- so

24   respectfully --

25           THE COURT:  It's not a fixed status necessarily, and

ER-1523

10

1  so how would I craft a preliminary injunction given your

2  apparent acknowledgment that law abiding is an important factor

3  here?

4      MS. BELLANTONI:  Yeah.  So law abiding, to the extent

5  that there is no statutory prohibitor to the possession or

6  purchase of a firearm by my clients or by other law-abiding

7  individuals, there are statutory enumerations of prohibitors

8  federally that ban certain individuals such as those convicted

9  of a felony offense, those convicted of misdemeanor domestic

10 violence, those who have been dishonorably discharged from the

11 military forces, those who have been involuntarily committed to

12 a mental institution or adjudicated by a court of having a

13 mental disease or defect, those are -- additionally, people who

14 have an active order of protection against them, those are

15 individuals who, unless there was some type of civil relief

16 that has been granted to them, are statutorily prohibited from

17 firearm possession.  Anyone else is not.

18      THE COURT:  So would the preliminary injunction need

19 to spell out those categories or not?

20      MS. BELLANTONI:  I could certainly craft --

21      THE COURT:  I'm just asking you in terms of clarity.

22      MS. BELLANTONI:  Anyone who is not otherwise

23 statutorily under state or federal law prohibited from

24 possessing firearms.  In other words, if someone went to

25 the --

ER-1524

11

1     THE COURT:  I think I understand the point.

2     MS. BELLANTONI:  Thank you.

3     THE COURT:  So in terms of the defense argument in its

4  opposition that you don't argue how the means and scrutiny

5  analysis works here, what's your -- what's your response to

6  that?  I'm looking at page 16, bottom of the page, page 24, the

7  electronic page.  How do you apply whatever level of scrutiny

8  the Court should apply to the statutes?

9     MS. BELLANTONI:  I would ask the Court to file the

10 reasoning of Justice Scalia and *Heller*.  This is a fundamental

11 core right protected by the Second Amendment.  There is no

12 balancing.  There is no other scrutiny than strict scrutiny.

13    THE COURT:  Also in terms of harm, what's the imminent

14 harm to the plaintiffs if a preliminary injunction does not

15 issue?

16    MS. BELLANTONI:  It's an existing harm that's been in

17 existence since open carry has been banned in the state as held

18 by the Ninth Circuit and cited in the core papers.

19    THE COURT:  But why the timing now?  Typically a court

20 looks at the time from when the harm began to the time it's

21 presented with the preliminary injunction in assessing how

22 strong the harm is, and I think you would say the ban went into

23 effect sometime ago, if I accept for sake of argument your

24 characterization of the law as a ban.

25    MS. BELLANTONI:  I don't believe there's a prohibitor

ER-1525

12

1     for my clients to, as far as the timing of when the action was

2     filed.  It's an existing harm that needs to be stopped.

3          THE COURT:  But they've been experiencing the harm in

4     your view since 2012, 2011?

5          MS. BELLANTONI:  Since 1967 when loaded carry in

6     public was outlawed by the Mulford Act.

7          THE COURT:  Any response to what you've just heard,

8     Mr. Wise?

9          MR. WISE:  Just to echo the point that we made in our

10    brief that there is no urgency in this case.  I mean, if it's

11    harm that's existed since 1967, then this wouldn't be an

12    appropriate case for a preliminary injunction.  The harm is

13    clearly based on the constitutional injury and not any other

14    sort of irreparable harm that the plaintiffs have suffered.

15         Also on the means and scrutiny, that's, you know,

16    certainly warranted by the Ninth Circuit law, *Chovan* and other

17    cases like it.

18         MS. BELLANTONI:  And respectfully, your Honor, the

19    case law is clear, constitutional injury is irreparable harm.

20         THE COURT:  I understand the argument.

21         I have no other questions on the preliminary

22    injunction.  If there's anything else on the preliminary

23    injunction before I move to the motion to dismiss, I would

24    entertain brief argument.  But again, please don't repeat

25    what's in your briefs -- I've read them -- or what we've just

ER-1526

13

1   discussed.

2         So let me just -- I'll give you the final word,

3   Ms. Bellantoni.

4         But anything further on the preliminary injunction,

5   Mr. Wise?

6         MR. WISE:  Your Honor, yes, only because there were

7   quite a few points that were addressed in plaintiff's reply

8   brief that I didn't get a chance to respond to, and I'd just

9   like to address two of the declarations that were submitted

10  with the reply brief because I think it might be helpful to the

11  Court's reading.

12        THE COURT:  All right.

13        MR. WISE:  So first, plaintiffs' claim on page 4, the

14  declaration they submitted from Clayton Cramer exposes

15  defendant's numerous errors of fact, false descriptions of

16  actual laws and citations to nonexistent laws.  And if I were

17  to go through Mr. Cramer's declaration point by point, we would

18  be here a long time, but I want to give one example of the type

19  of misleading statements that are representative of the

20  contents of this declaration.  Mr. Cramer claims on pages 4 and

21  5 of his declaration that the old North Carolina case, *State v.*

22  *Huntly*, quote, held that the North Carolina statute modeled

23  after the statute of Northampton was not in effect when that

24  case was decided.

25        And then based on Mr. Cramer's declaration, plaintiffs

ER-1527

14

1   argued on page 6 of their reply brief that the Statute of

2   Northampton was, quote, rejected by the North Carolina -- by

3   North Carolina in *State v. Huntly*.

4           If you read that case, specifically pages 420 to 421,

5   it's clear that the court states that, quote, the argument is

6   that the Statute of Northampton was not in effect when the case

7   was decided.  But the court didn't adopt that argument.

8   Instead the court, in the context of this case and relying on

9   Blackstone and other authorities, concluded that the Statute of

10  Northampton emphasizes the common law understanding that going

11  armed with dangerous or unusual weapons including guns is a

12  crime.

13          And then Mr. Cramer a few pages later continues on

14  this point.  He states that the court in *State v. Huntly*,

15  quote, declared that a double-barreled gun or any other gun

16  cannot in this country come under the description of unusual

17  weapons.  Then plaintiffs echo this position on page 6 of their

18  reply brief.

19          But again, what the court said was different.  On page

20  422 the court said that, quote, it has been remarked that a

21  double-barreled gun or any other gun was not an unusual weapon.

22  In other words, that was the defendant's argument in that case.

23          The court makes its position clear in the very next

24  sentence, quote, but we do not feel the force of this

25  criticism.  Then the court goes on, quote:  A gun is an unusual

ER-1528

15

1   weapon; wherewith to be armed and clad.  No man amongst us

2   carries it about with him, as one of his every day

3   accoutrements - as part of the dress - and never we trust will

4   the day come when any deadly weapon will be worn or wielded in

5   our peace-loving and law-abiding state, as an appendage of

6   manly equipment.

7           So this is again just one example of how the

8   historical record we provided was mischaracterized by

9   Mr. Cramer and the plaintiffs.  And the takeaway message here

10  is that well-researched historical record that we presented in

11  our opposition brief provides an ample basis to find that the

12  laws challenged are constitutional.

13          One additional point, again since we didn't have an

14  opportunity --

15          THE COURT:  Which I would not find at this point.  The

16  question is is there a likelihood of success.

17          MR. WISE:  Right.

18          So one additional point for reference because

19  Mr. Cramer critiques a lot of the, you know, historical record,

20  and, you know, that's based on a lot of historians' work.  I

21  would refer the Court to at that time Patrick Charles' 2012

22  article titled "The Faces of the Second Amendment Outside of

23  the Home:  History versus Ahistorical Standards of Review."

24  That was an article that was cited by the Piruta en banc panel.

25  It has a lot of the old cases that we relied on.  Because of

ER-1529

16

1    space limitations, we cited Mr. Charles' follow-up to this

2    article but not that article itself.  But that initial piece by

3    Mr. Charles directly rebuts much of the plaintiffs' portrayal

4    of the historical record.

5            I want to address the declaration from Chuck Haggard

6    very briefly.  He was called by the plaintiffs to rebut the

7    declaration we submitted from former Covina Police Chief

8    Kim Raney.  Mr. Haggard suggests on pages 7 and 11 of his

9    declaration that allowing open carry should have no effect on

10   an officer's reaction to a high-stress situation and that good

11   communication and training will prevent unfortunate outcomes.

12           And then on page 8 he alleges that Kim Raney's

13   position is that open carry, quote, will cause panic among

14   police officers and the public, waste police resources, and

15   ultimately lead to police officers shooting civilians carrying

16   exposed.

17           That's of course an exaggeration of Mr. Raney's

18   position.  He has a well-founded concern as does the

19   Legislature that open carry would heighten the stress that

20   officers face when they arrive to a tense scene, that it would

21   increase the number of complaints law enforcement would

22   receive.

23           And so the point here is that, notwithstanding

24   Mr. Haggard's view, the Legislature had legitimate reasons to

25   enact the laws contested here, reasons that withstand both

ER-1530

17

1    intermediate and strict scrutiny.

2         THE COURT:  On the record with respect to what the

3    Legislature decided, I think it's only the Raney declaration

4    that references legislative history.  How much can I consider

5    legislative history at this stage given the record before me?

6         MR. WISE:  That's right.  I don't think there's a lot

7    of reference to the legislative history in my brief or in any

8    other briefs that Ms. Bellantoni has provided.

9         THE COURT:  All right.  Ms. Bellantoni, you get the

10   final word at this point on the preliminary injunction before

11   we move to the motion to dismiss.

12        MS. BELLANTONI:  Thank you.  With regard to counsel's

13   comments on the declaration of Chuck Haggard, Officer Haggard

14   is an actual law enforcement officer in a jurisdiction that

15   overnight went from no carry to open carry without a license,

16   and Mr. Raney has no experience in jurisdictions with open

17   carry.  His declaration is not based on any fact at all and is

18   entirely speculative, akin to a Chicken Little argument, and I

19   would ask the Court to consider that when, you know, deciding

20   the motion for preliminary injunction.

21        Justice Scalia specifically in the *Heller* decision

22   rejected the public safety argument that was put forth by the

23   dissent in saying that constitutional rights cannot be trampled

24   upon because of a concern that individuals are going to either

25   commit crime with firearms or that they may cause public chaos.

ER-1531

18

1    It's all speculation.  Nothing happens.  There's no anarchy

2    when the statute in Officer Haggard's jurisdiction in Kansas

3    was changed.  And whether it's an individual civilian carrying

4    openly or a police officer off duty or a plainclothes officer

5    or detective, if the training is that poor in one's

6    jurisdiction that seeing someone in plain clothes with an open

7    carry with a firearm exposed on their person is going to

8    trigger them into a panic, then that is a direct reflection on

9    the lack of proper training in their jurisdiction.

10          THE COURT:  All right.  Anything further on

11   preliminary injunction?

12          MS. BELLANTONI:  Just as a reminder, your Honor, and

13   the papers are reflective of this, public area in the statute

14   and in the case law in this jurisdiction is applied to my

15   clients and actually any other resident in the state.  It only

16   includes areas -- it includes -- it encompasses areas outside

17   of their front door.  So unless my clients lived in a gated

18   property, unless there's a fence around their property, which

19   there is not in Mr. Baird's case.  And the fence in

20   Mr. Gallardo's -- on his property does not completely encompass

21   his entire property.  As soon as he steps out of his front

22   door, my client's committing a crime if he's carrying exposed

23   on his person.  There is no duty of law enforcement to protect.

24   That's been established clearly through the courts.  And so

25   really it's up to the individual to be responsible for their

ER-1532

19

1     own protection, and the only way for them to be able to do that

2     in this jurisdiction is to be able to carry in public openly.

3     Other than that, no, your Honor.

4          THE COURT:  I did see that issue briefed.

5          All right.  Let's move on to the motion to dismiss.

6     Just so I'm clear on the plaintiffs' argument about factual

7     challenge, I'm not certain I understand that.  When I look at

8     the complaint, I look at the briefing, I don't see that the

9     defense is so much challenging the facts as pled.  I think

10    they're pointing out what they believe to be in cases

11    threadbare and conclusory allegations.  So am I missing

12    something about your factual challenge argument?  You come out

13    pretty strongly on that.

14         MS. BELLANTONI:  Sure.  Well, in looking at the

15    complaint, the standard is whether the allegations in the

16    complaint make out a cause of action.

17         THE COURT:  Right, subject to *Twombly* and *Iqbal*.

18         MS. BELLANTONI:  Yes, ma'am.

19         THE COURT:  Which require plausibility.

20         MS. BELLANTONI:  Yes, exactly.

21         THE COURT:  And I think I read the defense brief as

22    raising that issue, plausibility.

23         MS. BELLANTONI:  Right.  And so with the defense

24    argument in their motion is bring in issues of fact that really

25    we haven't even had the opportunity to talk about.  They're

ER-1533

20

1    talking about public safety arguments and other examples of

2    how, you know, it's bad for the public if people are carrying

3    exposed and how there are different areas, you know, in the

4    state where people are able to carry, those are all issues that

5    can be fleshed out during discovery or during the course of the

6    case.  But that's -- unless there is absolutely no legal basis

7    for the causes of actions in the complaint, then their motion

8    should be denied.

9         THE COURT:  All right.  So to the extent it's an

10   argument that I shouldn't consider facts beyond the allegations

11   properly pled, I understand that, and I know how to apply the

12   law related to that argument.

13        On the travel, intrastate travel claim, here are two

14   questions really.  Are the plaintiffs ultimately conceding?  I

15   see the cases you cite.  I see references to *Bell* and *Haig*.

16   The defense points out *Soto-Lopez*.  But ultimately I think

17   you're ultimately conceding there's no case on point thus

18   squarely supporting the intrastate travel being burdened.  Am I

19   right about that?

20        MS. BELLANTONI:  It was difficult to find something.

21   And perhaps, your Honor, I submit that it was difficult to find

22   a case that said you have a right to intrastate travel when

23   there are cases specifically saying you have a right to

24   interstate travel, and arguably why would you have less rights

25   in your own state than you would in another state.

ER-1534

21

1        THE COURT:  Well, they're different.  Isn't this

2   question in fact before the Supreme Court along with an

3   interstate travel question?  Does the *New York State* case

4   before the Supreme Court raise intrastate travel issues?

5        MS. BELLANTONI:  It does raise intrastate travel

6   issues.  However, that case -- there is a high probability that

7   that New York case would be decided based on the fact that

8   there are already federal laws permitting firearm owners to

9   travel from one point where they're lawfully in possession of

10  their firearm to a second point where they're lawfully in

11  possession of their firearm as long as the firearm was unloaded

12  and locked and the ammunition was kept separately.  But they

13  could raise -- you know, they could decide obviously on a

14  broader issue.

15       THE COURT:  So just to test your arguments, I'm pretty

16  certain I understand them, but you're arguing that the statutes

17  penalize the plaintiffs for traveling outside of their counties

18  by denying them the right to continue open carry if they could

19  even contain an open carry license outside of their current

20  counties.  But the statutes would allow for concealed carry in

21  all places.

22       MS. BELLANTONI:  I would ask that we not even consider

23  concealed carry because it's not recognized as a right.  And

24  similar to my arguments in criticizing the state's use and

25  interchanging terms and using open carry, concealed carry,

ER-1535

22

1   public carry, concealed carry is apparently in the Ninth

2   Circuit not deemed to be a right.  So yes, if my clients were

3   even able to obtain an open carry permit, the right to bear

4   arms which attaches to the individual wherever they go would be

5   infringed, terminated because as soon as they left their county

6   they would be committing a crime.

7       THE COURT:  This is all theoretical because on the one

8   hand you say there's a ban.  So if there's a ban, then the

9   suggestion that someone could obtain an open carry permit in

10  his or her own county is illusory, right?  That's essentially

11  your position?

12      MS. BELLANTONI:  I'm not sure what you're asking.

13      THE COURT:  Because the intrastate claim can only make

14  sense if someone could obtain an open carry license in his or

15  her own county alone, right?  That has no effect in a

16  neighboring county.

17      MS. BELLANTONI:  So correct.  There are layers of

18  arguments to be made here.  The first being that there is a ban

19  on open carry, but once that -- once we get beyond that, if

20  there is a shall issue, you know, statute created by a

21  legislature based on the fact that their statute has been

22  enjoined, once it's shall issue, they're still restricted to

23  the county of issuance under the statute.  So there are several

24  issues within the language of the statutes that is violative of

25  the Second Amendment.  So yes, if they had a shall issue, an

ER-1536

23

1    open carry, then likewise they should have the no restriction

2    on geography or the population limit which is 200,000 which

3    coincides with the geographical restriction by county.

4         THE COURT:  Is there a ripeness problem there on the

5    intrastate claim?

6         MS. BELLANTONI:  I'm not sure how there would be a

7    ripeness issue, Judge.

8         THE COURT:  Anything on this point, Mr. Wise?

9         MR. WISE:  No, your Honor, other than as we said in

10   our briefing we believe that the standards in *Soto-Lopez* would

11   apply, and that under the three ways that interstate travel --

12   it's not even clear that intrastate travel would be recognized

13   here.  But under that test, the plaintiffs haven't met it.

14        THE COURT:  Is it possible that the Supreme Court is

15   on the verge of addressing an issue such that a claim should be

16   allowed to proceed?

17        MR. WISE:  I don't want to misrepresent what the

18   Supreme Court is considering.  I don't recall that being the

19   way that the issues are framed in that case.

20        THE COURT:  The question presented is whether the

21   city's ban on transporting a licensed locked and unloaded

22   handgun to a home or shooting range outside city limits is

23   consistent with the Second Amendment, the Commerce Clause, and

24   the constitutional right to travel.  It's the outside city

25   limits that suggests some intrastate issue there.  I don't

ER-1537

24

1    know.  I'm thinking about that.

2         On the Fourth Amendment claim, I don't think you've

3    pointed me to any authority that is on all fours,

4    Ms. Bellantoni, that is addressing whether or not a regulation

5    affecting the precise means or manner of use of property

6    constitutes a seizure, certainly not a handgun or a gun.

7         MS. BELLANTONI:  So, you know, there is nothing that

8    is on all fours with our position, your Honor.  And it's not

9    the use of the property.  It's the manner in which it is worn

10   on the body.  So in other words, the plaintiffs have property,

11   and there is an infringement and an interference with their use

12   and possession of that property by the government in dictating

13   and demarcating, separating out the way that they wear and

14   carry their property.

15        THE COURT:  Are you saying wearing is not a use?

16        MS. BELLANTONI:  Well, when we're talking about, you

17   know, a firearm, it just -- use didn't seem that it would be

18   the most reflective of the argument that we were representing.

19        THE COURT:  I was trying to understand if there's some

20   precise -- because at one point you said not use -- precise

21   manner of wearing is possession, use, donning, wearing.

22        MS. BELLANTONI:  I see.

23        THE COURT:  Right?

24        MS. BELLANTONI:  Right.

25        THE COURT:  It's all of that.

ER-1538

25

1          MS. BELLANTONI:  So it's really the concealed carry

2    versus the open carry that there really is no rational argument

3    for under the Fourth Amendment for the interference.  And the

4    burden is on the government.  There is a property interest

5    here.

6          You know, I wanted to point out it was a little

7    confusing in the government's papers where they say that we

8    have not pointed to or that the state statute does not create a

9    property interest.  So I wasn't really sure what that meant

10   because there is already a property interest here, personal

11   property, handguns, and that is a recognized property.

12         THE COURT:  That's getting into the procedural due

13   process, is it not?  I'm going to ask you that question when we

14   get to procedural due process.

15         MS. BELLANTONI:  Sure.

16         THE COURT:  So hold that, hold that thought.

17         So on Fourth Amendment, it's *Presley* and *Cedar Point*

18   that are the most analogous, and the Court looks at whether or

19   not there's a meaningful interference with possessory interest

20   and whether or not the character of the property is changed; is

21   that the test?

22         MS. BELLANTONI:  Yeah.  So the meaningful interference

23   with their property is the state's requirement that they wear

24   or carry the property in a specific manner.

25         THE COURT:  So Mr. Wise, on the Fourth Amendment

ER-1539

26

1   claim, how can I decide there's no possibility of

2   unreasonableness as used in that amendment at this stage?

3   Isn't there a factual issue that would need to be resolved

4   through dispositive motion practice or at a bench trial?

5        MR. WISE:  So that would only be of course if the

6   Court got through the first prong of finding that there was a

7   meaningful interference.  Then we would look at the

8   reasonableness of the seizure, right?  But if the Court is just

9   considering whether there was a meaningful interference,

10  *Shiroma* is dispositive here, as long as there's an

11  appropriately tailored law which, as we've said in our

12  briefing, that open carry licensing and prohibitions are

13  specifically tailored to allow for exceptions, then the Court

14  can dispose of the Fourth Amendment claim on that basis.

15       In terms of the reasonableness, the Court can rely on

16  *Heller* itself which indicates that the government has a variety

17  of tools for combating the problem of gun violence so that

18  balancing can be done based on existing case law.

19       MS. BELLANTONI:  Respectfully, your Honor --

20       THE COURT:  Hold on one second.

21       Here on this claim could the dominoes fall in

22  plaintiffs' favor depending on the New York decision and then

23  whatever the circuit does with the cases it's deferred?

24       MR. WISE:  I mean, theoretically there could be either

25  that case or other cases that come out all different sorts of

ER-1540

27

1  ways and could influence a lot of different cases that have

2  been heard or are being heard.  Based on existing case law, you

3  know, what we've cited in our brief, we don't believe that the

4  plaintiffs have stated a plausible claim, and that goes for

5  the, you know, intrastate travel claim as well.

6          THE COURT:  All right.  Ms. Bellantoni.

7          MS. BELLANTONI:  Yes, your Honor.  None of the cases

8  that are cited, the *Heller* case, the *New York City* case, those

9  are all cases that are Second Amendment cases under Second

10  Amendment analysis, not a Fourth Amendment analysis.  It's a

11  completely different analysis.  There is a property interest,

12  and the burden is not on the plaintiff.  The burden is on the

13  government to identify whether their interference with the

14  property rights is reasonable.

15          THE COURT:  Ultimately the burden -- the question is

16  at this point have plaintiffs pled a claim adequately.

17          MS. BELLANTONI:  Right.  And the Second Amendment

18  cases cited are not dispositive of that issue.

19          THE COURT:  *Shiroma* is a Fourth Amendment case.

20          MS. BELLANTONI:  *Heller* is not, and there are

21  fact-based issues here because the government hasn't put forth

22  a Fourth Amendment argument on the firearms issue.  We don't

23  know what their reasoning is for demarcating open carry versus

24  concealed carry.

25          THE COURT:  Well, they're attacking your pleadings at

ER-1541

28

1     this point.

2          On procedural due process, the question is what

3     language in the statute creates a liberty or a property

4     interest.  And you don't think you need to point to statutory

5     language on the procedural due process claim to satisfy that?

6          MS. BELLANTONI:  On procedural due process?  On

7     procedural due process, there is a property interest because

8     it's personal property.  It's an actual thing.  It's not like,

9     for instance, a job where you may not have a possessory

10    interest or property interest in your employment.  This is a --

11    this is a piece of property, so there -- procedurally there is

12    no notice before -- the statute is what it is.  I mean,

13    everyone has to be subjected to it.  And my clients, there's

14    no -- there was no basis for the restriction on my clients and

15    how they can carry their firearms or where they can carry their

16    firearms outside of their county.

17         THE COURT:  And that's rooted in the Second Amendment.

18    You say it's completely separate from the Second Amendment,

19    right?

20         MS. BELLANTONI:  The 14th Amendment, yes, because the

21    statute itself has been created without an opportunity to be

22    heard.

23         THE COURT:  I'm not talking about the statute.  The

24    interest, the property interest.

25         MS. BELLANTONI:  The property interest in their

ER-1542

29

1    handguns?

2         THE COURT:  Uh-huh.

3         MS. BELLANTONI:  Is existing separate and apart from

4    the 14th Amendment or any statute.

5         THE COURT:  And it preexists the Second Amendment,

6    that's your argument?  Is it preexisting?  Is this your

7    preexisting argument?

8         MS. BELLANTONI:  For a property interest?

9         THE COURT:  Yes.

10         MS. BELLANTONI:  Yes.  I don't think that the property

11    interest is an argument.

12         THE COURT:  On the property interest, just so -- I

13    mean, isn't it the case that there is a pretty good chance that

14    plaintiffs have a protected property interest, Mr. Wise, in the

15    procedural due process context?

16         MR. WISE:  Not for purposes of procedural due process.

17    So I guess I'm having trouble understanding what procedure

18    plaintiffs --

19         THE COURT:  I'm getting to that next.  That's a

20    separate question.

21         MR. WISE:  It is a separate question, and I understand

22    we're addressing the threshold issue.

23         THE COURT:  It's the first prong.

24         MR. WISE:  Yes, exactly.  So we're looking at whether

25    there's mandatory or permissive language in the statute

ER-1543

30

1    providing for a process here, and so, you know, we looked at

2    the statutes.  The criminal statutes have penalties.  They

3    don't create an interest.  The open carry licensing statutes

4    use permissive language that allows the sheriff or police chief

5    the option of issuing an open carry license.

6        THE COURT:  So your focus is on the language creating

7    the procedure.

8        MR. WISE:  Right.

9        THE COURT:  So what is the procedure that's been

10   denied, Ms. Bellantoni?

11       MS. BELLANTONI:  The procedure that's been denied is

12   there is no procedure at all for my clients or anyone else to

13   be heard prior to their rights being violated, their Second

14   Amendment right, well, which is not a part of this motion, but

15   their Fourth Amendment right to the enjoyment of their property

16   and how they choose to carry or wear their property.  In other

17   words, if --

18       THE COURT:  But there's a procedural due process

19   claim, right?

20       MS. BELLANTONI:  Correct.  And the argument is --

21       THE COURT:  So what's the procedure?

22       MS. BELLANTONI:  There is no procedure.  That's the

23   problem.

24       THE COURT:  No procedure?

25       MS. BELLANTONI:  Because it's already mandated by the

ER-1544

31

1   statute.  It's already dictated by the government how an

2   individual can wear their property and carry their property.

3   In other words, with an open carry --

4          THE COURT:  So what's the best case?  What's your best

5   case to support your argument that you have a procedural due

6   process claim when the statutes provide no procedure, if that's

7   the right way to read the statute?

8          MS. BELLANTONI:  The statutes provide no procedure

9   which is the violation in and of itself because they, by virtue

10  of their existence, remove from my clients the ability to wear

11  their firearms whether exposed or concealed.  They remove the

12  ability of my clients to travel outside of their county and/or

13  travel to an area of more than 200,000 people.

14         THE COURT:  All right.  I understand the argument.  On

15  substantive due process, is it fair to say substantive due

16  process is based on the deprivation of Second Amendment and

17  Fourth Amendment rights, or is there a separate constitutional

18  right on which the substantive due process claim is based?

19         MS. BELLANTONI:  The substantive due process claim is

20  primarily based on the Second Amendment but additionally the

21  enforcement amendment as well.  That is in the papers.  You've

22  read the papers.  It's an inherent right of the individual

23  innately from birth to self-protection, and the statutes, the

24  statutory scheme is infringing upon that and violating that and

25  removing any ability of the individual to decide how they can

ER-1545

32

1    defend their safety and their bodies from confrontation in

2    public.

3          THE COURT:  So looking at the ninth and the tenth

4    claims, are you disputing that the Court can dismiss those

5    claims in part to the extent they cite the 14th Amendment, or

6    do you concede that?

7          MS. BELLANTONI:  Are you asking me?

8          THE COURT:  Yes, Ms. Bellantoni.

9          MS. BELLANTONI:  Can you make that a little clearer.

10   I'm not understanding what you're asking me.

11         THE COURT:  I just said I'm looking at your claims 9

12   and 10, and they are based -- I just asked you what they were

13   based on, and you just told me they were based on the Second

14   and the Fourth.  And I'm looking at the complaint itself, and

15   they say Second, Fourth, and 14th.

16         MS. BELLANTONI:  No.  You were asking a moment ago --

17         THE COURT:  Don't put words in my mouth.  Just answer

18   my question.

19         MS. BELLANTONI:  Well, on count 10 there are

20   allegations in the cause of action under the Second, Fourth,

21   and 14th Amendment.  If the question is substantively under the

22   14th Amendment substantive due process issue, then those issues

23   are also tied into the right of the individual to defend

24   themselves and to determine how they will defend themselves in

25   public in the face of a confrontation and having to protect

ER-1546

33

1    their lives and their security.

2         THE COURT:  All right.  Anything in response to what

3    you just heard, Mr. Wise?

4         MR. WISE:  No, your Honor.  I think our briefing has

5    addressed these issues.

6         THE COURT:  All right.  I have no other questions on

7    the motion to dismiss.  So again, I give the movant the last

8    word.  So on the motion to dismiss, anything not covered by the

9    discussion or the briefing, Ms. Bellantoni?

10         MS. BELLANTONI:  No, your Honor.

11         THE COURT:  Mr. Wise?

12         MR. WISE:  No, your Honor.  Thank you.

13         THE COURT:  All right.  On scheduling, I have looked

14    at the joint status report.  Here's my main question.  I'll

15    issue an order as quickly as I can on the preliminary

16    injunction.  What -- I mean, can you tell me now what's the

17    likelihood that regardless of how I order a party is going to

18    appeal?  Because it could -- there's a suggestion that -- well,

19    assuming a party appeals my order on preliminary injunction,

20    regardless of which way I go, would the parties then agree that

21    a discovery stay should be put in place, Ms. Bellantoni?

22         MS. BELLANTONI:  I would not agree to that, your

23    Honor, no, because the preliminary injunction is based on the

24    Second Amendment issue, and the other causes of action can

25    certainly proceed.  There really -- I don't anticipate there

ER-1547

34

1    being much fact-based discovery.  The plan that we put forth is

2    relatively brief and concise, and I don't think that the

3    preliminary injunction determination will affect discovery in

4    that case.  And waiting for an appeal on the preliminary

5    injunction will delay justice for my clients in moving forward

6    on the rest of their claims.

7              THE COURT:  All right.  I think that's a fair point,

8    Mr. Wise.  It's probably not too fact intensive, agreed?

9              MR. WISE:  I think that's right.

10             THE COURT:  I mean, legislative history might be

11   developed and some limited deposition practice.

12             MR. WISE:  Right.  Our only point is that these issues

13   I think are likely to get fleshed out in the, you know, cases

14   that are up on appeal right now and that there are a number of

15   cases that are addressing similar issues and that when it comes

16   time to -- you know, in our view we think it should be stayed,

17   and when it comes time to litigate these issues, it wouldn't

18   take very long to get through them.  So just in the interest of

19   judicial economy, our view is that our case should be stayed

20   pending the outcome of any appeal on the preliminary injunction

21   motion and any of these other cases that are up on appeal right

22   now.

23             THE COURT:  Just help me understand, if Young is

24   decided at the Ninth Circuit -- if the New York case is decided

25   and the Young case is decided, do those effectively decide this

ER-1548

35

1   case or not?

2           MR. WISE:  We think that it's very likely they will.

3           THE COURT:  Ms. Bellantoni?

4           MS. BELLANTONI:  It's really hard to say, but they are

5   not guaranteed to be entirely dispositive of our case.  And

6   even if Young -- the en banc court ends up determining that

7   there is a right to open carry, it still doesn't change the

8   fact that there are statutory limitations on the ability to get

9   an open carry permit or the good cause requirement which may or

10  may not be addressed by the Young court and then as well as the

11  geographical population restrictions in the statute.

12          THE COURT:  Because that does not involve the

13  California statutes at all.

14          MS. BELLANTONI:  Right.  And nor does it take care of

15  the Fourth Amendment argument.

16          THE COURT:  How could Young resolve the -- would the

17  defense -- if Young were decided in favor of open carry, would

18  the defense end up conceding the statutes here are

19  unconstitutional?  There would be a petition for cert filed no

20  doubt in Young.

21          MR. WISE:  Yeah.  I mean -- right.  It's hard to

22  answer that in the abstract.

23          THE COURT:  All right.  I do understand that

24  plaintiffs are seething the Dormant Commerce Clause claim,

25  correct, Ms. Bellantoni?

ER-1549

36

1          MS. BELLANTONI:  Yes.

2          THE COURT:  All right.

3          What I'll do is at the same time that I issue the

4     order, my inclination is not to stay discovery at this point

5     but to indicate initial disclosures within 21 days after I

6     issue my orders on preliminary injunction, motion to dismiss,

7     and I'll issue them at the same time.  And then I'll set a

8     schedule for fact discovery and expert discovery that follows.

9     So you'll have specific dates once I issue the order on the

10    pending motions.  And I'll set through dispositive motion

11    practice.  It's only if the case gets past dispositive motion

12    practice that I would then set a trial date.

13         So anything else on scheduling, Ms. Bellantoni?

14         MS. BELLANTONI:  No, your Honor.

15         THE COURT:  Mr. Wise?

16         MR. WISE:  No, your Honor.

17         THE COURT:  All right.  I think I have what I need.

18    Thank you very much.  The matter is submitted.

19         THE CLERK:  Court is in recess.

20         (The proceedings adjourned at 11:55 a.m.)

21                         --oOo--

22    I certify that the foregoing is a correct transcript from the

23    record of proceedings in the above-entitled matter.

24                    /s/ Kacy Parker Barajas
                     _____
25                    KACY PARKER BARAJAS
                     CSR No. 10915, RMR, CRR, CRC


                       KACY PARKER BARAJAS
            OFFICIAL COURT REPORTER, USDC - (916) 426-7640

COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

--------------------------------------------------------x

MARK BAIRD and
RICHARD GALLARDO,

                             Plaintiffs,             **Case No.: 2:19-cv-00617-KJM-AC**

                v.                                **NOTICE OF APPEAL**

ROB BONTA, in his official capacity
as Attorney General of the State of California,

                             Defendant.

--------------------------------------------------------x

       PLEASE TAKE NOTICE that the plaintiffs, MARK BAIRD and RICHARD GALLARDO,

hereby appeal to the United States Court of Appeals for the Ninth Circuit from the annexed Order

of the Hon. Kimberly J. Mueller entered by the Clerk of the Court on December 29, 2023 and each

and every part thereof that granted the defendant's motion for summary judgment, denied the

plaintiffs' cross-motion for summary judgment, denied the plaintiffs' motion for a preliminary

injunction, and each and every part thereof that is contrary to and/or prejudiced the plaintiffs' rights,

claims, and interests.

ER-1551

Dated: January 24, 2024                THE BELLANTONI LAW FIRM, PLLC

                                    ____/s/ Amy L. Bellantoni, Esq._____
                                    Amy L. Bellantoni
                                    *Attorney for Plaintiffs*
                                    *Pro Hac Vice*
                                    Email: abell@bellantoni-law.com

COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

--------------------------------------------------------x

MARK BAIRD and
RICHARD GALLARDO,

                   Plaintiffs,        **Case No.: 2:19-cv-00617-KJM-AC**

        v.                   **NOTICE OF APPEAL**

ROB BONTA, in his official capacity
as Attorney General of the State of California,

                   Defendant.

--------------------------------------------------------x

      PLEASE TAKE NOTICE that the plaintiffs, MARK BAIRD and RICHARD GALLARDO,

hereby appeal to the United States Court of Appeals for the Ninth Circuit from the annexed Order

of the Hon. Kimberly J. Mueller entered by the Clerk of the Court on December 8, 2022 and each

and every part thereof that denied the plaintiffs' motion for a preliminary injunction, and *sua sponte*

dismissed the plaintiffs' as applied challenge, and each and every part thereof that is contrary to

and/or prejudiced the plaintiffs' rights, claims, and interests.

Dated: January 3, 2023                              THE BELLANTONI LAW FIRM, PLLC

                                               ___/s/ Amy L. Bellantoni, Esq._____
                                             Amy L. Bellantoni
                                           *Attorney for Plaintiffs*
                                           *Pro Hac Vice*
                                           Email: abell@bellantoni-law.com

ER-1554

## U.S. District Court
## Eastern District of California - Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:19-cv-00617-KJM-AC

| | |
|---|---|
| Baird et al v. Bonta | Date Filed: 04/09/2019 |
| Assigned to: Chief District Judge Kimberly J. Mueller | Date Terminated: 12/29/2023 |
| Referred to: Magistrate Judge Allison Claire | Jury Demand: None |
| Case in other court: US Court of Appeals, 23-15016 | Nature of Suit: 440 Civil Rights: Other |
| US Court of Appeals, 24-00565 | Jurisdiction: Federal Question |
| Cause: 28:1331 Federal Question: Other Civil Rights | |

**Plaintiff**

**Mark Baird**                    represented by    **Christopher Richard Cosca**
Cosca Law Corporation
1007 7th Street
Suite 210
Sacramento, CA 95814
916-440-1010
Email: coscalaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy L. Bellantoni , PHV**
The Bellantoni Law Firm, PLLC
2 Overhill Road
Suite 400
Scarsdale, NY 10583
914-367-0090
Fax: 888-763-9761
Email: abell@bellantoni-law.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Gallardo**              represented by    **Christopher Richard Cosca**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy L. Bellantoni , PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rob Bonta**                     represented by    **Iram Hasan**
*in his official capacity as Attorney General*      Office of the California Attorney General

ER-1555

*of the State of California*

455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102
415-510-3793
Email: iram.hasan@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lara Haddad**
California Department of Justice
300 So. Spring Street
Suite 1702
Los Angeles, CA 90013
213-269-6250
Email: lara.haddad@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Matthew Wise**
Office Of The Attorney General
Po Box 944255
Sacramento, CA 94244
916-210-6046
Fax: 916-324-8835
Email: matthew.wise@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan Richard Davis**
California Department of Justice
Government Law Section
1300 I Street
95814
Sacramento, CA 95814
916-210-6050
Email: Ryan.Davis@doj.ca.gov
*TERMINATED: 04/17/2023*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/09/2019 | 1 | COMPLAINT For Declaratory and Injunctive Relief against Xavier Becerra by Mark Baird, Richard Gallardo. Attorney Cosca, Christopher Richard added. (Attachments: # 1 Civil Cover Sheet)(Cosca, Christopher) (Entered: 04/09/2019) |
| 04/09/2019 | 2 | PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Mark Baird, Richard Gallardo for attorney Amy L. Bellantoni to appear Pro Hac Vice. (Cosca, Christopher) (Entered: 04/09/2019) |
| 04/09/2019 |   | PAYMENT for 2 Pro Hac Vice Application in the amount of $ 225, receipt number 0972-8203995. (Cosca, Christopher) (Entered: 04/09/2019) |
| 04/09/2019 |   | PAYMENT for Civil Case filing fee in the amount of $ 400, receipt number 0972-8203739. (Cosca, Christopher) Modified on 4/23/2019 (Nelson, J). (Entered: 04/09/2019) |

ER-1556

| 04/10/2019 | 3 | SUMMONS ISSUED as to *Xavier Becerra* with answer to complaint due within *21* days  Attorney *Christopher Richard Cosca* *Attorney at Law* *1007 7th Street, Suite 210* *Sacramento, CA 95814*. (Mena-Sanchez, L) (Entered: 04/10/2019) |
| --- | --- | --- |
| 04/10/2019 | 4 | CIVIL NEW CASE DOCUMENTS ISSUED; Initial Scheduling Conference SET for 8/15/2019 at 02:30 PM in Courtroom 3 (KJM) before District Judge Kimberly J. Mueller. (Attachments: # 1 Standing Order, # 2 Consent Form, # 3 VDRP) (Mena-Sanchez, L) (Entered: 04/10/2019) |
| 04/30/2019 | 5 | PRO HAC VICE ORDER signed by District Judge Kimberly J. Mueller on 4/29/19.  Added attorney Amy L Bellantoni, PHV for Mark Baird and Richard Gallardo  (Mena Sanchez, L) (Entered: 04/30/2019) |
| 05/01/2019 | 6 | [DISREGARD TO BE REFILED BY ATTORNEY] SUMMONS RETURNED EXECUTED: Xavier Becerra served on 4/18/2019, answer due 5/9/2019. (Bellantoni, Amy) Modified on 5/2/2019 (Washington, S). (Entered: 05/01/2019) |
| 05/01/2019 | 7 | CERTIFICATE of SERVICE by Mark Baird, Richard Gallardo re 4 Civil New Case Documents for KJM. (Bellantoni, Amy) (Entered: 05/01/2019) |
| 05/02/2019 | 8 | SUMMONS RETURNED EXECUTED: Xavier Becerra served on 4/18/2019. (Bellantoni, Amy) Modified on 5/3/2019 (Washington, S). (Entered: 05/02/2019) |
| 05/08/2019 | 9 | STIPULATION to Extend Time to Respond to Complaint by Xavier Becerra. Attorney Wise, R  Matthew added  (Wise, R ) (Entered  05/08/2019) |
| 06/06/2019 | 10 | MOTION to DISMISS by Xavier Becerra. Motion Hearing set for 7/26/2019 at 10:00 AM in Courtroom 3 before District Judge Kimberly J. Mueller. (Attachments: # 1 Points and Authorities)(Wise, R.) (Entered: 06/06/2019) |
| 06/07/2019 | 11 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for District Judge Kimberly J. Mueller  The court is in receipt of Defendant's Motion to Dismiss (ECF No 10 )  The motion is noticed for hearing on 7/26/2019, which is not an available law and motion date  Accordingly, the hearing on the motion is RESET for 8/9/2019 at 10 00 AM  Filing deadlines are reset as provided by Local Rule 230. It is FURTHER ORDERED that the Status (Pretrial Scheduling) Conference set for 8/15/2019 is VACATED and ADVANCED to 8/9/2019 at 10:00 AM, with the filing of a joint status report due seven days prior. Both hearings will be held in in Courtroom 3 before District Judge Kimberly J  Mueller  (Text Only Entry) (Schultz, C) (Entered: 06/07/2019) |
| 06/21/2019 | 12 | STIPULATION and PROPOSED ORDER to Continue Status Conference, Briefing Deadlines and Hearing Date for Defendant's Motion to Dismiss Plaintiffs' Complaint by Xavier Becerra. (Wise, R.) Modified on 6/25/2019 (Mena-Sanchez, L). (Entered: 06/21/2019) |
| 06/27/2019 | 13 | STIPULATION and ORDER signed by District Judge Kimberly J. Mueller on 6/27/19 RESCHEDULING the Status Conference and hearing on Defendants' 10 Motion for 9/6/2019 at 10:00 AM in Courtroom 3 (KJM) before District Judge Kimberly J. Mueller. And APPROVING the Parties' briefing and hearing Schedule  7/8/19  Plaintiffs to file preliminary injunction motion. 7/29/19: Plaintiffs to file opposition to Defendant's motion to dismiss  8/2/19  Defendant to file opposition to Plaintiffs' preliminary injunction motion. 8/30/19: Parties to file joint status report, Plaintiffs to file reply in support of preliminary injunction motion, and Defendant to file reply in support of motion to dismiss.(Mena-Sanchez, L) (Entered: 06/27/2019) |
| 07/08/2019 | 14 | MOTION for PRELIMINARY INJUNCTION by Mark Baird, Richard Gallardo. Motion Hearing set for 9/6/2019 at 10:00 AM in Courtroom 3 (KJM) before District Judge Kimberly J. Mueller. (Attachments: # 1 Declaration of Amy L. Bellantoni, # 2 |

ER-1557

| | | |
|---|---|---|
| | | Declaration of Richard Gallardo, # 3 Declaration of Mark Baird)(Bellantoni, Amy) (Entered: 07/08/2019) |
| 07/08/2019 | 15 | (DISREGARD; REFER TO AMENDED FILING AT ECF NO. 18 ) MEMORANDUM by Mark Baird, Richard Gallardo in support of 14 Motion for Preliminary Injunction. (Bellantoni, Amy) Modified on 7/9/2019 (Benson, A.) (Entered: 07/08/2019) |
| 07/11/2019 | 16 | REQUEST to FILE Amended 14 Memorandum of Points and Authorities by Mark Baird, Richard Gallardo. (Bellantoni, Amy) Modified on 7/12/2019 (Benson, A.). (Entered: 07/11/2019) |
| 07/16/2019 | 17 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for District Judge Kimberly J. Mueller: Plaintiffs' Request to File an Amended Memorandum of Points and Authorities in Connection with Plaintiffs' Motion for Preliminary Injunction is GRANTED. (*See* ECF Nos. 14 and 16 ) Plaintiffs' amended filing shall be filed forthwith. (Text Only Entry) (Schultz, C) (Entered: 07/16/2019) |
| 07/16/2019 | 18 | AMENDED 15 MEMORANDUM of POINTS in SUPPORT of 14 Motion for Preliminary Injunction by Mark Baird, Richard Gallardo. (Bellantoni, Amy) Modified on 7/17/2019 (York, M.) (Entered: 07/16/2019) |
| 07/30/2019 | 19 | OPPOSITION by Mark Baird, Richard Gallardo to 10 Motion to Dismiss. (Bellantoni, Amy) (Entered: 07/30/2019) |
| 08/02/2019 | 20 | OPPOSITION by Xavier Becerra to 14 Motion for Preliminary Injunction. (Attachments: # 1 Declaration of R. Matthew Wise, # 2 Declaration of Former Covina Chief of Police Kim Raney)(Wise, R.) (Entered: 08/02/2019) |
| 08/28/2019 | 21 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for District Judge Kimberly J. Mueller: On the court's own motion, the Status (Pretrial Scheduling) Conference and Motion Hearing as to Defendant's Motion to Dismiss and Plaintiff's Motion for Preliminary Injunction (ECF Nos. 10 and 14 ) set for 9/6/2019 is VACATED and RESET for 10/8/2019 at 10:00 AM in Courtroom 3 before District Judge Kimberly J. Mueller. Motion related briefing deadlines are reset as provided by Local Rule 230. The parties shall file a joint status report no less than seven days prior to the new date of the status conference. (Text Only Entry) (Schultz, C) (Entered: 08/28/2019) |
| 09/06/2019 | 22 | NOTICE of INTENT to present sworn testimony at the 10/8/2019 14 preliminary injunction hearing by Plaintiffs Mark Baird, Richard Gallardo. (Bellantoni, Amy) Modified on 9/9/2019 (Benson, A.) (Entered: 09/06/2019) |
| 09/09/2019 | 23 | OBJECTIONS by Defendant Xavier Becerra to 22 Notice of Intent. (Wise, R.) Modified on 9/9/2019 (Benson, A.). (Entered: 09/09/2019) |
| 09/10/2019 | 24 | NOTICE of WITHDRAWAL of 22 Notice of Intent by Mark Baird, Richard Gallardo. (Bellantoni, Amy) Modified on 9/10/2019 (Benson, A.). (Entered: 09/10/2019) |
| 10/01/2019 | 25 | JOINT STATUS REPORT by Mark Baird, Richard Gallardo. (Bellantoni, Amy) (Entered: 10/01/2019) |
| 10/01/2019 | 26 | REPLY by Xavier Becerra in support of 10 Motion to Dismiss. (Wise, R.) (Entered: 10/01/2019) |
| 10/02/2019 | 27 | REPLY by Mark Baird, Richard Gallardo in support of 14 Motion for Preliminary Injunction. (Attachments: # 1 Declaration of Clayton Cramer, # 2 Declaration of Charles "Chuck" Haggard, # 3 Declaration of Mark Baird, # 4 Declaration of Richard Gallardo) (Bellantoni, Amy) (Entered: 10/02/2019) |

ER-1558

| | | |
|---|---|---|
| 10/02/2019 | 28 | DECLARATION of Amy L. Bellantoni in support of 14 Motion for Preliminary Injunction. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Bellantoni, Amy) Modified on 10/2/2019 (Benson, A.). (Entered: 10/02/2019) |
| 10/08/2019 | 29 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for District Judge Kimberly J. Mueller: Due to unforseen circumstances and on the court's own motion, the Status (Pretrial Scheduling) Conference and Motion Hearing set for 10/8/2019 is VACATED and RESET for 10/9/2019 at 11:00 AM in Courtroom 3 before District Judge Kimberly J. Mueller. (Text Only Entry)(Schultz, C) (Entered: 10/08/2019) |
| 10/09/2019 | 30 | MINUTES for MOTION HEARING and SCHEDULING CONFERENCE held before District Judge Kimberly J. Mueller on 10/9/2019. Plaintiffs' Counsel, Amy Bellantoni, present. Defendant's Counsel, R. Matthew Wise, present. The court heard oral argument as to Defendant's Motion to Dismiss (ECF no. 10 ) and Plaintiffs' Motion for Preliminary Injunction (ECF No. 14 ). The court and counsel also discussed case scheduling. After careful consideration of the parties' arguments, the court took the matters under submission. A written order will issue. Court Reporter: Kacy Barajas. (Text Only Entry) (Schultz, C) (Entered: 10/09/2019) |
| 10/11/2019 | 31 | TRANSCRIPT REQUEST by Mark Baird for proceedings held on October 9, 2019 before Judge Kimberly J. Mueller. Court Reporter Kacy Barajas. (Barajas, K) (Entered: 10/11/2019) |
| 10/29/2019 | 32 | TRANSCRIPT of Proceedings, Motion to Dismiss, Motion for Preliminary Injunction, Status Conference held on October 9, 2019, before District Judge Kimberly J. Mueller, filed by Court Reporter Kacy Barajas, Phone number 916-426-7640 E-mail kbarajas.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 11/21/2019. Redacted Transcript Deadline set for 11/29/2019. Release of Transcript Restriction set for 1/27/2020. (Barajas, K) (Entered: 10/29/2019) |
| 08/31/2020 | 33 | ORDER signed by Chief District Judge Kimberly J. Mueller on 8/28/2020 DENYING Plaintiffs' 14 motion for a preliminary injunction without prejudice. GRANTING in part and DENYING in part Defendants' 10 motion to dismiss as follows: Claims 5 and 6 are DISMISSED; Claims 7 and 8 are DISMISSED; Claims 9, 10, 12 and 14 are DISMISSED to the extent they rely on the Fourth or Fourteenth Amendments; and The motion to dismiss is DENIED as to claim 13. Plaintiffs shall file any amended complaint within 21 days of this order. The parties shall file a joint status report regarding the future scheduling of this case within 30 days of this order. See E.D. L.R. 240. (Becknal, R) (Entered: 08/31/2020) |
| 09/21/2020 | 34 | FIRST AMENDED COMPLAINT against Xavier Becerra by Mark Baird, Richard Gallardo.(Bellantoni, Amy) (Entered: 09/21/2020) |
| 09/28/2020 | 35 | FIRST AMENDED STATUS REPORT by Mark Baird, Richard Gallardo. (Bellantoni, Amy) (Entered: 09/28/2020) |
| 10/13/2020 | 36 | STIPULATION and PROPOSED ORDER re extension of time to file answer by Xavier Becerra. (Wise, R.) Modified on 10/14/2020 (Kaminski, H). (Entered: 10/13/2020) |
| 10/16/2020 | 37 | STIPULATION and ORDER signed by Chief District Judge Kimberly J. Mueller on 10/15/2020 EXTENDING the deadline to 11/2/2020 for Defendant to answer Plaintiffs' Complaint. (Mena-Sanchez, L) (Entered: 10/16/2020) |
| 11/02/2020 | 38 | ANSWER by Xavier Becerra.(Wise, R.) (Entered: 11/02/2020) |

ER-1559

| 04/12/2021 | 39 | ORDER signed by Chief District Judge Kimberly J. Mueller on 4/12/2021. The Court ORDERS as follows: Initial disclosures are due 4/30/2021. Fact Discovery must be completed by 8/27/2021. Expert opinions must be disclosed by 8/27/2021. Rebuttal expert opinions must be disclosed by 9/24/2021. Expert Discovery must be completed by 10/29/2021. The last day for hearing Dispositive Motions is 12/17/2021. (Mena-Sanchez, L) (Entered: 04/12/2021) |
| --- | --- | --- |
| 04/13/2021 | 40 | MOTION for PRELIMINARY INJUNCTION by Mark Baird, Richard Gallardo. Motion Hearing set for 6/18/2021 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Mark Baird, # 3 Declaration of Richard Gallardo)(Bellantoni, Amy). Modified on 4/14/2021 (Kaminski, H). (Entered: 04/13/2021) |
| 06/04/2021 | 41 | OPPOSITION to 40 Motion for Preliminary Injunction by Defendant Xavier Becerra. (Attachments: # 1 Declaration of R. Wise, # 2 Declaration of K. Raney)(Wise, R.) Modified on 6/7/2021 (Kaminski, H). (Entered: 06/04/2021) |
| 06/17/2021 | 42 | MOTION for CONTINUANCE return date of Plaintiffs' Motion for a Second Preliminary Injunction by Mark Baird, Richard Gallardo. Motion Hearing SET for 6/18/2021 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. (Attachments: # 1 Declaration)(Bellantoni, Amy) Modified on 6/21/2021 (Mena-Sanchez, L). (Entered: 06/17/2021) |
| 06/17/2021 | 43 | CLARIFICATION of position by Xavier Becerra re 42 Motion to Continue. (Wise, R.) Modified on 6/21/2021 (Mena-Sanchez, L). (Entered: 06/17/2021) |
| 06/17/2021 | 44 | [VACATED] MINUTE ORDER issued by Courtroom Deputy C. Schultz for Chief District Judge Kimberly J. Mueller on 6/17/2021: On the court's own motion and pursuant to Local Rule 230(g), Plaintiffs' Motion for a Preliminary Injunction, ECF No. 40 , is SUBMITTED without oral argument. The motion is submitted on the briefs, including the reply brief, if any filed no later than 7/9/2021. Accordingly, the hearing date of 6/18/2021 is VACATED. If the court determines that oral argument is needed, it will be scheduled at a later date. Plaintiffs' Motion for Continuance, ECF No. 42 , is DENIED as MOOT. (Text Only Entry)(Schultz, C) Modified on 6/22/2021 (Mena-Sanchez, L). (Entered: 06/17/2021) |
| 06/22/2021 | 45 | ORDER signed by Chief District Judge Kimberly J. Mueller on 6/18/2021 EXTENDING Reply brief deadline to 7/9/2021. The Motion 40 hearing is RESET for 7/16/2021 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. The 6/17/2021 44 Minute Order is VACATED. (Mena-Sanchez, L) (Entered: 06/22/2021) |
| 07/09/2021 | 46 | REPLY by Mark Baird, Richard Gallardo in support to 40 Second Motion for Preliminary Injunction. (Attachments: # 1 Declaration of Chuck Haggard (not signed), # 2 Declaration of Clayton Cramer)(Bellantoni, Amy) Modified on 7/13/2021 (Reader, L). (Entered: 07/09/2021) |
| 07/09/2021 | 47 | REPLY DECLARATION of Amy L. Bellantoni in support of 40 Motion for Preliminary Injunction,. (Attachments: # 1 Reply Declaration of Mark Baird, # 2 Reply Declaration of Richard Gallardo, # 3 Exhibit FOIL Response of California Department of Justice, # 4 Exhibit DOJ Concealed Carry Application Forms, # 5 Exhibit Testimony of Eugene Volokh, # 6 Exhibit Priorities for Research to Reduce the Threat of Firearm-Related Violence, # 7 Exhibit The Second Amendment and the Personal Right to Arms, Duke University School of Law, # 8 Exhibit U.S. News and World Report, Open Carry Deters Crime,)(Bellantoni, Amy) Modified on 7/13/2021 (Reader, L). (Entered: 07/09/2021) |
| 07/14/2021 | 48 | AMENDED DOCUMENT by Mark Baird, Richard Gallardo: Amended 47 Declaration,,. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 |

ER-1560

| | | |
|---|---|---|
| | | Exhibit 6, # [7](#) Exhibit 7, # [8](#) Exhibit 8(Bellantoni, Amy) (Entered: 07/14/2021) |
| 07/14/2021 | [49](#) | AMENDED DOCUMENT by Mark Baird, Richard Gallardo: Amended [46](#) Reply to Response to Motion,. (Attachments: # [1](#) Declaration Chuck Haggard, # [2](#) Declaration Clayton Cramer)(Bellantoni, Amy) (Entered: 07/14/2021) |
| 07/16/2021 | 50 | MINUTES for MOTION HEARING held via video conference before Chief District Judge Kimberly J. Mueller on 7/16/2021. Plaintiffs' Counsel, Amy Bellantoni, present. Plaintiff Mark Baird, present. Defendant's Counsel, R. Matthew Wise, present. After hearing oral argument as to Plaintiff's [40](#) Motion for Preliminary Injunction, the court SUBMITTED the matter. A written order will issue. Court Reporter: Jennifer Coulthard. (Text Only Entry) (York, M) (Entered: 07/16/2021) |
| 07/18/2021 | [51](#) | TRANSCRIPT REQUEST by Mark Baird, Richard Gallardo for proceedings held on 7/16/2021 before Judge Hon. Kimberly Mueller. Court Reporter Jennifer Coulthard. (Bellantoni, Amy) (Entered: 07/18/2021) |
| 07/27/2021 | [52](#) | TRANSCRIPT of Proceedings Motion for preliminary injunction held on 7/16/2021, before Chief District Judge Kimberly J. Mueller, filed by Jennifer Coulthard, Phone number 530-537-9312 E-mail jenrmrcrr2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 8/19/2021. Redacted Transcript Deadline set for 8/27/2021. Release of Transcript Restriction set for 10/25/2021. (Coulthard, Jennifer) (Entered: 07/27/2021) |
| 08/18/2021 | [53](#) | STIPULATION and PROPOSED ORDER to extend time for fact discovery by Xavier Becerra. (Wise, R.) Modified on 8/19/2021 (Reader, L). (Entered: 08/18/2021) |
| 10/28/2021 | [54](#) | STIPULATION and PROPOSED ORDER for an extension of expert discovery by Mark Baird, Richard Gallardo. (Bellantoni, Amy) (Entered: 10/28/2021) |
| 11/03/2021 | [55](#) | STIPULATION and ORDER signed by Magistrate Judge Allison Claire on 11/3/21 ORDERING that the October 29, 2021 expert discovery deadline is extended to November 30, 2021. (Kaminski, H) (Entered: 11/03/2021) |
| 11/19/2021 | [56](#) | MOTION FOR SUMMARY JUDGMENT by Rob Bonta. Motion Hearing set for 12/17/2021 at 10:00 AM in Courtroom 3 before Chief District Judge Kimberly J. Mueller. (Attachments: # [1](#) Memorandum , # [2](#) Request for Judicial Notice, # [3](#) Declaration of R. Matthew Wise, # [4](#) Statement of Undisputed Facts, # [5](#) Proof of Service )(Wise, R.) Modified on 11/22/2021 (Benson, A.). (Entered: 11/19/2021) |
| 12/01/2021 | [57](#) | STIPULATION and PROPOSED ORDER for to Stay the Proceedings re [56](#) Motion for Summary Judgment by Mark Baird, Richard Gallardo. (Bellantoni, Amy) (Entered: 12/01/2021) |
| 12/02/2021 | [58](#) | STIPULATION and ORDER signed by Chief District Judge Kimberly J. Mueller on 12/2/2021 STAYING this matter pending a decision from the United States Supreme Court in the matter of NYSRPA v. Bruen, Case No. 20-843. CASE STAYED. (Huang, H) (Entered: 12/02/2021) |
| 07/07/2022 | [59](#) | ORDER signed by Chief District Judge Kimberly J. Mueller on 7/7/22 LIFTING the stay and a Status Conference is SET for 7/28/2022 at 02:30 PM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. A joint status report is due seven days prior to the hearing. (Kastilahn, A) (Entered: 07/07/2022) |
| 07/08/2022 | [60](#) | NOTICE of APPEARANCE by Ryan Richard Davis on behalf of Rob Bonta. Attorney Davis, Ryan Richard added. (Attachments: # [1](#) Proof of Service)(Davis, Ryan) (Entered: |

# ER-1561

07/08/2022)

| | | |
|---|---|---|
| 07/08/2022 | 61 | MOTION to CONTINUE by Mark Baird, Richard Gallardo. Motion Hearing SET for 7/12/2022 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. (Attachments: # 1 Declaration of Amy L. Bellantoni)(Bellantoni, Amy) Modified on 7/13/2022 (Mena-Sanchez, L). (Entered: 07/08/2022) |
| 07/13/2022 | 62 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for Chief District Judge Kimberly J. Mueller on 7/13/2022: The Status Conference set for 7/28/2022 before Chief District Judge Kimberly J. Mueller will proceed by videoconference through the *Zoom* application. The Courtroom Deputy will provide counsel with the hearing access information no less than 24 hours before the hearing. Accordingly, Plaintiffs' Motion to Appear Remotely or, Alternatively, for a Continuance, ECF No. 61 , is DENIED as MOOT. (Text Only Entry) (Schultz, C) (Entered: 07/13/2022) |
| 07/21/2022 | 63 | SECOND AMENDED JOINT STATUS REPORT by Mark Baird, Richard Gallardo. (Bellantoni, Amy) Modified on 7/22/2022 (Mena-Sanchez, L). (Entered: 07/21/2022) |
| 07/28/2022 | 64 | MINUTES for STATUS CONFERENCE held (via videoconference) before Chief District Judge Kimberly J. Mueller on 7/28/2022, and FRCP 16 BENCH ORDER: Plaintiffs' Counsel, Amy Bellantoni, present. Plaintiff, Mark Baird, present. Defendant's Counsel, R. Matthew Wise and Ryan Davis, present. The court and counsel discussed case scheduling. After careful consideration of the parties' comments, the court ORDERED as follows: Plaintiffs shall file a Second Amended Complaint within sixty (60) days, and the parties shall file a Further Joint Status Report by 10/7/2023. The Further Joint Status Report must state the parties' positions on whether additional discovery is necessary, including expert discovery, and must propose a schedule for the resolution of this matter. SO ORDERED. Court Reporter: Thresha Spencer. (Text Only Entry) (Schultz, C) (Entered: 07/28/2022) |
| 08/08/2022 | 65 | THIRD MOTION for PRELIMINARY INJUNCTION by Mark Baird, Richard Gallardo. Motion Hearing set for 10/21/2022 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. (Attachments: # 1 Declaration Mark Baird, # 2 Declaration Richard Gallardo, # 3 Memorandum of Points and Authorities)(Bellantoni, Amy) (Entered: 08/08/2022) |
| 08/12/2022 | 66 | UNOPPOSED MOTION for EXTENSION of TIME to Respond to Third Motion for Preliminary Injunction by Rob Bonta. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Proof of Service)(Davis, Ryan) Modified on 8/12/2022 (Benson, A.). (Entered: 08/12/2022) |
| 08/16/2022 | 67 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for Chief District Judge Kimberly J. Mueller on 8/16/2022: Defendant's Motion for Administrative Relief Requesting to Extend Time to Respond to Plaintiffs' Third Motion for Preliminary Injunction, ECF No. 66 , is GRANTED. Accordingly, Defendant's Brief in Opposition to the Motion for a Preliminary Injunction is due 9/30/2022, and Plaintiffs' Reply in Support of their Motion is due 10/11/2022. (Text Only Entry) (Schultz, C) (Entered: 08/16/2022) |
| 09/27/2022 | 68 | SECOND AMENDED COMPLAINT against Rob Bonta by Mark Baird, Richard Gallardo.(Bellantoni, Amy) (Entered: 09/27/2022) |
| 09/30/2022 | 69 | OPPOSITION by Rob Bonta to 65 Motion for Preliminary Injunction,. (Attachments: # 1 Declaration, # 2 Declaration, # 3 Proof of Service)(Davis, Ryan) (Entered: 09/30/2022) |
| 10/03/2022 | 70 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for Chief District Judge Kimberly J. Mueller on 10/3/2022: On the court's own motion, the Motion Hearing as to Plaintiffs' Third Motion for Preliminary Injunction, ECF No. 65 , set for 10/21/2022 is RESET for 11/4/2022 at 10:00 AM in Courtroom 3 before Chief District Judge Kimberly J. Mueller. (Text Only Entry) (Schultz, C) (Entered: 10/03/2022) |

ER-1562

| | | |
|---|---|---|
| 10/03/2022 | 71 | STIPULATION and PROPOSED ORDER to Extend Time to File Answer by Rob Bonta. (Davis, Ryan) Modified on 10/4/2022 (Coll, A) (Entered 10/03/2022) |
| 10/07/2022 | 72 | THIRD AMENDED STATUS REPORT by Mark Baird, Richard Gallardo. (Bellantoni, Amy) (Entered: 10/07/2022) |
| 10/11/2022 | 73 | REPLY by Mark Baird, Richard Gallardo to response to 65 Motion for Preliminary Injunction. (Attachments: # 1 Declaration of Amy L. Bellantoni, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(Bellantoni, Amy) Modified on 10/17/2022 (Zignago, K ) (Entered: 10/11/2022) |
| 10/14/2022 | 74 | STIPULATION and ORDER signed by Chief District Judge Kimberly J. Mueller on 10/13/2022 EXTENDING the deadline for defendant to answer plaintiffs' first amended complaint to 11/1/2022. (Zignago, K.) (Entered: 10/14/2022) |
| 10/25/2022 | 75 | MINUTE ORDER issued by Courtroom Deputy C Schultz for Chief District Judge Kimberly J. Mueller on 10/25/2022: The Motion Hearing as to Plaintiffs' Third Motion for Preliminary Injunction, ECF No 65 , set for 11/4/2022 at 10 00 AM is ADVANCED on the same date for 9:00 AM in Courtroom 3 before Chief District Judge Kimberly J. Mueller (Text Only Entry) (Schultz, C) (Entered 10/25/2022) |
| 10/31/2022 | 76 | ANSWER by Rob Bonta.(Davis, Ryan) (Entered: 10/31/2022) |
| 11/04/2022 | 77 | MINUTES for MOTION HEARING and SCHEDULING CONFERENCE held before Chief District Judge Kimberly J Mueller on 11/4/2022, and FRCP 16 BENCH ORDER Plaintiffs' Counsel, Amy Bellantoni, present. Defendants' Counsel, Ryan Davis and R. Matthew Wise, present The court heard oral arguments on the pending Motion for a Preliminary Injunction, at ECF No. 65 , and discussed case scheduling. The court also confirmed that the Motion for a Preliminary Injunction, at ECF No 40 , and the Motion for Summary Judgment, at ECF No. 56 , are WITHDRAWN. After careful consideration of the parties' comments, the court ORDERED the following pre trial case schedule  fact discovery is reopened and shall be completed by 5/12/2023; expert disclosures shall be completed by 6/9/2023; rebuttal expert witnesses shall be exchanged by 7/14/2023; all expert discovery shall be completed by 8/4/2023; and all dispositive motions, except for motions for continuances, temporary restraining orders or other emergency applications, shall be heard by 9/22/2023. Motions regarding discovery shall be noticed before the Magistrate Judge, as provided by Local Rule 302(c) This case schedule will become final without further order of the court unless objections are filed within fourteen (14) calendar days of this order The schedule, once final, shall not be modified except by leave of court upon showing of good cause. All provisions of the court's standing scheduling order for Civil Cases filed concurrently herewith are incorporated therein SO ORDERED Court Reporter: Maryann Velanoti. (Text Only Entry) (Schultz, C) (Entered: 11/04/2022) |
| 11/04/2022 | 78 | STANDING SCHEDULING ORDER issued by Courtroom Deputy C. Schultz for Chief Judge Kimberly J. Mueller on 11/4/2022. (Schultz, C) (Entered: 11/04/2022) |
| 11/08/2022 | 79 | TRANSCRIPT REQUEST by Mark Baird, Richard Gallardo for proceedings held on 11/4/2022 before Judge Hon  Kimberly J  Mueller Court Reporter Maryann Valenoti (Bellantoni, Amy) (Entered: 11/08/2022) |
| 11/16/2022 | 80 | TRANSCRIPT of Plaintiffs' Third Motion for Preliminary Injunction held on November 4, 2022, before Chief District Judge Kimberly J. Mueller, filed by Court Reporter Maryann Valenoti, Phone number 916-930-4275 E-mail mvalenotirmrcrr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 12/8/2022. Redacted Transcript |

| | | Deadline set for 12/19/2022 Release of Transcript Restriction set for 2/16/2023 (Valenoti, Maryann) (Entered: 11/16/2022) |
|---|---|---|
| 11/18/2022 | 81 | OBJECTIONS by Plaintiffs Mark Baird, Richard Gallardo to 77 Order on Motion for Preliminary Injunction. (Attachments: # 1 Exhibit)(Bellantoni, Amy) Modified on 11/21/2022 (Rodriguez, E). (Entered: 11/18/2022) |
| 11/23/2022 | 82 | ORDER signed by Chief District Judge Kimberly J Mueller on 11/22/22 ORDERING that Objections 81 are overruled. (Kaminski, H) (Entered: 11/23/2022) |
| 12/08/2022 | 83 | ORDER signed by Chief District Judge Kimberly J. Mueller on 12/7/2022 DENYING 65 Third Motion for Preliminary Injunction and DISMISSING IN PART 68 Second Amended Complaint. The parties are ORDERED to SHOW CAUSE within 30 days why the court should not appoint its own expert witness to collect and survey evidence. (Perdue, C.) (Entered: 12/08/2022) |
| 01/03/2023 | 84 | NOTICE of INTERLOCUTORY APPEAL by Mark Baird, Richard Gallardo as to 83 Order,. (Filing fee $ 505, receipt number ACAEDC-10623589) (Bellantoni, Amy) (Entered  01/03/2023) |
| 01/04/2023 | 85 | APPEAL PROCESSED to Ninth Circuit re 84 Notice of Interlocutory Appeal filed by Mark Baird, Richard Gallardo. Notice of Appeal filed *1/3/2023*, Complaint filed *4/9/2019* and Appealed Order / Judgment filed *12/8/2022*. ** *Fee Status: Paid on 1/3/2023 in the amount of $505.00* (Attachments: # 1 Appeal Information) (Kastilahn, A) (Entered: 01/04/2023) |
| 01/06/2023 | 86 | USCA CASE NUMBER 23-15016 for 84 Notice of Interlocutory Appeal filed by Mark Baird, Richard Gallardo  (Licea Chavez, V) (Entered  01/06/2023) |
| 01/09/2023 | 87 | RESPONSE to 83 ORDER to SHOW CAUSE by Rob Bonta. (Davis, Ryan) (Entered: 01/09/2023) |
| 01/09/2023 | 88 | RESPONSE to 83 ORDER to SHOW CAUSE by Mark Baird, Richard Gallardo (Attachments: # 1 Exhibit Mark Smith article, # 2 Exhibit US v Bullock, government response, # 3 Exhibit US v Bullock, defendant response)(Bellantoni, Amy) Modified on 1/11/2023 (Benson, A.). (Entered: 01/09/2023) |
| 04/17/2023 | 89 | DESIGNATION of COUNSEL terminating Ryan R. Davis and adding Lara Haddad for Rob Bonta. Attorney Haddad, Lara added. (Haddad, Lara) Modified on 4/18/2023 (Benson, A.). (Entered: 04/17/2023) |
| 08/18/2023 | 90 | MOTION FOR SUMMARY JUDGMENT by Rob Bonta  Motion Hearing set for 9/22/2023 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller  (Attachments: # 1 Memorandum of Points and Authorities, # 2 Statement of Undisputed Fact, # 3 Appendix, # 4 Declaration of Lara Haddad, # 5 Declaration of Dr. Brennan Rivas, # 6 Declaration of Dr  Robert Spitzer, # 7 Declaration of Dr  Saul Cornell, # 8 Declaration of Chief Kim Raney, # 9 Proposed Judgment)(Haddad, Lara) (Entered: 08/18/2023) |
| 08/25/2023 | 91 | MOTION to CONTINUE hearing date on 90 Motion for Summary Judgment by Mark Baird, Richard Gallardo. Motion Hearing set for 9/22/2023 at 10:00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. (Attachments: # 1 Declaration of Amy L. Bellantoni)(Bellantoni, Amy) Modified on 8/28/2023 (Benson, A.). (Entered: 08/25/2023) |
| 08/28/2023 | 92 | MINUTE ORDER issued by Courtroom Deputy C. Schultz for Chief District Judge Kimberly J  Mueller on 8/28/2023  Plaintiffs' unopposed Motion to Continue, ECF No  91 , is GRANTED. Accordingly, the Motion Hearing as to Defendant's Motion for Summary Judgment, ECF No  90 , set for 9/22/2023 is RESET for 10/13/2023 at 10 00 AM in |

ER-1564

| | | |
|---|---|---|
| | | Courtroom 3 before Chief District Judge Kimberly J Mueller All remaining briefing deadlines shall run from the new hearing date as provided by Local Rule 230. (Text Only Entry) (Schultz, C) (Entered 08/28/2023) |
| 09/01/2023 | 93 | STIPULATION to Continue Hearing Date; Proposed Order by Rob Bonta. (Haddad, Lara) Modified on 9/12/2023 (Mena-Sanchez, L). (Entered: 09/01/2023) |
| 09/06/2023 | 94 | STIPULATION and ORDER signed by Chief District Judge Kimberly J Mueller on 09/06/23 CONTINUING the Defendant's motion for summary judgment and Plaintiff's counter motion for summary judgment to 11/3/2023 at 10 00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller and SETTING the following deadlines: Opposition to Defendant's Motion for Summary Judgment 9/29/23; Oppositions 10/13/23; Reply briefs: 10/23/23. (Licea Chavez, V) (Entered: 09/06/2023) |
| 09/07/2023 | 95 | USCA OPINION #23-15016 re 84 Notice of Interlocutory Appeal filed by Mark Baird, Richard Gallardo. REVERSED and, REMANDED. (Reader, L) (Entered: 09/11/2023) |
| 09/29/2023 | 96 | CROSS-MOTION FOR SUMMARY JUDGMENT by Mark Baird, Richard Gallardo. Motion Hearing set for 11/3/2023 at 10 00 AM in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller. (Attachments: # 1 Memorandum , # 2 Statement of Facts and Response to Defendant's Statement of Facts, # 3 Declaration of Claton Cramer, # 4 Declaration of Mark Baird, # 5 Declaration of Richard Gallardo, # 6 Declaration of Amy L Bellantoni, # 7 Exhibit Ex 1 Mark W Smith, # 8 Exhibit Virginia Statute, # 9 Exhibit David Kopel, # 10 Exhibit DOJ Survey, # 11 Exhibit Gallardo Dep Portions, # 12 Exhibit Order re Concealed Carry, # 13 Exhibit Haggard Dep)(Bellantoni, Amy) Modified on 10/4/2023 (Kastilahn, A). (Entered: 09/29/2023) |
| 09/29/2023 | 97 | USCA ORDER: ORDERING that the mandate issued on 9/29/23 is RECALLED as having issued prematurely in error. (Kastilahn, A) (Entered: 10/03/2023) |
| 10/13/2023 | 98 | OPPOSITION by Rob Bonta to 90 Motion for Summary Judgment, 96 Cross Motion for Summary Judgment (Attachments # 1 Responses to Objections and Separate Statement, # 2 Objections to Evidence, # 3 Request for Judicial Notice, # 4 Dr. Brennan Rivas Sur-rebuttal Report, # 5 Dr Robert J Spitzer Sur Rebuttal Report, # 6 Dr Saul Cornell Sur Rebuttal Report, # 7 Declaration of Lara Haddad)(Haddad, Lara) Modified on 10/16/2023 (Reader, L) (Entered 10/13/2023) |
| 10/17/2023 | 99 | MOTION to appear remotely for November 3, 2023 hearing by Mark Baird, Richard Gallardo. (Attachments: # 1 Declaration of Amy L. Bellantoni, # 2 Proposed Order) (Bellantoni, Amy) Modified on 10/27/2023 (Reader, L). (Entered: 10/17/2023) |
| 10/23/2023 | 100 | MEMORANDUM in Support of 96 Motion for Summary Judgment by Mark Baird, Richard Gallardo in SUPPORT (Attachments # 1 Statement )(Bellantoni, Amy) Modified on 10/24/2023 (Licea Chavez, V). (Entered: 10/23/2023) |
| 10/27/2023 | 101 | ORDER signed by Chief District Judge Kimberly J. Mueller on 10/26/2023 DENYING 99 Motion to appear remotely for 11/3/2023 hearing 96 . (Reader, L) (Entered: 10/27/2023) |
| 10/27/2023 | 102 | [DISREGARD SEE [ 103 ]WRIT of Execution ISSUED (Reader, L) Modified on 10/30/2023 (Reader, L). (Entered: 10/27/2023) |
| 10/30/2023 | 103 | CLERK'S NOTICE of DOCKET CORRECTION Please DISREGARD re 102 Writ Issued, entered in error. (Text Only) (Reader, L) (Entered: 10/30/2023) |
| 11/03/2023 | 104 | MINUTES for MOTION HEARING held before Chief District Judge Kimberly J. Mueller on 11/3/2023 Plaintiffs' Counsel, Amy Bellantoni, present Plaintiff, Mark Baird, present by telephone. Defendant's Counsel, Lara Haddad, present. After hearing the parties' oral argument as to the pending Cross Motions for Summary Judgment, ECF Nos |

ER-1565

| | | |
|---|---|---|
| | | 90 and 96 , the court took the matters under submission  Order to issue  Court Reporter Kimberly Bennett. (Text Only Entry) (Schultz, C) (Entered: 11/03/2023) |
| 11/09/2023 | 105 | UPDATED REQUEST for JUDICIAL NOTICE by Rob Bonta in re 98 Opposition to Motion. (Attachments: # 1 Appendix Volume 1 - Historical Laws, # 2 Appendix Volume 2 - Historical Laws, # 3 Appendix Volume 3 - Historical Laws, # 4 Appendix Volume 4 - Historical Laws, # 5 Appendix Volume 5 - Historical Laws, # 6 Appendix Volume 6 - Historical Laws, # 7 Appendix Volume 7 - Historical Laws)(Haddad, Lara) Modified on 11/14/2023 (Benson, A.). (Entered: 11/09/2023) |
| 11/13/2023 | 106 | OBJECTIONS by Plaintiffs Mark Baird, Richard Gallardo to 105 Updated Request for Judicial Notice  (Bellantoni, Amy) Modified on 11/14/2023 (Benson, A )  (Entered 11/13/2023) |
| 11/14/2023 | 107 | TRANSCRIPT REQUEST by Mark Baird, Richard Gallardo for proceedings held on 11/3/2023 before Judge Hon. Kimberly J. Mueller. Court Reporter Kimberly Bennett. (Bellantoni, Amy) (Entered: 11/14/2023) |
| 11/17/2023 | 108 | AMENDED TRANSCRIPT REQUEST re 107 by Mark Baird, Richard Gallardo for proceedings held on 11/3/2023 before Judge Hon. Kimberly J. Mueller. Court Reporter Kimberly Bennett  (Bellantoni, Amy) (Entered  11/17/2023) |
| 11/24/2023 | 109 | USCA MANDATE as to 84 Notice of Interlocutory Appeal filed by Mark Baird, Richard Gallardo. The decision of the District Court is REVERSED andREMANDED. (Licea Chavez, V) (Entered: 11/29/2023) |
| 12/22/2023 | 110 | NOTICE of APPEARANCE by Iram Hasan on behalf of Rob Bonta. Attorney Hasan, Iram added  (Hasan, Iram) (Entered  12/22/2023) |
| 12/29/2023 | 111 | ORDER signed by Chief District Judge Kimberly J. Mueller on 12/28/23 GRANTING California's 90 Motion for Summary Judgment and DENYING Baird and Gallardo's 96 Motion for Summary Judgment. Because California is entitled to judgment as a matter of law, Baird and Gallardo's 65 Motion for a Preliminary Injunction is DENIED AS MOOT. CASE CLOSED (Benson, A.) (Entered: 12/29/2023) |
| 12/29/2023 | 112 | JUDGMENT dated *12/29/23* pursuant to order signed by Chief District Judge Kimberly J  Mueller on 12/28/23  (Benson, A ) (Entered  12/29/2023) |
| 01/24/2024 | 113 | NOTICE of APPEAL by Mark Baird, Richard Gallardo as to 112 Judgment, 111 Order. (Filing fee $ 605, receipt number ACAEDC-11308967) (Bellantoni, Amy) Modified on 1/25/2024 (Mena-Sanchez, L). (Entered: 01/24/2024) |
| 01/25/2024 | 114 | APPEAL PROCESSED to Ninth Circuit re 113 Notice of Appeal filed by Mark Baird, Richard Gallardo  Notice of Appeal filed *1/24/2024*, Complaint filed *9/27/2022* and Appealed Order / Judgment filed *12/29/2023*. Court Reporter: *Kimberly Bennett*. *Fee Status  Paid on 1/24/2024 in the amount of $605 00* (Attachments  # 1 Appeal Information) (Mena-Sanchez, L) (Entered: 01/25/2024) |
| 02/05/2024 | 115 | USCA CASE NUMBER 24-565 for 113 Notice of Appeal filed by Mark Baird, Richard Gallardo. (Licea Chavez, V) (Entered: 02/05/2024) |
| 02/07/2024 | 116 | USCA ORDER DISMISSING Appeal as to appellant Richard Gallargo ony re 113 Notice of Appeal filed by Mark Baird, Richard Gallardo  (Mena Sanchez, L) (Entered 02/09/2024) |
| 02/21/2024 | 117 | TRANSCRIPT of Proceedings held on 11/03/2023, before Chief District Judge Kimberly J. Mueller, filed by Court Reporter Kimberly Bennett, Phone number 916-741-3475 E-mail reporter.bennett@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of |

ER-1566

Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 3/14/2024. Redacted Transcript Deadline set for 3/25/2024. Release of Transcript Restriction set for 5/23/2024. (Bennett, K) (Entered: 02/21/2024)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/11/2024 15:45:09 | | | |
| **PACER Login:** | Amybellantoni | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-00617-KJM-AC |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |