No. 24-565

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARK BAIRD,
*Plaintiff-Appellant*,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,
*Defendant-Appellee*.

**On Appeal from United States District Court for the
Eastern District of California** No. 2:19-cv-00617-KJM-AC
The Honorable Kimberly J. Mueller

———————————

**RESPONSE TO THE STATE'S
PETITION FOR REHEARING**

———————————

Amy L. Bellantoni
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
*abell@bellantoni-law.com*

*Attorneys for Plaintiff-Appellant*

February 6, 2026

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. i

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 5

I. THE PANEL PROPERLY APPLIED *BRUEN*'S TEXT, HISTORY AND TRADITION ANALYSIS ................................................................................. 5

    A. No Mode-of-Carry Distinction Prior to the Mid-1800s ............................. 6

    B. Historical State Court Rejection of Open Carry Restrictions ...................... 8

II. THE PANEL ACCORDS WITH SUPREME COURT PRECEDENT ................ 9

III. THE PANEL PROPERLY RESOLVED THIS CASE AS AN AS-APPLIED CHALLENGE TO A DEFINED CATEGORY OF PROTECTED CONDUCT .......................................................................................... 10

    A. California's Urban Carry Ban Cannot Be Sustained Under *Bruen*, Whether Viewed Facially or As-Applied. ...................................................... 10

    B. The Panel's Reasoning Comports With This Court's Precedent in As-Applied, Categorical Challenges ................................................................ 11

    C. The Panel's Reasoning Comports With This Court's En Banc Decision in *Peruta*. ......................................................................................... 13

IV. *FREY* RESTS ON A MISAPPLICATION OF *BRUEN* ................................... 14

    A. *Bruen* Excuses The Absence of An Historical Twin, But Not The Adoption of Its Opposite. .......................................................................... 14

    B. Open Carry Is "The Norm" In America ...................................................... 16

V. SUPREME COURT PRECEDENT FORECLOSES INTEREST BALANCING AND PUBLIC SAFETY CONCERNS ............................................................... 16

VI. SEVERABILITY IS NEITHER IMPLICATED NOR PRESERVED ............. 17

CONCLUSION ............................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aymette v. State*,
   21 Tenn. 154 (1840) ................................................................. 8

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) .............................................. 6, 8, 15, 17

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) ................................................. 12

*Frey v. City of New York*,
   157 F.4th 118 (2d. Cir. 2025) ................................................. 4

*Hoffman v. Bonta*,
   789 F. Supp. 3d 995 (S.D. Cal. 2025) ............................... 12, 18

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013) ........................................ 12, 13

*Junior Sports Mags. Inc. v. Bonta*,
   No. 24-4050, 2025 WL 1863184 (9th Cir. July 7, 2025) .................................. 19

*Lovell v. City of Griffin, Ga.*,
   303 U.S. 444 (1938) ................................................................ 9

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ........................................................... 4, 13

*Murdock v. Com. of Pennsylvania*,
   319 U.S. 105 (1943) ................................................................ 9

*Muscarello v. United States*,
   524 U.S. 125 (1998) ................................................................ 6

*New York State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ............................................................ Passim

20

*Nunn v. State*,
   1 Ga. 243 (1846) ................................................................................. 8

*Peruta v. Cnty. of San Diego*,
   824 F.3d 919 (9th Cir. 2016) ............................................... 3, 13, 14

*Project Veritas v. Schmidt*,
   125 F.4th 929 (9th Cir.) ..........................................................11, 12

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) .......................................................... 19

*Simpson v. State*,
   13 Tenn. 356 (1833) ........................................................................... 7

*State v. Chandler*,
   5 La. Ann. (1850) ........................................................................ 7, 8

*State v. Huntly*,
   25 N.C. 418 (1843) ............................................................................ 7

*State vs. Reid*,
   1 Ala. Rep. 612 (1840) ...................................................................... 8

*United States v. Rahimi*,
   602 U.S. 691 (2024) ............................................................ 5, 8, 11, 15

*United States v. Scott*,
   450 F.3d 863 (9th Cir. 2006) ............................................................ 16

*United States v. Sprague*,
   282 U.S. 716 (1931) .......................................................................... 17

*United States v. VanDyke*,
   157 F.4th 1082 (9th Cir. 2025) ......................................................... 13

**Statutes**

28 U.S.C. § 922(g)(8)(C)(ii) ...................................................................... 13
California Penal Code § 25850 ................................................................. 2, 3
California Penal Code § 26350 ................................................................. 2, 3
California Penal Code § 26150(b)(2)......................................................... 12
California Penal Code § 26155(b)(2)......................................................... 12

## INTRODUCTION

This case presents a narrow but significant question: whether California may impose criminal penalties on the peaceable open carriage of handguns by law abiding adults where the State cannot identify any historical tradition authorizing such a prohibition. Opn. 34-35.

The State's petition rests on a fundamental mischaracterization of both the statutes at issue and the panel's holding. This case does not challenge California's concealed carry licensing regime. It concerns a categorical statutory ban on the peaceable open carriage of handguns across California.

The panel correctly rejected the State's effort to reframe that prohibition as a mere licensing restriction, comparing California's "licensing" characterization to "Orwellian doublespeak." Opn. 33. Where a statute criminalizes a mode of bearing arms that is historically unregulated, the constitutional inquiry is governed by *Bruen*'s historical analysis - not by cases evaluating licensing schemes.

The relief affirmed by the panel is correspondingly narrow. The panel decision holds only that California may not enforce Penal Code §§ 25850 and 26350 as applied to peaceable open carry in urban counties. It leaves the State's concealed carry licensing regime, sensitive places restrictions, and other firearms regulations untouched. Because the panel resolved a straightforward application of *Bruen* to a de jure ban on protected conduct, the State identifies no basis for rehearing en banc.

1

The panel correctly applied *New York State v. Bruen* and held that California Penal Code §§ 25850 and 26350 are unconstitutional as applied to open carry. Opn. 34-39. Once the panel determined that Baird's conduct falls within the plain text, the burden shifted to the State to demonstrate an historical analogue supporting its criminalization of open carry. Opn. 25-34. California failed to meet its burden. Opn. 26.

The State seeks rehearing by reframing this case as one involving facial overbreadth, severability, or alternative channels of carry. Opn. 75-88 (N.R. Smith, J. dissenting). None of these doctrines support rehearing where, as here, the challenged prohibition lacks historical support and is unconstitutional as applied to the protected conduct. Opn. 39-42; (as-applied posture); Opn. 42-47 (facial standard and overbreadth discussion).

This Court has long recognized that a statute may be unconstitutional as applied to a defined category of protected conduct even where the statute applies identically to all persons. Opn. 40-42. Where a statute criminalizes constitutionally protected conduct, and where history supplies no permissible application of the statute to that conduct, ordinary concerns about overbreadth, severability, and narrowing construction do not arise. Regardless of whether Baird has a facial challenge, an as-applied challenge, or both, the analysis and conclusion remain the

2

same. Opn. 42. Penal Law §§ 25850 and 26350 are unconstitutional as applied to open carry in urban counties, in every instance. *Id.*

The panel decision comports with en banc precedent. In *Peruta v. Cnty. of San Diego,* 824 F.3d 919, 936 (9th Cir. 2016), the en banc Court opined that if the Second Amendment protects public carry, "the right historically understood was the right to carry firearms openly," while holding that concealed carry is subject to regulation. *Id. Bruen* has since resolved the antecedent question, confirming that the Second Amendment encompasses a right to carry firearms in public and that regulations must be justified by historical tradition. Opn. 34. The panel's decision follows directly from that framework.

The panel's opinion aligns with the historical understanding of public carry. Open carry "has been the default manner of lawful carry for firearms" throughout American history and "remains the norm across the country," with more than 30 states generally allowing open carry today, including states with substantial urban populations. Opn. 6-7 (collecting jurisdictions).

California stands alone within the Ninth Circuit in imposing a criminal ban on open carry, which applies to approximately 95% of Californians. Opn. 9, 33-34. By contrast, seven of the nine states in this Circuit recognize constitutional (unlicensed) carry. That alignment does not substitute for the historical inquiry required by *Bruen*, but it underscores the panel's conclusion that California's ban departs from

America's historical traditions and the prevailing legal framework within this Circuit.

California's public safety pleas do not alter the analysis. State Br. 1-3, 15-18. The Supreme Court made clear that "the right to keep and bear arms…is not the only right that has controversial public safety implications," and such concerns cannot displace the Constitution's text and history. *Bruen*, 597 U.S. at 17 n.3 (quoting, *McDonald v. City of Chicago*, 561 U.S. 742, 783 (2010) (plurality opinion). Asserted interests in preventing "fear, panic, and chaos", State Br. 3, are not part of the constitutional calculus.

California relies heavily on the Second Circuit decision in *Frey v. City of New York*, which upheld an open carry prohibition on the theory that the Second Amendment protects public carry only at a high level of generality, without regard for the historically protected modes of exercise. 157 F.4th 118, 138 (2025).

The panel correctly declined to follow that approach. As the panel explained, *Bruen* requires courts to assess whether a challenged regulation is consistent with this Nation's historical tradition - not substitute abstract "public carry" for the specific conduct the Constitution was understood to protect. Opn. 24-25. Because history treats open carry as a protected baseline rather than a dispensable alternative, *Frey* does not warrant rehearing en banc.

This case does not require the Court to decide whether the Second Amendment protects an unqualified right to carry firearms in all ways, at all times, or in all places. It asks only whether California may prohibit an historically protected mode of public carry. Because California has identified no American tradition of criminalizing the peaceable open carriage of handguns, there is no basis to disturb the panel's conclusion that California's urban open carry ban is unconstitutional. Opn. 34.

## ARGUMENT

### I. THE PANEL PROPERLY APPLIED *BRUEN'S* TEXT, HISTORY AND TRADITION ANALYSIS

The Second Amendment's scope is not "trapped in amber" but neither is it malleable to the point of reversal. History shows that bearing arms openly was an unregulated practice, while certain states later prohibited concealed carry. California's practice of banning open carry and 'allowing' licensed concealed carry does not adapt the right to modern conditions – it inverts it. California's claim that "times have changed" to justify prohibiting open carry while allowing concealed carry inverts tradition. [1]

---

[1] By California's reasoning, it would be permissible to ban muskets and sabers simply because modern pistols - once prohibited - are now in common use, a result plainly at odds with the Amendment's text and historical understanding. *See, e.g., Rahimi*, 602 U.S. 691-92.

5

Reasoning by historical analogy applies only to "modern regulations that were unimaginable at the founding" *Bruen*, 597 U.S. at 28. This case requires none. Antebellum courts repeatedly held that open carry lay at the core of the right to bear arms, upholding restrictions on concealed carry and protecting open carry from regulation. *Id.* 42-45. The panel correctly concluded that no Founding Era statute criminalized open carry. Opn. 19-23.

**A. No Mode-of-Carry Distinction Prior to the Mid-1800s**

Historically, manner of carry regulations targeted criminal conduct – affray, brandishing, menacing, terrorizing the public, - not an individual's mode of carrying weapons.[2] *Heller* confirms as much when concluding that at "the time of the founding, as now, to bear meant to carry: wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. 570, 584 quoting, *Muscarello v. United States*, 524 U.S. 125, 143 (1998); *id.* at 586.

The mere carriage of a firearm for a lawful purpose "per se constitutes no offence. Only carrying for a wicked purpose with a mischievous result constitutes a

---

[2] *Bruen*'s discussion of the state court cases was not a deep-dive into the history of laws distinguishing concealed carry and open carry. *Bruen* addressed what was functionally a total ban on all forms of public carry. Opn. 51 n.25.

6

crime." *Bruen*, 597 U.S. at 511-52 (cleaned up) quoting, *State v. Huntly*, 25 N.C. 418, 422–23 (1843) (cleaned up); *Simpson v. State*, 13 Tenn. 356, 360 (1833).

During the mid-1800s, a handful of state courts addressed statutes banning concealable weapons (only 2 states were part of the original 14 when the Bill of Rights was enacted, Georgia and North Carolina).

Rather than punish criminal conduct, as the common law and surety statutes did, state legislatures engaged in public policy, interest-balancing to restrict law-abiding people from choosing the manner in which they protected themselves with arms. *See, e.g., State v. Chandler*, 5 La. Ann. at 489–90 (1850) (banning concealed carry "became absolutely necessary to counteract a vicious state of society, growing out of the habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed upon unsuspecting persons.").

Those states uniformly declared that open carry was the right to bear arms protected by the Constitution, rejecting any protection for concealed weapons.

The open-concealed carry distinction reflects a modern regulatory development, not the public understanding of the right to "bear arms" at the Founding[3] decades prior. Still, the panel's holding aligns with the "principles that

---

[3] If it were the public understanding at the Founding that concealing weapons was an inherently criminal act, there would be evidence of the distinction during the constitutional debates, if not limiting language in the plain text. The absence of any distinction in the text forecloses the idea that the Framers intended concealed carry to fall outside of the scope of constitutional protection.

underpin our regulatory tradition," *Rahimi*, 602 U.S. 692, banning open carry violates the Second Amendment.

**B. Historical State Court Rejection of Open Carry Restrictions**

California's laws are not "relevantly similar to laws that our tradition is understood to permit." *Rahimi*, 602 U.S. at 692 quoting, *Bruen*, 597 U.S. at 29. Opn. 19-25. Several state courts in the mid-1800s opined that open carry was essential to protect the natural and common law right of self-defense, but concealed carry was entitled to no constitutional protection. Opn. 20. *See, State vs. Mitchell,* 3 Black. Rep. 229 (1833) (constitutional to ban concealed carry); *accord, State vs. Reid*, (1 Ala. Rep. 612 (1840); *Aymette v. State*, 21 Tenn. 154, 161 (1840); *Nunn v. State*, 1 Ga. 243, 251 (1846); *State v. Chandler*, 5 La. Ann. 489, 489–90 (1850); *but see, Bliss v. Commonwealth*, 2 Littell Ky.R 90 (acknowledging that concealed carry and open carry were the norm when the Constitution was ratified).

These state cases evince a marked distinction in the mode of bearing arms – to the detriment of concealment only. The panel properly concluded that "open carry and concealed carry are not fungible: allowing licensed concealed carry does not automatically authorize an open-carry ban." Opn. 46. *Heller* also foreclosed 'alternatives' theories. 554 U.S. at 629 ('availability' of long guns no excuse for handgun ban).

8

## II. THE PANEL ACCORDS WITH SUPREME COURT PRECEDENT

At the Founding, "everyone started out with robust carrying rights." *Bruen*, 597 U.S. at 57, *id.* (it was "*presumed* that individuals had a right to public carry) (emphasis supplied).

In California everyone starts out with *no* carrying rights. It is generally a crime to carry a firearm in public without a license. While concealed carry licenses are available, open carry is banned in 95% of the state and, in rural areas, the practice is subject to an illusory licensing statute (Lee, J. concurring). Open carry licenses (which have never been issued), Opn. 55, are only valid within the county of issuance. Even so, it is repugnant to the Constitution to require a license or fee to exercise a Natural right. *See, Lovell v. City of Griffin, Ga.*, 303 U.S. 444, 451 (1938); *Murdock v. Com. of Pennsylvania*, 319 U.S. 105, 115 (1943).

Reviewing the state cases, the Supreme Court concluded, "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Bruen*, 597 U.S. at 59.

The panel decision aligns with *Bruen* and should stand. Even if this Court were to adopt the State's position and turn history on its head, the required outcome would be *unregulated* concealed carry - not a ban on open carry coupled with continued regulation of concealed carry. California cannot eliminate one mode of carrying handguns while subjugating the free exercise of the other.

9

### III. THE PANEL PROPERLY RESOLVED THIS CASE AS AN AS-APPLIED CHALLENGE TO A DEFINED CATEGORY OF PROTECTED CONDUCT

This Circuit has long recognized that a statute may be unconstitutional as applied to a defined category of protected conduct even where the statute applies identically to all persons. Opn. 40-42. Where a statute criminalizes constitutionally protected conduct, and where history supplies no permissible application of the statute to that conduct, ordinary concerns about overbreadth, severability, and narrowing construction do not arise. Regardless of whether Baird has a facial challenge, an as-applied challenge, or both, the analysis and conclusions remain the same. Opn. 42.

#### A. California's Urban Carry Ban Cannot Be Sustained Under *Bruen*, Whether Viewed Facially or As-Applied

The panel applied the same analytical framework and reached the same conclusions with respect to both Baird's facial and as-applied challenges. Opn. 42. Because California's urban open carry ban applies equally to all those it covers, analyzing Baird's as-applied challenge (that California cannot constitutionally deny him from carrying openly throughout the state-or at least the 95% of the state)…is no different than for Baird's facial challenge, which merely expands the argument to contend that, for the same reasons, California cannot constitutionally ban others from carrying openly throughout the state. *Id. Bruen*'s two-step framework applies to both, and both challenges succeed because Second Amendment challenges,

10

whether facial or as-applied, require a determination of whether the challenged law fits within the plain text of the Second Amendment and this Nation's historical tradition. Opn. 42 citing, *Rahimi*, 602 U.S. at 693-700; *Bruen*, 597 U.S. at 17.

The panel's analysis followed the example set by the Supreme Court in *Heller* and *Bruen* by evaluating the constitutionality of the law on its face - and not by considering Baird's particular personal circumstances. Opn. 43-44. And *Rahimi* conducted both. 602 U.S. at 690 ("As applied to the facts of this case, Section 922(g)(8) fits comfortably within this tradition."), *id.* at 693 ("here the provision is constitutional as applied to the facts of Rahimi's own case"), 699 (§ "922(g)(8)'s restriction was temporary as applied to Rahimi").

## B. The Panel's Reasoning Comports With This Court's Precedent in As-Applied, Categorical Challenges

Critically, the panel relied on Ninth Circuit doctrine recognizing that as-applied challenges may address a plaintiff's proposed conduct even when a statute applies generally. Opn. 40-42. Any distinction between facial and as-applied posture here is ultimately immaterial because the ban applies categorically to the conduct Baird seeks to undertake: open carry. Opn. 39-40.

*Project Veritas v. Schmidt*, 125 F.4th 929 (9th Cir.) (en banc) supports categorical as-applied challenges. There, the as-applied challenge did not hinge on how local officials had interpreted and applied the challenged statute to plaintiff's conduct, but rather to the plaintiff's proposed conduct - various actions the plaintiff

11

wanted to undertake that were barred by a statute that prohibited unannounced recordings of oral conversations. Opn. 40-41 quoting *Id.* at 937, 940 (cleaned up).

The panel decision fits squarely within the logic of *Project Veritas*, rejecting a "plaintiff-specific only" conception of as-applied challenges and instead treating as-applied relief as properly targeting a statute's application to a defined category of protected conduct, even when that category includes many arms-bearers.

The nature of Baird's challenge flows from the categorical criminalization of open carry, not from discretionary enforcement or unique facts. The statute in *Project Veritas* directly and categorically regulated constitutionally protected conduct– as do the laws here. Because the defect lies in the statutes' application to a category of protected conduct, the challenge is properly as-applied even though relief would necessarily extend to others similarly situated. The remedy sought therefore is not an invalidation of §§ 25850 and 26350 in their entirety, but only as applied to the peaceable open carriage of firearms.

The distinction between facial and as-applied challenges "matters primarily as to the remedy…[t]he substantive legal tests…are 'invariant.'" *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013) (cleaned up). *See also, Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (finding as-applied challenge to a generally applicable speech ban to be valid) Opn. 42; *Hoffman v. Bonta*, 789 F. Supp. 3d 995, 1002, 1004 (S.D. Cal. 2025) (holding California Penal Code §§ 26150(b)(2),

12

26155(b)(2) as applied to nonresidents seeking to apply for a concealed carry license violate the Second Amendment).

*United States v. Salerno* compels no different result. *Salerno* governs facial challenges seeking to invalidate a statute in all of its applications; it does not bar as-applied relief limited to a statute's operation on a defined category of protected conduct. Because Baird challenges §§ 25850 and 26350 only as applied to open carry, injunctive relief will not include situations in which the statute may not be unconstitutional. *Isaacson,* 716 F.3d at 1231. *Wolford v. Lopez* confirms that courts need not treat *Salerno* as an absolute bar where a law broadly burdens protected conduct under *Bruen*. Opn. 45. *United States v. VanDyke*, 157 F.4th 1082, 1083 (9th Cir. 2025) considered the defendant's as-applied Second Amendment challenge and held that 28 U.S.C. § 922(g)(8)(C)(ii) "is constitutional as applied to VanDyke."

The Second Amendment "is not a second-class right subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, at 70-71 quoting *McDonald*, 561 U.S. at 780. The unconstitutional application of a law to a defined category of protected conduct is applicable in the First Amendment and pro-abortion contexts, there is no legal bar to its application here.

**C. The Panel's Reasoning Comports With This Court's En Banc Decision in *Peruta***

In its pre-*Bruen* consideration of California's "good cause" requirement for concealed carry licenses, this Court's en banc decision in *Peruta v. San Diego*

recognized the historical primacy of open carry. The Court explained that the historical record "overwhelmingly shows" that the Second Amendment does not protect a general right to carry weapons concealed in public, while observing that, if the Constitution protects public carry at all, "it is only a right to carry a firearm openly." 824 F.3d 919, 942 (9th Cir. 2016).

*Peruta* declined to decide whether a right to public carry exists, but made it clear that if the Second Amendment does protect public carry, the remedy must be to protect the historically protected mode of exercising that right – open carry. *Id.*

Consistent with *Bruen*, the panel properly concluded that California's criminalization of open carry conflicts with the historical record. Opn. 34.

## IV. *FREY* RESTS ON A MISAPPLICATION OF *BRUEN*

### A. *Bruen* Excuses The Absence of An Historical Twin, But Not The Adoption of Its Opposite

Embracing the Second Circuit's approach in *Frey* would deepen this Circuit's divergence from the Second Amendment and controlling Supreme Court precedent. *Bruen*, 597 U.S. at 99 (observing California and New York are among 6 outlier jurisdictions).

The Second Circuit confessed, "…New York law is the converse of many of these historical laws: it eliminates open carry while permitting concealed carry" [*Id.* at 139], but then proceeded to justify subverting historical precedent and flout *Bruen*.

14

When history reveals laws on point, a "nuanced approach" is inappropriate. *Bruen*, 597 U.S. at 27. *Bruen* envisioned that the nuanced approach would be the exception, not the rule, Opn. 32, only employed in "cases implicating unprecedented societal concerns or dramatic technological changes…" *Id.* at 28; *Rahimi,* 602 U.S. at 692.

Neither exist here. This case involves a straightforward historical inquiry, just like *Heller* and *Bruen* where the laws "address a perceived societal problem—firearm violence in densely populated communities—and [the government] employed a regulation…that the Founders themselves could have adopted to confront that problem" -- but did not. *Bruen*, 597 U.S. at 27; *Heller*, 554 U.S. at 628.

Under *Bruen*, Second Amendment cases are "straightforward" when the challenged firearm regulations seek to address "general societal problem[s]" that have persisted since the Founding, Opn. 26 quoting, *Bruen*, 597 U.S. at 26, as is the case here.

The 19th Century state courts squarely confronted the distinction between open and concealed carry, leaving no gap to be filled by analogy. The consistent result was that open carry is the protected right to bear arms. The panel decision aligns with the principles laid down by the Supreme Court's Second Amendment jurisprudence – historical consistency.

15

## B. Open Carry Is "The Norm" In America

The panel's conclusion fits comfortably with the majority of states nationwide and the states within this Circuit. California is the only state in this Circuit to ban open carry. Opn. 9. For most of American history, open carry has been the default manner of lawful carry for firearms. Opn. 6-7. It remains the norm across the country-more than thirty states generally allow open carry to this day, including states with significant urban populations. *Id.* (listing states), *Id.* 23 n.15 (Florida). Several of our Nation's largest cities and states have recently returned to unlicensed open carry by explicitly authorizing it, including Texas, Kansas, and Oklahoma. Opn. 6-7. And for the first 162 years of its history open carry was a largely unremarkable part of daily life in California. Opn. 7.

An en banc decision of the Ninth Circuit does not stop at California's border. Upholding California's open carry ban would not only be "contrary to history, practice and commonsense," it also "carries monumental implications" for the Second Amendment rights of the citizens of every state in this Circuit. *See, e.g., United States v. Scott*, 450 F.3d 863, 875 (9th Cir. 2006) (Bybee, J. dissenting).

## V. SUPREME COURT PRECEDENT FORECLOSES INTEREST BALANCING AND PUBLIC SAFETY CONCERNS

The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical

16

meaning; where the intention in clear there is no room for construction and no excuse for interpolation or addition. *United States v. Sprague*, 282 U.S. 716, 731–32 (1931).

The Supreme Court categorically rejected interest balancing; public safety considerations cannot justify firearms restrictions absent a longstanding historical tradition supporting the regulation. Opn. 37, 48-49. *Heller*, *McDonald*, and *Bruen* prescribed historical analysis, not policy reasoning, recognizing that policy concerns including "the problem of handgun violence in this country" cannot trump "the enshrinement of constitutional rights," Opn. 48-49, because the Second Amendment "is not the only right that has controversial public safety implications." *Bruen*, 597 U.S. at 17 n.3 (citations omitted). California's (conjectural) concerns cannot displace the Constitution's text and history. The Second Amendment may be altered only through the Article V amendment process, not judicial or legislative action, because a "constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Heller*, 554 U.S. at 634.

The panel properly declined to engage in interest balancing.

## VI. SEVERABILITY IS NEITHER IMPLICATED NOR PRESERVED

Severability is not applicable here because the principle does not apply to as-applied categorical relief. Severability asks whether unconstitutional statutory test can be severed from constitutional text – an issue not presented in the panel's

17

decision. Severability is not a fallback mechanism to narrow relief where a court has already resolved the case through as-applied adjudication, as is the case here.

The panel decision does not invalidate statutory text, or purport to "fix" California's regulatory scheme. The panel simply held that, as applied to peaceable open carry, §§ 25850 and 26350 violate the Second Amendment based on an historical analysis of American traditions.

By contrast, treating severability as relevant would require the Court to enforce §§ 25850 and 26350 as though they contained distinctions and fallback mechanisms the Legislature did not enact. Courts may enjoin unconstitutional applications of state statutes; they may not reconstruct regulatory schemes through judicial narrowing. Opn. 89-92. Because the panel granted as-applied relief and left the statutes otherwise intact, severability is simply not implicated.[4] *See e.g., Hoffman*, 789 F. Supp. at 1004 (California's licensing regime is unconstitutional as applied to nonresidents).

Sua sponte severability in an as-applied challenge is inconsistent with this Circuit's precedent. Where a court holds that a statute is unconstitutional as applied, the appropriate remedy is to disapprove, or disallow, *only the unconstitutional application of the statute*, thereby preserving any residuary constitutional

---

[4] Baird challenges criminal statute §§ 25850 and 26350, not licensing statutes §§ 26150(b)(2) and 26155(b)(2) referenced by the dissent. Opn. 89-90. Severing the licensing statutes would have no effect on the penalties for unlicensed open carry.

18

application with regard to the other provisions of the statutes. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1330 (9th Cir. 2015) (emphasis supplied) (cleaned up) (cite omitted).

That said, consideration of severing the statute, even if supported by the panel decision, cannot be entertained. As the same panel observed in *Junior Sports Mags. Inc. v. Bonta*, No. 24-4050, 2025 WL 1863184 (9th Cir. July 7, 2025), "as a threshold matter" "we need not even consider California's argument that subdivision (b) should be severed from the rest of the statute because this argument has been waived." *Id.* at *2. California waived consideration of severability, which cannot be considered now.

## CONCLUSION

The panel decision should not be disturbed.

February 6, 2026

Respectfully submitted,

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff-Appellant*

*Amy L. Bellantoni*
Amy L. Bellantoni
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

19

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 24-565

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P.

32(a)(4)-(6) and **contains the following number of words:** | 4,200 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Amy L. Bellantoni     **Date** | 2/6/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**          *Rev. 12/01/24*