No. 24-565

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

MARK BAIRD,

*Plaintiff-Appellant*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE
OF CALIFORNIA,

*Defendant-Appellee*.

————————————

**On Appeal from the United States District Court
for the Eastern District of California**
No. 2:19-cv-00617-KJM-AC
The Honorable Kimberly J. Mueller, Judge

————————————

**RESPONSE TO APPELLANT'S PETITION FOR
REHEARING EN BANC**

————————————

| | |
|---|---|
| ROB BONTA | AARON D. PENNEKAMP |
| *Attorney General of California* | *Deputy Solicitor General* |
| SAMUEL T. HARBOURT | R. MATTHEW WISE |
| *Solicitor General* | LARA HADDAD |
| HELEN H. HONG | *Supervising Deputy Attorneys General* |
| *Principal Deputy Solicitor General* | IRAM HASAN |
| THOMAS S. PATTERSON | *Deputy Attorney General* |
| *Senior Assistant Attorney General* | |

CALIFORNIA DEPARTMENT OF JUSTICE
1300 I Street, Suite 125
Sacramento, CA 95814
(916) 210-6661
Aaron.Pennekamp@doj.ca.gov
*Attorneys for Defendant-Appellee*

February 10, 2026

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................... 1

Statement ....................................................................................... 3

       A.     California's restrictions on unlicensed open carry ......... 3

       B.     Procedural history ........................................................ 4

Argument ....................................................................................... 7

    I.     The parties now agree that this case warrants rehearing en banc .................................................................................. 7

    II.    Baird's petition highlights the panel's departure from the principle of party presentation and underscores the need for en banc rehearing ............................................................ 10

Conclusion .................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

CASES

*B&L Prods., Inc. v. Newsom*
104 F.4th 108 (9th Cir. 2024) ...................................................................11

*Clark v. Sweeney*
607 U.S. __, 2025 WL 3260170 (U.S. Nov. 24, 2025) .................................2, 11

*District of Columbia v. Heller*
554 U.S. 570 (2008)...................................................................................12

*Doe v. Bonta*
101 F.4th 633 (9th Cir. 2024) ...................................................................11

*Doe v. Reed*
561 U.S. 186 (2010).....................................................................................8

*Duncan v. Bonta*
131 F.4th 1019 (9th Cir. 2025) ...................................................................9

*Duncan v. Bonta*
133 F.4th 852 (9th Cir. 2025) .....................................................................1

*Frey v. City of New York*
157 F.4th 118 (2d Cir. 2025) .......................................................................8

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*
341 F.3d 987 (9th Cir. 2003) ....................................................................3, 9

*McDonald v. City of Chicago*
561 U.S. 742 (2010)...................................................................................12

*New York State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022).................................................................1, 2, 4, 6, 10, 13

*Olson v. California*
104 F.4th 66 (9th Cir. 2024) .....................................................................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Peruta v. County of San Diego*
    824 F.3d 919 (9th Cir. 2016) ...............................................................13, 14

*United States v. Rahimi*
    602 U.S. 680 (2024).................................................................................1

*United States v. Salerno*
    481 U.S. 739 (1987).................................................................................8

*United States v. Sineneng-Smith*
    590 U.S. 371 (2020)........................................................................2, 14, 15

**STATUTES**

28 U.S.C. § 46(c) .......................................................................................9

Cal. Penal Code
    § 25850.......................................................................5, 6, 7, 11, 13
    § 25850(a) ..............................................................................3, 11
    § 26010....................................................................................3, 11
    § 26150.......................................................................3, 4, 5, 11, 14
    § 26150(a) ...............................................................................3, 4
    § 26150(b) ...............................................................................3, 4
    § 26150(b)(2) ..........................................................................4, 6
    § 26150(c) ...................................................................................4
    § 26155.......................................................................3, 4, 5, 11, 14
    § 26155(a) ...............................................................................3, 4
    § 26155(b) ...............................................................................3, 4
    § 26155(b)(2) ...............................................................................6
    § 26155(c) ...................................................................................4
    § 26350.......................................................................5, 6, 7, 11, 13
    § 26350(a) ..............................................................................3, 11
    § 26362....................................................................................3, 11

Fla. Stat. § 790.01 ......................................................................................13

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

Fla. Stat. § 790.053 .................................................................................13

Fla. Stat. § 790.06 ..................................................................................13

Ill. Comp. Stat. 430 § 66/10 ...................................................................13

Ill. Comp. Stat. 720 § 5/24-1(a)(10) ......................................................13

Ill. Comp. Stat. 720 § 5/24-1.6(a) ..........................................................13

Minn. Stat. § 624.714 ..............................................................................13

S.C. Code Ann. § 23-31-215(A) .............................................................13

**COURT RULES**

Fed. R. App. P. 40(b)(2)(A) ......................................................................8

Fed. R. App. P. 40(b)(2)(C) ......................................................................8

**INTRODUCTION**

Despite clear guidance from the Supreme Court that "the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing . . . the manner of carry," *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 (2022), the panel here facially invalidated California's geographic restrictions on the availability of open-carry licenses. *See* Opn. 54-55. In doing so, the panel "create[d] a circuit split" along multiple lines. *Id.* at 75-76 (N.R. Smith, J., dissenting). It also departed from the reasoning of *Bruen*, *United States v. Rahimi*, 602 U.S. 680 (2024), and this Court's precedents applying those two cases—including *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) (en banc). Those legal errors come with severe consequences: As the State has explained, striking down California's restrictions on open-carry licenses in densely populated counties threatens to create "'a highly stressful and unsafe environment'" in the State's largest communities "that 'has the high potential to create panic and chaos.'" *Id.* at 26 (majority). Any of these reasons would alone justify granting the State's petition for rehearing en banc. *See generally* Appellee's Pet. 8-18.

But Plaintiff Mark Baird's separate petition for rehearing en banc provides the Court yet another reason to do so: The panel reached its "destructive" decision, Opn. 94 (N.R. Smith, J., dissenting), by refashioning Baird's Second Amendment claim into one that Baird himself did not raise. Baird's claim was never about

1

making open-carry licenses more widely available. Instead, as his en banc petition makes clear, Baird's claim has always been that the State must allow him to openly carry *without any kind of license whatsoever*. *See, e.g.*, Appellant's Pet. 3-4. The panel should have "easily disposed of" that theory, Opn. 27, which is plainly contrary to *Bruen*. *See* 597 U.S. at 38 n.9.

Instead, the panel reframed Baird's challenge and granted sweeping relief that renders California's geographic restrictions on open-carry licenses facially invalid. That extraordinary departure "from the principle of party presentation" provides an additional ground for vacating the panel opinion and affirming the district court's denial of relief. *Clark v. Sweeney*, 607 U.S. __, __, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) (per curiam). Indeed, the Supreme Court has repeatedly reversed lower courts—including the Ninth Circuit—for failing to respect that venerable principle. *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 375-379 (2020); *Clark*, 607 U.S. at __, 2025 WL 3260170, at *1 ("In our adversarial system of adjudication," "[t]he parties frame the issues for decision, while the court serves as neutral arbiter." (internal quotation marks omitted)).

Baird appears to ask the Court to grant en banc review solely to address his argument that California's licensing regime for open carry in rural counties is invalid. *See* Appellant's Pet. 4 n.5; Response to Appellee's Pet. 1, 2. But that is not how en banc review works. When a case is reheard en banc, "the *en banc*

2

[court] assumes jurisdiction over the *entire case.*" *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 995 (9th Cir. 2003) (en banc) (internal quotation marks omitted; second emphasis added). By filing his petition, Baird has acquiesced in the State's request for an en banc panel to rehear the appeal in its entirety—including the issues discussed in the State's petition. Consistent with the parties' agreement, the Court should grant en banc rehearing.

## STATEMENT

### A.  California's Restrictions on Unlicensed Open Carry

California law generally makes it a crime to "openly carry[] an unloaded" or "loaded firearm" in public. Cal. Penal Code §§ 25850(a), 26350(a). But those criminal prohibitions "do[] not apply to, or affect, the open carrying of" loaded or unloaded handguns "by any person to the extent that person may openly carry" under California's licensing statutes. *Id.* § 26362; *see also id.* § 26010. As a result, California does not criminalize the open carriage of firearms in public as a facial matter; rather, it criminalizes *unlicensed* open carry.[1]

The relevant licensing statutes are codified at Penal Code Sections 26150 and 26155. Those provisions establish a "shall-issue" licensing regime. *See* Cal. Penal Code §§ 26150(a), 26155(a). Under that regime, individuals may seek and obtain

---

[1] California law also allows open carry in other specified circumstances, such as on hunting or fishing expeditions or for certain self-defense purposes. *See* Appellee's Pet. 3 n.2.

an open-carry license without first establishing "good cause" or some other special need for a license. *See generally Bruen*, 597 U.S. at 38 n.9. Instead, the county sheriff or designated municipal authority "shall issue" open-carry licenses to all applicants who satisfy several objective criteria—*e.g.*, they are at least 21 years old, have completed a course of firearms training, and are not "disqualified" from publicly carrying firearms. Cal. Penal Code §§ 26150(a)-(b), 26155(a)-(b).[2] State law also imposes certain geographic restrictions on open-carry licenses: such licenses may be issued only in counties "[w]here the population of the county is less than 200,000 persons according to the most recent federal decennial census," and those licenses are valid "in only that county." *Id.* §§ 26150(b)(2), 26155(b)(2). In counties with populations of 200,000 persons or more, then, individuals interested in publicly carrying firearms must obtain a *concealed*-carry license, rather than an open-carry license. *See generally id.* §§ 26150, 26155.

### B. Procedural History

Baird does not want to carry his firearms in public in a concealed manner. Nor does he want to get a license before publicly carrying his firearms. He instead wants "to carry a handgun open and exposed for self-defense, loaded or unloaded,"

---

[2] The Legislature modified Penal Code Sections 26150 and 26155, such that, as of January 1, 2026, the relevant provisions concerning open-carry licenses are found in Sections 26150(c) and 26155(c). To avoid any confusion, this brief will refer to these open-carry provisions based on their codification as described in the panel's decision: Sections 26150(b) and 26155(b).

and he wants to do so "*without seeking permission from the government*, including applying for and obtaining a license." 7-ER-1456 (emphasis added). Baird therefore filed a complaint alleging that Penal Code Sections 25850 and 26350—which together make it a crime to openly carry loaded or unloaded firearms in public without a license—are facially unconstitutional under the Second Amendment. *See* Opn. 12. In his view, there was "no historical tradition . . . of requiring a license or other permission to open carry a handgun outside of one's home for self-defense," and thus "[r]equiring any such license violates" the Second Amendment. 6-ER-1446.

After the district court granted summary judgment to the State on Baird's facial Second Amendment claim, he reiterated his demand for *unlicensed* open carry on appeal. He conceded that his legal challenge did not concern any particular aspect of California's licensing regime—including the geographic restrictions on the availability of open-carry licenses found in Penal Code Sections 26150 and 26155. *See* Opening Br. 11 n.13. He instead explained that his goal was to prevent the State from enforcing any licensing requirements on open carry whatsoever. *See* Reply Br. 14 (noting that Sections 25850 and 26350 "are the 'enforcers' of the licensing regime; if they are found to be unconstitutional, the State's licensing requirement falls apart"). That is, he wanted to "return" California law to its pre-1967 state, where the "*unlicensed* open carriage of a

5

handgun for self-defense was legal." Opening Br. 9 (emphasis added). In Baird's view, "licensing requirements are repugnant to the plain text of the Second Amendment." Reply Br. 26.

Despite Baird's "clear[] fram[ing]" of the issue presented, a divided panel of this Court elected to "refashion[]" his Second Amendment claim. Appellant's Pet. 2, 3. The majority asserted that Baird had "narrow[ed] . . . his complaint and requested relief." Opn. 13. In the majority's view, Baird's claim was not about California's "licensing system," but was instead simply about Baird's desire to "carry a handgun open and exposed on [his] person for self-defense" throughout the State. *Id.* at 15 (internal quotation marks omitted). Based on that understanding, the majority held that the State's "urban open-carry ban"—*i.e.*, the provisions in Penal Code Sections 26150(b)(2) and 26155(b)(2) that make open-carry licenses unavailable in densely populated counties—facially violated the Second Amendment. *See* Opn. 16-27, 28-51, 54-55.[3] However, "[t]o the extent that Baird facially challenged California's *rural* licensing scheme" for open carry, the majority rejected Baird's claim, reasoning that—under *Bruen*—"shall-issue

---

[3] The Court struck down those statutes even though Baird's complaint did not seek that relief. *See* 7-ER-1456-1458 (seeking an injunction against only the criminal restrictions in Penal Code Sections 25850 and 26350).

licensing regimes like the licensing that California allows in less populous counties can be constitutional." Opn. 28 (emphasis added).

Both parties filed petitions for rehearing en banc. The State explained that the panel's decision created numerous intra- and inter-circuit conflicts and raised issues of exceptional importance. *See* Appellee's Pet. 8-18. This Court ordered Baird to respond to the State's petition, *see* Dkt. No. 54, and Baird filed his own petition several hours later. He criticized the panel for misconstruing his Second Amendment claim, reiterating once again that his challenge is to Penal Code Sections 25850 and 26350, because they "impose criminal penalties for the *unlicensed* open carriage of firearms." Appellant's Pet. 2 (emphasis added). According to Baird, the panel erred by upholding California's rural-county licensing requirement, because there was no "historical tradition of regulating open carry." *Id.* at 6. "By [this] holding," Baird concluded, "the panel effectively denied [his] facial challenge to the enforcement of §§ 25850 and 26350 against unlicensed open carry." *Id.* at 3-4 (footnotes omitted).

## ARGUMENT

### I. THE PARTIES NOW AGREE THAT THIS CASE WARRANTS REHEARING EN BANC

The parties agree that this case satisfies the criteria for granting en banc review. As the State's petition for rehearing explained, there is no dispute that the panel majority's decision creates several conflicts that require en banc intervention.

7

*See* Appellee's Pet. 9-14; Fed. R. App. P. 40(b)(2)(A), (C). For example, the majority's decision to strike down California's "urban open-carry ban" directly conflicts with a recent decision of the Second Circuit, which upheld a materially similar open-carry restriction. *See Frey v. City of New York*, 157 F.4th 118, 138 (2d Cir. 2025). The panel also extended the "facial overbreadth doctrine" to Baird's Second Amendment claim—breaking with decisions from the First, Second, Third, Seventh, and Eighth Circuits. *See* Appellee's Pet. 10.[4] Moreover, in holding that California's geographic restrictions on open-carry licenses are unconstitutional, the majority declined to sever those restrictions from the larger licensing scheme. *Id.* at 15-18. The practical impact of that decision is to remove *any* licensing requirement whatsoever for open carry in the State's largest counties—an outcome posing untenable public safety risks. *See id.* at 17-18.

Baird does not disagree that this case should be reheard en banc. He acknowledges that the panel's decision raises exceptionally important issues. *See* Appellant's Pet. 15-16. And he seeks en banc rehearing to address the panel's

---

[4] As the State explained in its petition, *see* Appellee's Pet. 13-14, the appropriate standard for assessing facial challenges in the Second Amendment context is described in *United States v. Salerno*, 481 U.S. 739, 745 (1987). Baird cannot evade *Salerno*'s standard simply by characterizing the panel's analysis as a "categorical as-applied challenge[]." Response to Appellee's Pet. 11; *see id.* at 10-13. Because Baird's challenge is not limited to his "particular circumstances," he "must . . . satisfy [the] standards for a facial challenge." *Doe v. Reed*, 561 U.S. 186, 194 (2010).

8

decision to uphold California's rural open-carry licensing requirements. *See id.* at 7-14. The bottom line: Although the parties sharply disagree about the correct outcome in this case, *see infra* pp. 12-14, Baird's petition for rehearing en banc confirms that the panel majority's opinion should not be the final word on his Second Amendment challenge.

To the extent Baird's petition suggests that the Court should rehear this case en banc to address only the constitutionality of California's *rural* licensing requirements, the Court should reject that suggestion. *See* Appellant's Pet. 4 n.5 (noting that "Baird does not challenge" the panel's holding concerning "California's ban on the open carriage of handguns in urban counties"); *see also* Response to Appellee's Pet. 1 (arguing that "the State identifie[d] no basis for rehearing en banc"). As this Court has explained, "when a case is heard or reheard *en banc*, the *en banc* [court] assumes jurisdiction over the entire case . . . regardless of the issue or issues that may have caused any member of the Court to vote to hear the case *en banc*." *Kyocera*, 341 F.3d at 995 (internal quotation marks omitted); *see also Duncan v. Bonta*, 131 F.4th 1019, 1025 (9th Cir. 2025) (en banc) (explaining that 28 U.S.C. § 46(c) "authorizes the en banc court to decide *the entire case*, not merely a discrete step in the overall suit"). Consistent with that well-settled practice, the Court should grant en banc rehearing.

9

To be sure, once the Court grants en banc review, the en banc panel does not necessarily have to revisit every aspect of the issues before the three-judge panel. It can instead focus on the principal issue or issues that prompted the Court to grant en banc review and "reinstate" other aspects of the three-judge panel opinion. *See, e.g.*, *Olson v. California*, 104 F.4th 66, 76 n.4 (9th Cir. 2024) (en banc) ("[w]e do not disturb" "the panel's disposition as to [several] claims"). Here, for example, the Court could focus on the three-judge panel's facial invalidation of California's geographic restrictions on open-carry licenses and reinstate the panel's rejection of Baird's challenge to rural open-carry licensing requirements.

## II. BAIRD'S PETITION HIGHLIGHTS THE PANEL'S DEPARTURE FROM THE PRINCIPLE OF PARTY PRESENTATION AND UNDERSCORES THE NEED FOR EN BANC REHEARING

Baird's petition for rehearing reveals a fundamental error in the panel majority's decision that further justifies en banc review. The panel not only created several intra- and inter-circuit conflicts requiring en banc resolution, *see* Appellee's Pet. 9-14, but it did so unnecessarily—by refashioning Baird's particular Second Amendment claim into something he did not argue. Baird's actual argument is that the Second Amendment allows *unlicensed* open carry. Rejecting that contention is straightforward because *Bruen* made clear that public carry can lawfully be subjected to reasonable licensing requirements. *See* 597 U.S. at 38 n.9. In reaching out to grant sweeping relief on a theory that Baird did not

10

press, the panel "departed dramatically from the principle of party presentation."

*Clark*, 607 U.S. at ___, 2025 WL 3260170, at *1.

The first step in resolving any Second Amendment claim is to determine the relevant "'proposed course of conduct,'" which is "what the plaintiff[] wanted to do and what the challenged law prevented [him] from doing." *Doe v. Bonta*, 101 F.4th 633, 639 (9th Cir. 2024). Here, Baird's "proposed course of conduct" is not only to openly carry firearms, but to do so *without getting a license*. His operative complaint did not challenge the geographic limits on open-carry licenses found in Penal Code Sections 26150 and 26155, and Baird never sought expanded access to open-carry licenses. *See* 7-ER-1456-1458.[5] He instead claimed that he has the right to openly carry firearms in public without any license at all. His complaint alleged that "there is no historical tradition in this Nation of requiring a license or other permission to open carry a handgun outside of one's home for self-defense," and thus "[r]equiring any such license violates" the Second Amendment. 6-ER-

---

[5] Given Baird's proposed conduct, his operative complaint facially challenged only Penal Code Sections 25850 and 26350. *See Doe*, 101 F.4th at 639 (requiring the court to consider "what the challenged law prevented [plaintiff] from doing"); *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 117 n.17 (9th Cir. 2024) (explaining that the proposed conduct must be "attuned to the actual activity" regulated by the challenged statutes). Together, those statutes make it unlawful to openly carry firearms in public without a license. *See* Cal. Penal Code §§ 25850(a), 26350(a); *see also id* §§ 26010, 26362 (providing that Sections 25850 and 26350 do not apply to licensed individuals).

1446. Baird maintained that argument on appeal, asking the panel to change California law to make "unlicensed open carriage of a handgun" "legal." Opening Br. 9. And his petition for rehearing en banc reiterates that *unlicensed* open carry has always been his aim: He asserts that "open carry 'shall not be infringed' by California's criminal laws and licensing requirements." Appellant's Pet. 5.

Properly understood, Baird's Second Amendment claim must fail—as the panel majority seemed to understand. *See* Opn. 27-28 (concluding that Baird's facial challenge to California's licensing scheme was "easily disposed of").[6] The Second Amendment does not protect any right to *unlicensed* open carry. The Supreme Court has repeatedly explained that the Second Amendment "does not imperil every law regulating firearms," *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opn.); that many "regulatory measures" concerning firearms are, in fact, "presumptively lawful," *District of Columbia v. Heller*, 554 U.S. 570, 626-627 & n.26 (2008); and—most relevant here—that "shall-issue" licensing regimes are lawful so long as they are not "put toward abusive ends" because they "are designed to ensure only that those bearing arms in the

---

[6] *See also* Oral Argument Recording 56:45-59:43 (discussion with Baird's counsel concerning "licensing of the open carriage of a handgun," and comment from panel member that counsel was "kind of messing up [her] own case . . . by focusing on the licensing requirement").

jurisdiction are, in fact, law-abiding, responsible citizens." *Bruen*, 597 U.S. at 38 n.9 (internal quotation marks omitted).

Those well-established principles fully resolve Baird's challenge. Sections 25850 and 26350 do not run afoul of the Second Amendment as a facial matter because they are constitutional in all or virtually all circumstances. *See* Answering Br. 14-25; *cf.* Opn. 79-80, 87 (N.R. Smith, J., dissenting). Indeed, *Bruen* cited with approval the shall-issue licensing schemes of 43 States—including numerous schemes in effect at the time that imposed licensing and other restrictions on the open carriage of firearms.[7] And like California, several of those States imposed criminal penalties for engaging in open carry without a license.[8] As a result, contrary to Baird's assertions, *see* Appellee's Pet. 7-8, there is nothing problematic about criminal penalties in this area.

Nor did this Court hold or suggest anything to the contrary in its pre-*Bruen* opinion in *Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc). *Contra* Appellee's Pet. 13-14. That case "did not address open carry[] as it is

---

[7] *Bruen*, 597 U.S. at 14 n.1 (citing, *e.g.*, Minn. Stat. § 624.714 (2020) (imposing permitting requirements on publicly carrying weapons generally), S.C. Code Ann. § 23-31-215(A) (Cum. Supp. 2021) (similar), Fla. Stat. § 790.06 (2021) (allowing concealed carry licenses, but prohibiting open carry), Ill. Comp. Stat. 430 § 66/10 (West. Cum. Supp. 2021) (similar)).

[8] *See, e.g.*, Fla. Stat. § 790.01 (effective May 21, 2015 to June 30, 2023); *id.* § 790.053 (effective June 17, 2011 to June 30, 2023); Ill. Comp. Stat. 720 §§ 5/24-1(a)(10), 5/24-1.6(a).

challenged here." Opn. 86 (N.R. Smith, J., dissenting). *Peruta* was careful *not* to reach any conclusions about whether the Second Amendment protects the "right for a member of the general public to carry a firearm openly in public." *Peruta*, 824 F.3d at 939; *see id.* (noting that "[t]he Supreme Court has not answered that question, and we do not answer it here"). And *Peruta* certainly said nothing about Baird's extraordinary request "to carry a handgun open and exposed" without first "applying for and obtaining a license." 7-ER-1456.[9]

In refashioning Baird's claim as a challenge to the "urban open-carry ban" created by Penal Code Sections 26150 and 26155, the panel majority committed the same fundamental error that the Supreme Court has repeatedly admonished lower courts to avoid. As a general matter, courts are supposed to act as "passive instruments of government." *Sineneng-Smith*, 590 U.S. at 376 (internal quotation marks omitted). "They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, [they] normally decide only questions presented by the parties." *Id.* (internal quotation marks and brackets omitted). Although the panel majority was "not hidebound by

---

[9] Baird's petition refers in passing to Judge Lee's concurrence. *See* Appellant's Pet. 3 n.3. But as Judge Lee appeared to acknowledge, the issues discussed in that opinion—which involve California's standard form for obtaining an open-carry license—were not raised or preserved by Baird. *Cf.* Opn. 55-57 (Lee, J., concurring). The "dicta [in Judge Lee's concurrence] is just that—dicta"—and is not properly before the Court. *Id.* at 98 (N.R. Smith, J., dissenting).

14

the precise arguments of counsel," "[n]o extraordinary circumstances justified the panel's takeover of [Baird's] appeal." *Id.* at 379, 380.

## CONCLUSION

Rehearing en banc should be granted, and the panel opinion should be vacated.

Dated:  February 10, 2026        Respectfully submitted,

/s/ Aaron D. Pennekamp

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy Solicitor General*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
AARON D. PENNEKAMP
  *Deputy Solicitor General*
R. MATTHEW WISE
LARA HADDAD
  *Supervising Deputy Attorneys General*
IRAM HASAN
  *Deputy Attorney General*
*Attorneys for Defendant-Appellee*

15

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s):** <u>No. 24-565</u>

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[x] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** <u>3,476</u>**.**
*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** <u>/s/ Aaron D. Pennekamp</u>      **Date** <u>February 10, 2026</u>
*(use "s/[typed name]" to sign electronically-filed documents)*